**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| Allison Brown | : | Amended Complaint for a Civil Case |
| 7923 Eastern Ave | : | |
| Silver Spring, MD 20910 | : | |
| | : | Case Number: 1:26-cv-01143-CRC |
| PLAINTIFF, | : | |
| | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| Washington University | : | |
| EIN: 43-065361 | : | |
| 1 Brookings Drive | : | |
| St. Louis, MO 63130 | : | |
| | : | |
| Russell Osgood | : | |
| 1 Brookings Drive | : | |
| St. Louis, MO 63130 | : | |
| | : | |
| Elizabeth Walsh | : | |
| Anheuser-Busch Hall Room 213E | : | |
| 1 Brookings Drive | : | |
| St. Louis, MO 63130 | : | |
| | : | |
| Adrienne Davis | : | |
| Anheuser-Busch Hall Room 548 | : | |
| 1 Brookings Drive | : | |
| St. Louis, MO 63130 | : | |
| | : | |
| Carrie Burns | : | |
| Anheuser-Busch Room 210D | : | |
| 1 Brookings Drive | : | |
| St. Louis, MO 63130 | : | |
| | : | |
| Robert Wild | : | |
| MSC 1167-226-200 | : | |
| 1 Brookings Drive | : | |
| St. Louis, MO 63130 | : | |
| | : | |

                                                                         :

Darrell Hudson                                   :
1415 Washington Heights                    :
Ann Arbor, MI 48109                        :
    :

Deanna Wendler-Modde                  :
1 Brookings Drive                         :
St. Louis, MO 63130                      :
    :

Nicole Gore                                        :
1 Brookings Drive                         :
St. Louis, MO 63130                      :
    :

Cynthia Copeland                           :
Umrath Hall 001                          :
St. Louis, MO 63105                      :
    :

Peggie Smith                                 :
Anheuser-Busch Hall Room 548          :
1 Brookings Drive                         :
St. Louis, MO 63130                      :
    :

Mark Kamimura-Jiménez                :
MSC 1083-226-330                      :
1 Brookings Drive                         :
St. Louis, MO 63130                      :
    :

Elizabeth Katz                               :
Anheuser-Busch Hall Room 548          :
1 Brookings Drive                         :
St. Louis, MO 63130                      :
    :

Angela Smith                                 :
Room 325D-2,                             :
1 Brookings Drive                         :
St. Louis, MO 63130                      :
    :

INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY;
    :
    :
    :

                DEFENDANTS.  :
    :
    :

_____:

**COMPLAINT**

## I.    INTRODUCTION

Plaintiff, Allison S. Brown ("Plaintiff") brings claims against her former law school and employer, The Washington University, EIN Number: 43-0653611 (hereafter, "WashU" or "Defendant University") and several of its employees ("Defendants.") Plaintiff has repeatedly experienced a pattern of race and/or sex discrimination and retaliation at the hands of Defendants from the moment that she matriculated into Defendant University, and after Defendants forced her to finish her law degree at Georgetown University Law Center (hereafter, "GULC.") While this Complaint includes an overview of Defendants' enduring racist and sexist campaign against Plaintiff and retaliation regarding the same, this introduction focuses on Defendants' Washington, D.C. related torts.

Defendants interfered with and led to the termination and/or suspension of several of Plaintiff's employment contracts to be performed in Washington, D.C., including with the D.C. local government (the D.C. Office of Human Rights) and at least three organizations based in Washington, D.C. (namely, the National Center for Youth Law, the United Nations Permanent Forum for People of African Descent, and the Street Law Fellowship at GULC.)

Defendants WashU, Osgood, and Walsh thwarted Plaintiff's _only_ unilateral attempt to transfer to GULC by failing to transmit a letter of good-standing on Plaintiff's behalf after her 1L year, and unilaterally revoked Plaintiff's scholarship after Defendants forced Plaintiff to attend GULC for her 3L year in Washington, D.C. Further, Defendants: 1) breached the consortium agreement between GULC, Plaintiff, and Defendants for Plaintiff's 3L year, 2) refused to issue Plaintiff's scholarship, delaying Plaintiff's ability to register for and attend classes at GULC, 3)

1

treated her worse than her white and/or male co-workers and classmates, 4) subjected her to a hostile work and classroom environment because of Plaintiff's race and/or sex (Black and female), and 5) further discriminated and retaliated against Plaintiff after she engaged in protected activity by complaining about race and/or sex discrimination. As a result of Defendants' actions, Plaintiff has been denied employment opportunities in Washington, D.C., and still suffers to this day from Defendants' acts and omissions to Washington, D.C. employers.

This controversy is ongoing, and requires adjudication by this Court. Defendants have initiated garnishment proceedings regarding Plaintiff, Defendants, and GULC's 2023-2024 Consortium Agreement regarding Plaintiff's tuition and Defendants' contractual obligations to GULC and Plaintiff. On August 2nd, 2023, Plaintiff paid $17,455.02 cash for the 2023-2024 school year's tuition and withdrew $30,000 in FAFSA loans - all of which were paid to Defendant WashU. (Exhibit M) On August 15th, 2023, Defendants Osgood, Walsh, Gore, Kamimura-Jimenez, Gore, and Wendler-Modde unilaterally revoked Plaintiff's $37,000 annual scholarship via e-mail after demanding that Plaintiff enroll at GULC for her third year of law school. Thus, Defendants WashU, Osgood, Walsh, and Burns breached the consortium agreement which stated that Plaintiff must complete her final year of law school at GULC and maintain her scholarship. To this day, Defendants maintain that Plaintiff owes Defendant WashU $40,294.00. (Exhibit M)

Plaintiff has made numerous requests to Defendant's counsel to resolve this matter outside of litigation with no success. On October 14th, 2024, Lisa M. Wood, Deputy General Counsel of Defendant sent an email to Plaintiff: "While the University will waive any late fees that may have been charged to your account, it is otherwise unwilling to enter into negotiations. If you have questions with respect to the collection process, please contact Student Billing . . ."

Plaintiff brings claims pursuant to Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000d, et seq. ("Title VI"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981"), 42 U.S.C.A. § 1983 ("Section 1983"), 42 U.S.C.A. § 1985 ("Section 1985"), U.S. Const. amend. XIV, § 2 ("14th Amendment,") U.S. Const. amend. V. ("5th Amendment,") Title IX of Education Amendments of 1972, 20 USC §§ 1972, 20 USC §§1681 - 1688 ("Title IX"), and the DC Human Rights Act.

Plaintiff also brings claims of race and sex discrimination and retaliation, disparate treatment, hostile work environment, conspiracy to commit discrimination, defamation, breach of contract, bad-faith negotiation, fraud, forgery, negligence, tortious interference, and intentional infliction of emotional distress. Plaintiff also seeks a refund for tuition paid during her 6-month suspension prior to matriculating at GULC where Defendants pretextually, substantially, and tortiously interfered with Plaintiff's employment contracts with the local Washington, D.C. government and D.C.-based organizations, as well as Plaintiff's property interests in her education at GULC in retaliation for complaining of race and/or sex discrimination.

Plaintiff seeks all damages allowable by law, including but not limited to injunctive relief regarding garnishee processes and collections actions in response to the racially discriminatory and retaliatory billing practices of Defendants, WashU et al. Plaintiff also seeks all other damages, including but not limited to economic loss, compensatory, liquidated, special and punitive damages, costs, attorney's fees and all other relief that this Court deems appropriate.

## II. PARTIES

### A.  The Plaintiff

1.  Plaintiff, Allison Brown ("Plaintiff"), is an attorney employed in Washington, D.C.

2.  Plaintiff is female and Black/African-American.

3.  Plaintiff is experiencing, and experienced a series of Defendants' race/sex discriminatory and retaliatory actions occurring in, arising out of, and relating to Washington, D.C.

4.  Plaintiff suffered tortious injury pursuant to Defendants' breach of a consortium agreement, and interference with at least three separate clerkships in Washington D.C. where Defendants interfered, and/or forbade Plaintiff's participation.

### B. The Defendants

### The Washington University ("WashU" or "Defendant University")

5.  Defendant WashU is a Missouri institution of higher education with a principal place of business at 1 Brookings Drive, St. Louis, Missouri 63130, and a Washington D.C. campus located at 1775 Massachusetts Avenue, NW, Washington, DC 20036. (Exhibit C)

6.  Defendant WashU reserves the first and second floors of 1775 Massachusetts Avenue, NW, utilized for research and educational programs. (See Exhibits, A, B, and C.)

7.  WashU's campus and research facilities at 1775 Massachusetts Avenue, NW, Washington, DC 20036 advertise that they rely on the Metropolitan Police Department unit located one block from Defendant WashU's D.C. campus for security. (Exhibit C)

8.  Since at least August 3, 1999, Defendant WashU has had a persistent course of conduct in Washington, D.C. (Exhibits A, B, and C)

4

9. Since at least August 3, 1999, Defendant WashU has maintained an active registration and a registered office address with the District of Columbia Government Department of Licensing and Consumer Protection's Corporations Division and to this day, at 1775 Massachusetts Avenue NW Washington, D.C. 20036. (Exhibit A)

10. Defendant WashU's latest filings with the D.C. Office of Licensing and Consumer Protection states that [Defendant's] "business purpose is providing educational services in Washington D.C." (Exhibit A)

11. Further, Defendant WashU has registered the trade name "WashU at Brookings", which was replaced with the trade name "Washington University (THE)" in Washington D.C. since January 27, 2020 to reflect their continuous presence in the District. (Exhibit A)

12. Ian Dubin is listed as WashU's commercial registered agent, with an email address of IDubin@brookings.edu, and a mailing address of 1775 Massachusetts Avenue, NW, Washington, DC 20036. He also utilizes a Washington D.C. area code, as his contact number is listed as (202) 509-8400. (Exhibit B)

13. "Registered agent" replaced the term "agent for service of process" with the D.C. Act 19-512 on October 31, 2012 in 46 places in Title 29 ("Business Organizations") of the District of Columbia Official Code as technical amendments to harmonize provisions relating to similar aspects of the unincorporated entities to make them consistent with each other.

14. Thus, Defendant WashU has registered to do business in the District of Columbia and has registered agents to accept service of process in the District of Columbia since at least August 3, 1999. (Exhibits A, B, and C)

15. Defendant WashU's business registration with the D.C. Office of Licensing and Consumer Protection is inextricably intertwined with the causes of action that Plaintiff asserts in this

5

Complaint, as Defendant WashU is registered within Washington D.C. to "offer[s] Educational Services, educational courses in policy and leadership topics." (Exhibits A, B, and C)

16. Defendant WashU continuously and intentionally recruits students, including Plaintiff, to attend their undergraduate and graduate programs from Washington D.C., and emphasizes Defendant's WashU campus in Washington D.C. in advertising and recruitment efforts. (Exhibits A, B, and C)

17. Defendant WashU has a federal relations team, that "specializes in navigating the federal policymaking landscape and representing the university's interest in Washington D.C." while WashU Advocates does "legislative actions in . . . Washington, D.C. . . . that impacts WashU." (Exhibit B)

18. Defendant WashU, in addition to their campus at 1775 Massachusetts Avenue NW Washington D.C., (which is about two miles from GULC's campus) also maintains and advertises a "WashU in D.C. Program." (Exhibits A, B, and C)

19. Defendant WashU Law School advertises its campus, programs, and connections to Washington D.C. as a selling point for their educational services to students including Plaintiff because Defendants know that St. Louis is a shrinking city with less than 300,000 residents.

20. As an extension of their engagement with Washington D.C. above, Defendants WashU et al. regularly do business and provide educational services in the District of Columbia, derive revenue from activities in the District (which include the unilateral revocation and pocketing of Plaintiff's scholarship and federal FAFSA student loans by Defendants WashU, Osgood, Burns, and Walsh while forcing Plaintiff to attend GULC.)

6

21. Defendants' conduct in the District is including but not limited to: forcing Plaintiff to attend GULC and the subsequent revocation of Plaintiff's scholarship.

22. Defendants WashU et al funds their educational services and campus in Washington D.C. with the objective and specific knowledge that the money is used to engage in conduct in the District.

23. Defendants have engaged in a course of conduct in the District (which include Defendant WashU's Washington D.C. externship employment programs) in which Plaintiff either directly participated in or was denied entry to by Defendants. This included several requests of career placement advisor, Hilary Von Rohr, to meet in person in Washington, D.C. by e-mail and text with Plaintiff and Plaintiff's classmates employed in Defendants' externship programs.

24. The Washington D.C. externship at Defendant WashU advertises the following on their website: "Spend the fall or spring semester in Washington, D.C. working with attorneys in government offices and nonprofits. We help each student secure a placement in a Congressional office, administrative agency, or NGO, where you'll gain hands-on experience with the legislative and agency process. Open to all second- and third-year JD students in Washington, D.C. with supervised experience in government settings. Work directly with practicing attorneys." (Exhibits A, B, and C)

25. Therefore, Defendants operate a campus, conduct research, own/lease at least two floors of a Washington, D.C. building, and pursuant to the factual allegations listed below, have had regular contact with Plaintiff, and derived substantial revenue from conducting business, including by stealing Plaintiff's scholarship, and forcibly relocating Plaintiff to GULC in Washington, D.C. See D.C. Code § 13-423(4).

7

26. At all times material hereto, Defendants at times acted in concert with each other and by authorized agents, servants, workmen, and/or employees acting within the course and of employment with Defendants and in furtherance of a conspiracy to commit discrimination under Section 1985 and all other claims alleged in this Amended Complaint.

**Defendant Russell Osgood**

27. Defendant Russell Osgood is a white man, and the former Dean of Defendant WashU Law School, and architected the conspiracy of race and/or sex discrimination and retaliation by giving various Civil Rights Awards to Defendant Katz and Davis <u>AFTER</u> Plaintiff and her white and/or male classmates reported Defendants Katz and Davis had been engaging in discriminatory and/or retaliatory conduct on the basis of race and/or sex.

28. Defendant Osgood, along with Defendant WashU, also made Defendant Davis the commencement speaker at Plaintiff's law school graduation.

29. Defendant Osgood encouraged Defendants Walsh, Davis, Burns, Copeland, Wild, Hudson, Wendell-Modde, Gore, Peggie Smith, Kamimura-Jimenez, Angela Smith, and Katz to engage in race and/or sex discrimination and retaliation against Plaintiff for her complaints.

**Defendant Elizabeth Walsh**

30. Defendant Elizabeth Walsh is a white woman, the Associate Dean of Student Life at Defendant WashU Law School, and lost the Student Conduct Board Hearing to Plaintiff in May 2023.

31. Defendant Walsh failed to uphold her duty as a University official of a University that receives federal funding to protect Plaintiff from race and/or sex discrimination by

8

Defendant Katz and Richard Omoniyi-Shooyola (hereafter, "Richard O") in Plaintiff's 1L year under Title VI and Title VII of the Civil Rights Act of 1964, and Title IX.

32. Defendant Walsh retaliated against Plaintiff for her race and/or sex discrimination in a myriad of different ways, including but not limited to by issuing unfounded charges against Plaintiff for allegedly violating school policy when no evidence of such conduct existed.

33. Defendant Walsh demanded that Plaintiff attend GULC and sign a release of all claims and non-disparagement agreement **or** face a sham proceeding via Student Conduct Board (SCB) hearing.

34. Defendant Walsh unilaterally revoked Plaintiff's scholarship, failed to address Plaintiff's complaints of gun violence on campus, and intentionally misplaced over 30% of Plaintiff's course recordings for the Spring 2023 semester, resulting in the lowest semester grades on Plaintiff's law school transcript, resulting in Plaintiff's failure to secure the "Street Law Fellowship" at GULC.

35. Defendant Walsh transmitted false and untrue statements from 2023 to 2026 to several different organizations including but not limited to the Maryland Board of Law Examiners and the District of Columbia Court of Appeals regarding Plaintiff's character and fitness to practice law while spreading racially and sexually stereotypical falsehoods – that Plaintiff is "aggressive" and "ghetto" - and tone-policing in her commentary regarding Plaintiff.

**Defendant Adrienne Davis**

36. Defendant Adrienne Davis is a Black woman, and a Professor in the School of Law and Professor of Organizational Behavior in Olin Business School at Defendant.

37. Defendants Adrienne Davis and Peggie Smith (both Black women) are friends, and former Yale Law School classmates. Defendant Davis engaged in racist chicanery and accused

9

Plaintiff of being a threat in the classroom on November 2, 2022 that was the "but for" cause of Plaintiff's suspension.

38. Defendant Davis hired Plaintiff as her research assistant in or around October 2022, and Plaintiff has never been fired or resigned from her role as a research assistant.

39. Defendant Davis conspired to defraud, defame, and discriminate against Plaintiff along with Defendant's Osgood and Walsh in retaliation for Plaintiff complaining of race and sex discrimination, and in retaliation for Defendant Katz's firing from WashU for race discrimination.

40. When Defendant Davis' racist and defamatory chicanery against Plaintiff was revealed, and she could no longer serve as a credible witness against Plaintiff, Defendant Davis enlisted her friends, Defendant Peggie Smith and Defendant Angela Smith, to support her in defaming Plaintiff as a threat to Defendant WashU's community in the SCB Hearing.

**Defendant Carrie Burns**

41. Defendant Carrie Burns is a white woman, and the Vice President of Financial Aid at Defendant WashU Law School.

42. Defendants Elizabeth Walsh and Carrie Burns are close friends - not just colleagues.

43. Defendant Burns, along with WashU, revoked Plaintiff's scholarship, stole Plaintiff's $30,000 in FAFSA loan money, and initiated garnishment proceedings against Plaintiff for $40,294.00. Defendants Osgood, Walsh, Wendell-Modde and Gore acted in concert and knew about Defendant Burns retaliatory behavior against Plaintiff and encouraged Defendant Burns's retaliatory billing practices against Plaintiff.

10

**Defendant Robert Wild**

44. Defendant Robert Wild is a white man, the Associate Vice Chancellor, and Dean of Students at Defendant. Defendant Wild suspended Plaintiff shortly after Defendant Davis's November 2nd, 2022 racist, fraudulent, and defamatory performance.

45. Defendant Wild communicated to Plaintiff that she would be subject to arrest by the WashU police force if she stepped foot on WashU campus.

46. Defendant Wild, a white man, was replaced with Defendant Nicole Gore, a Black woman, in an attempt to make Defendants' actions look less racist once Defendant Davis's racist and defamatory chicanery against Plaintiff was revealed after Plaintiff's mother, an attorney and member of the D.C. Bar, wrote a series of handwritten letters to Defendants Wild, Hudson, Wender-Modde, Walsh, and Gore asking them to stop their targeted conspiracy against Plaintiff for being Black and complaining of race and/or sex discrimination. (Exhibit L)

47. Defendant Wild forced Plaintiff to relocate to GULC, and is cc'd on Defendants' proffered non-disparagement agreement and the release of all claims. (Exhibit I)

**Defendant Darrell Hudson**

48. Defendant Hudson is a Black man, and was the Chair of the University SCB at Defendant and oversaw the biased Student Conduct Board proceeding and allowed it to continue while prohibiting any evidence of Defendant Davis' racist chicanery, the "but for" cause of Plaintiff's suspension.

49. Defendant Hudson: 1) denied Plaintiff's requests to hold the SCB in person in Missouri, 2) forced Plaintiff to leave campus and relocate to GULC, and 3) allowed for the SCB hearing

rules to favor Defendant Walsh such that it was a kangaroo court designed to punish and expel Plaintiff for her complaints of race and/or sex discrimination and retaliation.

50. Defendant Hudson signed off on the defamatory SCB determination letter – an indelible school record containing several material omissions regarding the proceeding and Plaintiff.

51. Defendant Hudson conspired with Defendants Gore, Wendler-Modde, Osgood, Walsh, Davis, Peggie Smith, and Angela Smith to get Plaintiff expelled from WashU in retaliation for complaining about race and/or sex discrimination and getting Defendant Katz fired.

**Defendant Deanna Wendler-Modde**

52. Defendant Deanna Wendler-Modde is a white woman, and is the Assistant Vice Chancellor and Associate General Counsel at Defendant and allowed the SCB hearing to occur with no evidence of Defendant's Davis' racist chicanery, the "but for" cause of Plaintiff's suspension.

53. Defendant Wendler-Modde allowed for the SCB to architect rules favoring Defendant Walsh; the SCB was a kangaroo court designed to punish and expel Plaintiff for engaging in protected activity by complaining of Katz's racist and/or sexist classroom practices.

54. Defendant Wendler-Modde authored in her capacity as General Counsel the indelible school record (the SCB determination letter) that bears Defendant Hudson's signature, and contains several material omissions and defamatory content regarding the SCB hearing proceedings and Plaintiff.

55. Defendant Wendler-Modde drafted the agreement forcing Plaintiff to attend GULC, and drafted the agreement forbidding Plaintiff from discussing Defendant WashU and their agents' pattern of racism, sexism, and retaliation against Plaintiff, and Defendants' release of all claims.

12

**Defendant Nicole Gore**

56. Defendant Nicole Gore is a Black woman, the Associate Dean in the Office of Student Conduct and Community Standards at Defendant, allowed the SCB hearing to occur with no evidence of Defendant Davis' racist chicanery, the "but for" cause of Plaintiff's suspension.

57. Defendant Gore replaced Defendant Wild to make Defendants' actions against Plaintiff appear less racist once Defendant Davis's November 2, 2022 performance was exposed as fraudulent racist chicanery.

58. Defendant Gore demanded that Plaintiff relocate to GULC.

59. Defendant Gore drafted the consortium agreement forcing Plaintiff to attend GULC, and drafted the non-disparagement agreement forbidding Plaintiff from discussing Defendant WashU and their agents' pattern of racism, sexism, and retaliation against Plaintiff, and Defendants' release of all claims.

**Defendant Cynthia Copeland**

60. Defendant Cynthia Copeland is a Black woman, and the Assistant Director & Associate Title IX Coordinator at Defendant WashU who declined to investigate Plaintiff's claims against Richard Omoniyi-Shooyola (hereafter, Richard O) who had multiple sexual misconduct charges at the University of Chicago, his undergraduate institution. Richard O asked Plaintiff to sign a contract to be raped at his will so that – in his mind - he would not be subject to future allegations of sexual misconduct. Plaintiff did not sign this contract. (Exhibit D, Exhibit E)

61. Defendant Copeland subjected and traumatized Plaintiff through a fruitless and sham months-long investigation and multiple 6-hour sessions of questioning over weeks

13

regarding Richard O's baseless allegations of sexual harassment against Plaintiff, a victim of Richard O's sexual harassment. (Exhibit E)

62. Defendant Copeland found Plaintiff "not guilty" of any violation of any University policy or the Student Conduct Code. (Exhibit H)

63. Defendant Copeland refused to investigate Richard O **at all** despite having a copy of the rape contract, and a binder full of evidence of Richard O's sexual harassment of Plaintiff. (Exhibit H)

**Defendant Peggy Smith**

64. Defendant Peggy Smith is a Black woman, and the Vice Dean at Defendant WashU Law School, and a fellow classmate of Defendant Adrienne Davis at Yale Law School.

65. Defendant Peggy Smith never had Plaintiff as a student in one of her classes.

66. Defendant Peggy Smith was selected by Defendants WashU, Osgood, Walsh, Davis, Burns, Wild, Hudson, Wendler-Modde, Gore, Copeland, Peggie Smith, Angela Smith, Mark Kamimura-Jiménez, and Elizabeth Katz to tell Plaintiff to stop complaining of race and sex discrimination because, in Defendant Katz's words in an email in February 26, 2022, Defendant Peggy Smith "could speak more to Plaintiff's state of mind" because are both Plaintiff and Peggy Smith are Black women.

67. Defendant Peggy Smith told Plaintiff in or around February 2022 that she would expel Plaintiff if she continued to complain of Defendant Katz's racism.

68. Defendant Peggy Smith testified at Plaintiff's SCB hearing that she would expel Plaintiff if she continued to complain of race or sex discrimination, but not antisemitism, and advocated for Defendants' removal of Plaintiff to GULC.

14

**Defendant Mark Kamimura-Jiménez**

69. Defendant Mark Kamimura-Jiménez is a non-Black man, the Associate Vice Chancellor for Student Affairs at Defendant and oversees the Office of Diversity and Inclusion. He was listed on Defendant WashU's website as the contact person to report discrimination at Defendant University.

70. Defendant Kamimura-Jimenez was informed of Plaintiff's complaints of race and/or sex discrimination by Defendant Davis in a meeting in or around November 2022, less than a week after Plaintiff's suspension, and acted deliberately indifferent to Plaintiff's complaints.

71. Defendant Kamimura-Jimenez's failure to act was part of a larger conspiracy with Defendants Osgood, Walsh, Wendell-Modde, and Gore when Plaintiff complained to him about the fact that Defendant Davis successfully feigned dramatic objections to Plaintiff's innocuous classroom comment to get Plaintiff suspended.

72. Defendants Kamimura-Jimenez, Osgood, Walsh, Gore and Wendell-Modde demanded that Plaintiff finish her 3rd year at GULC and agree not to discuss the race and sex discrimination and retaliation she encountered at WashU, or Plaintiff would face a sham disciplinary SCB Hearing.

**Defendant Elizabeth Katz**

73. Defendant Elizabeth Katz is a white woman, a Professor of Law at Defendant WashU Law School, and is now a Professor of Law at the University of Florida Levin School of Law.

74. Defendant Katz was dismissed from Defendant University shortly after Plaintiff and Plaintiff's white students complained about her racially discriminatory behavior in class.

15

75.  Defendant WashU and Defendant Osgood gave Defendant Katz a Civil Rights Award the summer after numerous students complained of her patterns of racial discrimination.

**Defendant Angela Smith**

76. Defendant Angela Smith is a Black woman, the Assistant Dean of Diversity, Equity, and Inclusion at Washington University in St. Louis School of Law, ignored Plaintiff's claims of race and sex discrimination, testified against Plaintiff in the sham SCB hearing, forced Plaintiff to attend GULC, and told Plaintiff that she should not complain of race and/or sex discrimination and retaliation.

## III.  JURISDICTION AND VENUE

77. The causes of action which form the basis of this matter arise under federal law are Section 601 of Title VI, Title VII, Title IX, Section 1981, Section 1983, Section 1985, the 5th Amendment, and the 14th Amendment.

78. This District Court has jurisdiction over Count I – Section 601 of Title VI, Count II - Title VII, Count III  - Section 1981, and Count IX - Section 1985, Count X - Title IX, Count XI - the 5th and 14th Amendment, and Count XII - Section 1983, pursuant to 28 U.S.C. §1331.

79. The District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

80. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred within Washington D.C. including but not limited to Defendants and Defendants' agents: 1) failure to provide a timely letter of good standing to GULC to support Plaintiff's ***one and only unilateral***

16

*transfer application to GULC after Plaintiff's 1st year*, 2) interference with Plaintiff's internships and fellowships in Washington D.C. during Plaintiff's 2nd year, 3) forcing Plaintiff to attend GULC for her third year, 4) revocation of Plaintiff's scholarship in Plaintiff's 3rd year, 5) breach of the consortium agreement by Defendants refusing to pay Plaintiff's GULC tuition, 6) demanding that Plaintiff pay GULC tuition despite Plaintiff paying Defendant $17,055.42 cash and 7) stealing all $30,000 of Plaintiff's FAFSA student loan funds, leaving Plaintiff abjectly impoverished and destitute while attending GULC for Plaintiff's 3rd year of law school.

81. The District Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 regarding the following common law and statutory law claims: defamation, libel, slander, breach of contract, bad-faith negotiation, fraud, fraudulent misrepresentation, negligence, tortious interference, intentional infliction of emotional distress, and violating the DC Human Rights Act.

82. Defendant WashU has registered a trade name, "WASHINGTON UNIVERSITY (THE)" to "provide educational services" in Washington D.C. with the Washington D.C. Department for Licensing and Consumer Protection ("DLCP"). (Exhibit A)

83. Defendant WashU is in an industry, education, which they label as "providing educational services" affecting interstate commerce and regularly do business in Washington D.C. (Exhibits A, B, and C)

84. Defendant University sold educational services to students, including Plaintiff, in Washington D.C., pursuant to their filing with the Department of Licensing and Consumer Protection, as they "offer educational courses in policy and research topics" – the exact

17

types of courses that Defendant University contracted with Plaintiff for in the consortium agreement between Plaintiff, GULC, and Defendant University. (Exhibit A)

85. At all times material hereto, Defendant were employers within the meaning of the statutes which form the basis of this matter.

86. Plaintiff is an employee of Defendant within the meaning of those statutes.

87. Plaintiff has never been fired or resigned from her role at Defendant University.

88. A substantial part of the Defendants discriminatory acts against Plaintiff involved contact with Washington D.C., including but not limited to Defendants Osgood, Burns, and Walsh's failure to provide a timely letter of good standing to GULC, revocation of Plaintiff's scholarship, and interference in Plaintiff's clerkships and employment.

89.  Plaintiff reported Defendants Walsh and Davis to the Office of Chief Disciplinary Counsel of the Supreme Court of Missouri in February 2024; Staff Counsel, Cecilia E.  Young sent Plaintiff a letter on April 17th, 2024, stating "Based upon the information provided in your letter, it would not be appropriate for this office to take action. The matter you raise in your correspondence involves legal issues which are within the jurisdiction of the courts to resolve. This office has no jurisdiction."

90. Plaintiff has fully exhausted her administrative remedies and complied with all administrative prerequisites for the commencement of this action.

91.  On June 17, 2025, the EEOC issued Plaintiff a right to sue Defendant WashU for race and/or sex discrimination and retaliation; plaintiff is alleging herein this Complaint a continuous pattern of a series of harassing acts of the same unlawful employment practices constituting severe and pervasive harassment. (Exhibit O)

18

## IV. FACTUAL ALLEGATIONS

### February 2021 - Admission to Defendant WashU Law School

92. On February 24, 2021, Plaintiff applied for admission to Defendant WashU Law School.

93. Plaintiff is Black, and disclosed her race to Defendant: Black/African-American, and her birthday, December 14th in her application.

94. Plaintiff's application to Defendant WashU Law School explained that she was an "Angell Scholar" at the University of Michigan's Ford School of Public Policy, an award given to students receiving straight A's for more than 2 semesters.

95. Plaintiff stated in her application to Defendant WashU Law School that "I hope to be a part of a coalition that changes the legal system for the better . . . With my light skin privilege, and talented-tenth family, I understand that I have a responsibility to dismantle white supremacy."

96. Plaintiff's diversity statement stated: "I hope that at [Defendant WashU], I will be able to investigate the root of anti-Black racism. . . [Defendant WashU] is home to a faculty devoted to teaching and researching topics with the purpose of creating valuable scholarship and viable solutions. I just hope I have the opportunity to learn from them."

### March 2021 – Plaintiff Acceptance to Defendant WashU Law School with $37,000 Annual Scholarship for Three Years

97. Plaintiff was accepted to Defendant WashU Law School via e-mail from applylaw@wustl.edu on Monday, March 22, 2021 at 3:33pm EST.

98. On June 15, 2021 at 11:00AM EST, Defendant accepted Plaintiff for admission to Defendant WashU Law School with a scholarship of $37,000/year ($18,500 per

19

semester) for each year with the only condition as follows: "Your award is based on full-time student status."

99. As of June 24th, 2026, Defendant WashU Law School's website states "At WashULaw, all of our JD scholarships are guaranteed for three years. Not only is this unusual but many schools make scholarship awards conditional on maintaining a certain GPA or class rank. By contrast, WashULaw scholarships are given with no strings attached as long as you remain a student at the law school." This is available here: https://law.washu.edu/consumer-information-aba-required-disclosures/

100. There is no other condition of scholarship aside from "maintain full time student status" on any scholarship letter sent to Plaintiff from Defendant WashU Law School.

101. There is no university policy pursuant to Plaintiff's scholarship letter that states that Plaintiff or any other student would have their scholarship revoked if Plaintiff were forced to visit another institution, study abroad or visit another institution.

102. As an American Bar Association (ABA) accredited law school, Defendant WashU Law School is subject to the ABA Standards for Approval of Law Schools. The ABA Standards that Defendant is required to abide by in order to maintain their accreditation may be found at americanbar.org and here: https://law.washu.edu/consumer-information-aba-required-disclosures/.

103. As of the date of filing of this complaint, Defendant WashU has not complied with the requirements of the ABA Standards.

104. Accordingly, a private investigation has been initiated by the ABA's 12-member council under Rule 42 of the ABA Standards.

20

105. Under Rule 43 of the ABA Standards, this is the final disposition of Plaintiff's complaint with the ABA.

106. This District court is Plaintiff's last resort for redress and remedy of Defendant's invidious discrimination, fraud, and failure to comply with the ABA Standards.

**August 2021 - May 2022; Title IX Violations and Exposure to Sexual Predators**

107. In or around August 2021, Richard O sends Plaintiff a rape contract before they had ever met one another in person.

108. Richard O calls Plaintiff explains that he generally sends contracts "to ensure that his needs are met in his female friendships" that allows him to rape Plaintiff and rituals involving semen and blood. Plaintiff is taken aback because she had never met Richard in person before, yet Richard O still wanted to be sure that he could have sex with her at his will, and against hers. Plaintiff refuses to sign the rape contract.

109. In Fall 2021, Richard O files a Title IX action against Plaintiff.

110. Defendant University's Title IX Office put in place a no-contact order against Plaintiff at Richard O's request.

111. After Plaintiff's request for a reciprocal no-contact order, Defendant University's Title IX Office placed a no-contact order against Richard O.

112. Defendant WashU conducts an extensive investigation against Plaintiff requiring several harassing, time-consuming interviews over the entire first semester of law school, despite knowing that Richard O had several credible sexual harassment complaints filed against him during his undergraduate studies at University of Chicago, and receiving the rape contract that Richard O gave to Plaintiff.

113. **Plaintiff was found not responsible for any alleged violation.**

21

114. In April 2022, Richard O filed a false action in state court for a temporary protective order against Plaintiff, sharing a court date with 1L final exams.

115. Plaintiff had not contacted Richard O in 9 months.

116. Plaintiff contacted Defendant Walsh to reschedule her exam to appear in court.

117. Plaintiff asked Defendant Walsh if Richard O had reached out to reschedule his examination.

118. Defendant Walsh replied that she could not disclose whether or not Richard had rescheduled his exam.

119. Therefore, Defendant Walsh aided and abetted Richard O in his sexual harassment and abuse of process in the St. Louis County Court in violation of Title IX.

120. Richard O did not appear in court and took his exam as scheduled.

121. Richard O gloated on social media that he completed his exams before Plaintiff was able to complete her exams, and Defendant Copeland was made aware of the same.

122. Defendants WashU, Walsh and Copeland supported Richard O's baseless harassment and filings in St. Louis County Court against Plaintiff.

123. On May 9th, 2022, Plaintiff gave Defendant WashU's Title IX Office and Defendant Copeland a large binder detailing Richard O's sexual harassment of her.

124. None of the Defendants or their agents investigate Plaintiff's claims. (Exhibit K)

125. Defendant Copeland deems Plaintiff's claims "insufficient evidence" on its face.

126. In comparison, Richard O's investigation of Plaintiff occupied Plaintiff's entire first semester of law school. Plaintiff never received an investigation into her sexual assault and harassment allegations against Richard O from Defendant University because she complained of race and/or sex discrimination and retaliation. (Exhibit K)

22

**September 2021 – Defendants Fail to Uphold WashU No-Gun Policy**

127.  Plaintiff enters Defendant WashU Law and joins the Black Law Student Association.

128.  On Monday, September 27th, 2021 at 12:00pm, Plaintiff met with Defendant Walsh about Plaintiff's concerns and complaint regarding Alexis T, one of Richard O's friends who enjoyed touting that they carry guns around campus and to school events.

129.  During the meeting, despite Plaintiff providing screenshots and email evidence, Defendant Walsh told Plaintiff: "too bad, so sad" with regards to Alexis T and there was nothing that she could do despite carrying guns being against school policy.

130.  Defendant Walsh said that she was uninterested in explaining the "culture of St. Louis" to Plaintiff and suggested that Plaintiff "get over it" and "make other friends."

131.  Plaintiff's complaints regarding issues like gun violence on campus, race, and/or sex discrimination and retaliation are repeatedly ignored by Defendants. (Exhibit K)

**January 2022 – Defendant Katz's Racist Criminal Law Class**

132.  In January 2022, during Plaintiff's second semester of law school, Plaintiff was automatically enrolled into Defendant Katz's Criminal Law section.

133.  Defendant Katz had a documented history of students of color complaining and reporting her discriminatory practices and was mentioned during a Women in Color Law Society event as being a "problematic professor to look out for."

134.  Previous students had reported Defendant Katz, but Defendant WashU Law School did not investigate because most of the complaints were from women of color.

**February 2022 – Defendant Katz's Racist Criminal Law Class and Retaliation**

135.  In early February 2022, Professor Katz began to show videos of only Black children (e.g. Latasha Harlin and Tamir Rice) being murdered.

23

136. On Tuesday, February 1st, 2022, Plaintiff and a coalition of other students unionized and collaborated to file a report against Defendant Katz complaining of Katz's racist classroom practices. (Exhibit K)

137. Plaintiff, along with four white classmates, drafted a letter to the administration objecting to Katz's sensationalization of Black children's gruesome murders.

138. Plaintiff (despite not being the only student who objected and/or complained regarding Defendant Katz's racist class practices) is the only student reprimanded and disciplined by Defendants for complaining about Defendant Katz's racism. (Exhibit K)

139. Plaintiff, a Black woman, is the only student called into the Dean's Office five times, substantially interfering with her studies, over the course of her second semester in law school regarding her "tone" and professionalism. (Exhibit K)

140. No other similarly situated student in Plaintiff's section is subjected to these retaliatory actions by Defendant WashU Law School. (Exhibit K)

141. Defendant Katz states in an email on Saturday, February 26, 2022 that perhaps "Peggy Smith would be able to speak to Plaintiff's frame of mind" because they are both Black.

142. Further, Defendants Angela Smith and Peggy Smith (Black female administrators) are selected to harm Plaintiff so Defendant's actions did not appear racist and/or sexually discriminatory.

143. In an email thread dated Feb 25, 2022, Defendant Peggie Smith conspires with and gives Professor Katz advice on how to discriminate against Plaintiff.

144. The "investigation" by Defendant that Peggy Smith was referring to in this email thread, was an agreement by Defendant Walsh, Osgood, Peggy Smith, Angela Smith,

24

Wild, Davis, Gore, Copeland, Kamimura-Jimenez, Hudson, and Wendler-Modde to get Plaintiff expelled for engaging in protected activity, and complaining about racial and/or sexual discrimination and retaliation in her Criminal Law course and at Defendant WashU. (Exhibit K)

145. Defendants' real concern was not that Plaintiff was being disruptive. Instead, Plaintiff was observing Defendants act racist towards her, and then complaining about it.

146. Defendants resolved to punish Plaintiff for her complaints instead of rectifying the racial discrimination to which Plaintiff was subjected. (Exhibit K)

147. Yehoshua W, who is Jewish and white, in Plaintiff's section, is regularly seen on the course recordings derailing class time for over 30 minutes (around ⅓ of the class period) to ask hypotheticals unrelated to the course material. Shane G, another white classmate in Plaintiff's criminal law course states that the First Nations folks' genocide is irrelevant to a case about a First Nations' couple hesitant to take their child to the doctor because of the U.S.'s pernicious legacy of murdering indigenous children. Shane G said that was "unreasonable", and that constituted child abuse.

148. Neither of these white students were reprimanded or disciplined for their racist commentary.

149. In response to Shane G's comments during the same class, Plaintiff was called on and stated that a Native American family may be wary of going to a Western/allopathic doctor in fear of their child being placed in a "re-education" school, and/or killed.

150. Plaintiff was reprimanded, punished, and suspended by Defendants for this comment.

25

151. Around the same time, in February 2022, an anonymous 80-person survey was distributed by Defendant Katz to Plaintiff's criminal law section because other students began to make complaints to the administration regarding Katz's class.

152. None of the students in the survey named Plaintiff as the cause of Katz's poor classroom management.

153. On February 25th, 2022, Defendant Walsh and Katz, two white women, made several racialized comments regarding Plaintiff's appearance, tone-policed her, and complained about Plaintiff's "aggression," "tone," and "professionalism" in a zoom call with Plaintiff, a Black woman.

154. After the call, on the same day, on February 25th, 2022 at 4:47PM CST, Plaintiff sends a follow-up message with scholarly articles and research papers from Harvard, Stanford, and Cambridge Universities about why the discussion they just had was inappropriate, and why what Defendants Walsh and Katz said to Plaintiff was racist.

155. Defendant Katz sent an email on February 26, 2022 at 11:11AM CST to Defendants Walsh and Peggy Smith, concerned that Plaintiff "may see her as a racist or naïve white woman."

156. Defendant Katz also shared the results of her class-wide survey in the e-mail to Defendants Walsh and Peggy Smith, along with her assertions that the comments regarding the toxic classroom environment should be attributed to Plaintiff.

157. These comments from students could have easily been attributed to Plaintiff's white and male classmates, Yehoshua W, Shane G or Graeme H.

158. Yet, Defendant Katz assigned these comments to Plaintiff, a Black woman.

26

159.  Defendant Katz states in an email on Saturday, February 26, 2022 to Defendant Osgood, Peggy Smith, and Walsh that perhaps "Peggy Smith would be able to speak to Plaintiff's frame of mind" because they are both Black women.

160.  Further, Defendants Angela Smith and Peggy Smith (Black female administrators) and Defendant Adrienne Davis (a Black female professor and Plaintiff's future supervisor) are intentionally selected for the campaign to harm and retaliate against Plaintiff, a Black woman, for her complaints so that Defendant's actions did not facially appear to be racist and/or sexually discriminatory. (Exhibit K)

**March 2022 - April 2022**

**Defendant Peggy Smith Forbids Plaintiff's Complaints of Race and/or Sex Discrimination regarding Defendant Katz, but Allows Complaints of Antisemitism**

161.  Plaintiff arrives at Defendant Peggy Smith's office on Thursday, April 7th, 2022, with two of her white friends (one male, and one female) for moral support.

162.  Defendant Peggy Smith sternly tells Plaintiff's white friends to leave.

163.  Plaintiff goes into Defendant Peggy Smith's office alone.

164.   Defendant Peggy Smith has no disciplinary authority of students as part of her role and attests to this in the SCB Hearing in or around March 2023. Yet, Defendant Smith tells Plaintiff that "if [Plaintiff] were to say that a policy or law were "racist" in her classroom, [Plaintiff] would be suspended." (Exhibit K)

165.  Defendant Peggy Smith tells Plaintiff that complaining of antisemitism is acceptable but complaining of race and/or sex discrimination is not acceptable.

27

166. Plaintiff asked Defendant Peggy Smith if this meeting is a disciplinary warning. Defendant Peggy Smith says "No, it is not a warning," and "is just giving advice that may make life and law school easier."

167. Defendant Peggy Smith discriminated against Plaintiff by telling her, a victim of race and sex discrimination at Defendant WashU, and to refrain from calling any law, policy, or opinion "racist" or describing systemic or pattern of discrimination as "racism" or "[Plaintiff] would be expelled from the class."

168. Plaintiff asked Defendant Peggy Smith if she had met with Shane G or Graeme H, two white male students who espoused their opinions in class about how the First Nations people genocide was inconsequential in a case about First Nations people, how Plaintiff "doesn't belong in the field of law but instead belongs in a discipline like sociology," or how BLM protestors should be shot/killed in defense of property.

169. Defendant Peggy Smith says she did not meet with Shane G or Graeme H as "it was not her concern."

170. In or around March 2022, Defendant Katz sent an email, excited, to Defendants Peggy Smith, Angela Smith, Osgood, and Walsh stating that Plaintiff had stopped participating in class.

171. On Monday, March 28th, 2022, Defendant Katz made a racist comment to Plaintiff regarding her not being able to understand the course material or stay on topic in class.

172. Plaintiff wrote an email to Defendants Walsh and Smith describing the incident.

173. Defendant Angela Smith tells Plaintiff "Thanks" and continues to ignore her.

174. Defendant, along with Defendant's agents, fail to investigate Defendant Katz's racist actions towards Plaintiff or Plaintiff's complaints of the same. (Exhibit K)

28

175. Through participating in the Diverse Attorney Pipeline Program, Plaintiff is offered a Summer Associate position with Norton Rose Fulbright in New York in March of 2022.

176. Plaintiff notified Hilary Von Rohr, a Lecturer in Law at Defendant WashU and her career advisor that she had been offered a Summer Associate position with Norton Rose Fulbright in New York.

177. Hilary Von Rohr told Plaintiff that her summer employment was logged in Defendant WashU Law School's database regarding law students matriculating into BigLaw firms.

178. This database is how Defendants Osgood and Walsh knew how to interfere with Plaintiff's post-graduate employment at Norton Rose Fulbright.

### May 2022 - August 2022

### Defendants' Thwart Plaintiff's Attempt to Unilaterally Transfer to Another Law School

179. Defendant Katz is given a Civil Rights award by Defendant WashU and Defendant Osgood after she is fired by Defendant WashU for race discrimination.

180. In or around June 2022, Plaintiff applied to around 10 other law schools in the summer after her 1st year.

181. Plaintiff feared returning to Defendant WashU for her safety due to sexual harassment, racial discrimination, and retaliation.

182. **This is the only time that Plaintiff unilaterally tried to transfer from WashU.**

183. In early June 2022, Plaintiff requested Defendant Walsh send a letter of good standing to transfer schools.

184. GULC and Columbia contacted Plaintiff in July 2022, telling her that they did not receive a letter of good standing from Defendant WashU Law School.

185. Defendant Walsh refused to send timely letters on Plaintiff's behalf to GULC.

29

186.  Only after Plaintiff's mother, a member of the D.C. Bar, personally asked and called Defendant Walsh to send the letters did Defendant Walsh tell Plaintiff's mother that she planned to send the letters. (Exhibit L)

187.  Neither plaintiff, nor her mother, ever received confirmation from GULC or Columbia that they received the letters of good standing from Defendants WashU, Walsh or Osgood.

188.  Thus, Defendants WashU, Walsh, and Osgood did not support the unilateral transfer of Plaintiff to another law school after her 1st year.

189.  Defendants did not support Plaintiff's unilateral transfer because they wanted to harm and defame Plaintiff as being a "threat" to the WashU community and expel her during her 2nd year of law school and could not do this if she transferred unilaterally.

190.  In July 2022, Plaintiff received glowing reviews at Norton Rose Fulbright, and was told by the Director of HR that she was "one of the most professional Summer associates that he has ever seen" and was offered a return position for Summer 2023.

### August 2022

### Defendants force Plaintiff to Return to WashU to Continue Harming Plaintiff

191.  Plaintiff returned to Defendant University after her transfer applications were denied.

192.  Plaintiff was awarded her full $37,000 scholarship for her 2nd year of law school, elected as Vice President of the Black Graduate Students Association, and elected as Advocacy Chair of the Black Law Students Association.

193.  Plaintiff enrolled in 2 classes from Defendant Adrienne D. Davis, "Trusts and Estates," and "Race in American Law" during the Fall 2022 semester.

194. Plaintiff made a post on social media in the beginning of August 2022 that she did not feel safe returning to Defendant WashU because of potential retaliation regarding her complaints of sex and/or race discrimination and retaliation at Defendant University.

195. Defendant Angela Smith contacted Plaintiff about the instagram post that Plaintiff made regarding not feeling safe at Defendant University, and asked to meet.

196. Plaintiff reiterated her sex and race discrimination complaints in the e-mail to Defendant Angela Smith.

197. Plaintiff said in her e-mail response to Defendant Angela Smith that she had been continually retraumatized by telling different administrators at Defendant University the details regarding Richard O, and Defendants' sexual and racial discrimination, and then subsequently ignored.

198. Defendant Angela Smith subsequently ignores Plaintiff.

199. Defendants Osgood, Walsh, Angela Smith, and Peggy Smith conspired to expel Plaintiff from the law school, and recruit Defendant Davis to gain Plaintiff's trust in the hope that Defendants could manufacture a facially legitimate reason to expel Plaintiff.

### September 2022 - October 2022

### Defendant Davis Hires Plaintiff, and Stages Performance to Expel Plaintiff

200. Defendant Davis sent an invitation to the law school community to be her research assistant in September 2022. Plaintiff applied to Defendant Davis's email advertisement and apologized for her lower-than-average grades, explaining that she was sexually harassed by a classmate during the entirety of her 1L year.

201. Plaintiff was hired by Defendant Davis to perform research on racism and history in the 1L Curriculum.

31

202. Plaintiff, to this day, has never been fired from Defendant University.

203. Plaintiff was given access to Workday, an Employee Self Service platform in connection with her employment by Defendant Davis by Defendant University.

204. Plaintiff was also awarded a $1000 CREE2 Grant from the Center for Race, Ethnicity, and Equity to perform research for Defendant Davis on racism and history in the 1L Curriculum.

205. Defendant Davis wrote Plaintiff an email, stating that she "liked" (both physically and metaphorically, as Defendant Davis specified in her email) Plaintiff's instagram page, where Plaintiff discussed at length her subjection to sexual and racial violence at Defendant University.

206. Defendant Davis acted oddly, sending Plaintiff messages outside of business hours and asking her to meet in her office regarding unrelated and inappropriate discussions.

207. During a one-on-one meeting after one of Defendant Davis's classes, Defendant Davis fraudulently memorialized their discussion and stated that Plaintiff "must raise her hand before talking in class" when this was not discussed in their meeting.

208. Instead, Defendant Davis told Plaintiff in her office that Plaintiff was forbidden from using the words "coon" or "Uncle Tom" – words colloquially used by Black people to describe Black people who harm other Black people for their own self-benefit.

209. Plaintiff did not speak in either her Trusts and Estates or her Race in the Law class for the next two weeks. During this period, Defendant Davis tried to entice Plaintiff to speak by gesticulating "Counselor Brown would say" and musings regarding Plaintiff's praxis, but Plaintiff would not speak. Defendant Davis sent Plaintiff an email asking if she raised her hand (she didn't) in a class of 90 people.

210. Plaintiff only spoke after being solicited by a male Native American classmate and fellow coworker under Defendant Davis of Plaintiff's, when Defendant Davis called on Plaintiff on November 2, 2022.

**November 2, 2022**

**Defendant Davis Buckles Under Pressure from Defendants Osgood, Walsh, Peggy Smith, and Angela Smith, and Botches Defendants' Plan to Get Plaintiff Expelled**

211. On November 2, 2022, Plaintiff attended "Race in the Law" with Defendant Davis.

212. Defendant Davis started the classroom recording at approximately 10:30AM CST on November 2, 2022. Plaintiff, along with her classmates, saw this occur.

213. Defendant Davis's November 2, 2022 class recording was never uploaded to Canvas.

214. Every single other class of Defendant Davis's was uploaded to Canvas.

215. The tape of Defendant Davis's November 2nd class was requested to be shown during the SCB hearing to exonerate Plaintiff and support the fact that Plaintiff had neither harassed or threatened anyone on campus, and support the fact that Defendant Davis staged an emotional bowel movement performance to get Plaintiff expelled. (Exhibit K)

216. Defendants have declined to view/produce Defendant Davis's November 2, 2022 class for any reason. (Exhibit K)

217. On November 2, 2022, Defendant Davis disseminated an article about Rishi Sunak to the class, and solicited a classroom discussion on Rishi Sunak, and whether or not he is a "diversity success story" or a "diversity failure."

218. Davis assigned the students into groups. Plaintiff spoke to her group members, but never to Davis. Davis called on different students, and lambasted Plaintiff's classmates as "unprofessional" for stating "Rishi Sunak sucks."

33

219. Defendant Davis calls on a fellow research assistant, and coworker of Plaintiff's, who was in Plaintiff's small group discussion from earlier.

220. Plaintiff's Native-American male co-worker in the same year who worked under Defendant Davis in the same capacity as Plaintiff objected to Defendant Davis's assertion that to say something "sucks" is not professional; instead, he said that "policing language is utilizing the same white supremacy that we are supposed to be trying to dismantle."

221. Plaintiff's Native-American male co-worker gesticulated with his hands "Counselor Brown articulated this much more eloquently than me."

222. Defendant Davis called on Plaintiff.

223. Plaintiff says, "the classroom is the safest place for us to talk about linguistic racism."

224. Defendant Davis yells: "I am a white supremacist. I am Bull Connor. I am the KKK."

225. Defendant Davis has an emotional meltdown. She feigned that Plaintiff called her "Bull Connor" and a white supremacist, and stormed out of the classroom. (Exhibit K)

226. Plaintiff replied, "Professor, I do not mean to disparage you as I greatly admire you as my professor."

227. Defendant Davis said: "I am going to go to the Dean's Office to get you the Professor that you deserve." Defendant Davis ran out of the room for about a minute.

228. Plaintiff then turned around, looked directly into the camera, filming, and stated while Defendant Davis was outside of the room: "I am not taking responsibility for Professor Davis's mental health outburst." (Exhibit K)

229. Defendant Davis came back into the room in tears, and dramatically throws her microphone down on the podium, causing a ricochet of microphone feedback across the room.

230. Plaintiff sent a follow up email to Defendant Davis, apologizing if she said anything wrong, and offered not to speak in class for the rest of the semester. (Exhibit K)

231. Defendant Davis then cancelled classes for the next week, and assigned a YouTube video for the class to watch.

232. Plaintiff attended office hours with Professor Hollander-Blumoff, her Civil Procedure, Federal Courts, and Negotiation professor, after Defendant Davis's meltdown, and told her about Defendant Davis's meltdown.

233. Professor Hollander-Blumoff said it was bizarre, but not to worry as "sometimes Professors have things going on in their personal life separate from students."

## November 4th, 2022

### Defendant Wild Suspends Plaintiff and Threatens Plaintiff with Arrest

234. On November 4th, 2022, Dean Robert Wild called Plaintiff to inform her that she was suspended from Defendant WashU campus indefinitely effective immediately.

235. None of Plaintiff's non-Black classmates or non-Black coworkers were suspended or otherwise disciplined after Defendant Davis's November 2nd meltdown. (Exhibit K)

236. Defendant Wild gave Plaintiff 40 minutes to collect her possessions from her locker in Defendant WashU.

237. Defendant Wild's suspension letter detailed that Plaintiff would be arrested (by the St. Louis City Police or the WashU Police) if Plaintiff were found to be in any on campus or off-campus event OR apartment, constructively evicting her from her housing.

35

238.  Plaintiff's apartment building was denoted on a map labeled by the WashU police department as the "off-campus Rosedale patrol zone." (Exhibit P)

239.  Plaintiff was forced to flee St. Louis immediately due to fear of arrest and/or detention in St. Louis County Jail by Defendants.

240.  Defendant Robert Wild's letter to Plaintiff sent on November 4th, 2022, stated that she did not pose a "physical threat" to campus.

241.  Yet, Defendant Wild maintained that Plaintiff was engaged in a pattern of "threatening" and "harassing" other professors and students in violation of Sections 2 and 4 of the Student Conduct Code.

242.  Plaintiff was temporarily suspended on November 4th, 2022, after Defendant Davis's performance on November 2nd, 2022 because Plaintiff is a Black woman and complained of race and/or sex discrimination at Defendant WashU.

243.  Plaintiff, elected as Vice President of the Black Graduate Students Association, was forbidden from maintaining her position in the organization and leasehold in St. Louis, Missouri, per the Wash U police department's designation of her apartment as an "off campus apartment" subject to patrol.

244.  Defendants prohibited Plaintiff from seeing "Black Panther" at a local off-campus movie theater or attending any other campus events.

245.   Defendants Walsh and Wild tell Plaintiff if she attended the viewing (which is off campus at a local AMC theater in St. Louis), Plaintiff would be in violation of the temporary suspension and subject to more sanctions.

246. On November 9th, 2022, Defendant Walsh and Wild meet with Plaintiff at 4 P.M. CST via zoom and told her that she was "temporarily suspended" and "in huge trouble" and that she was "not to step foot on campus" or "[Plaintiff] will be arrested."

247. On November 10th, Defendant Wild sent a suspension letter addressed to Plaintiff reiterating that Plaintiff would be arrested if she violated the terms of her suspension, and could only ask for permission to come on campus to seek mental health services. (Exhibit G)

248. Plaintiff's mother, a member of the D.C. bar, emailed a handwritten letter to Defendants Walsh and Wild telling them that Defendant Davis feigned her objection to Plaintiff's innocuous comment to harm her. Plaintiff's mother attached Davis's bizarre emails to her letter, and urged Defendant to stop discriminating against Plaintiff. (Exhibit L)

249. Defendants would have never ignored the pleas from a white student and her mother, a member of the D.C. Bar and Harvard Law School '92. (Exhibit L)

250. Plaintiff's mother sent a second handwritten letter to Defendants Walsh and Wild explaining that Defendant Davis' behavior in punishing Plaintiff for her race and/or sex discrimination complaints is typical of a "coon" or "Uncle Tom" - a Black person who acts to harm other Black people for personal short-term benefit. (Exhibit L)

251. Plaintiff's mother told Defendants Wild, Walsh, Wendler-Modde, Hudson, and Gore that Plaintiff was being uniquely targeted and retaliated against because she is Black and complained of race and/or sex discrimination at Defendant University. (Exhibit L)

252. Plaintiff's mother sent a third handwritten letter containing the statements of Plaintiff's classmates, showing that statements of the students support the conclusion

that Defendant Davis' feigned objection to Plaintiff's innocuous statement to get her expelled from Defendant University. (Exhibit L)

**November 2022 – Defendants Force Plaintiff to Attend GULC**

253.  In or around November 2022, Defendants Walsh and Gore showed Plaintiff Defendants' "evidence." Among the evidence against Plaintiff were copies of Plaintiff's social media postings about Cardi B and Drake, Black musicians that Plaintiff enjoyed in support of their argument that Plaintiff was "unfit" to continue attending Defendant WashU.

254.  In or around November 2022, Defendants WashU, Osgood, Wild, Gore, Hudson, and Kamimura-Jiminez refused to rectify Plaintiff's discrimination complaints despite having authority to do so about Defendant Davis's November 2, 2022, performance resulting in Defendant Wild's November 4, 2022 suspension, and Plaintiff's concerns regarding Defendants Osgood, Walsh, Wendler-Modde, Gore, and Hudson's demands for Plaintiff to relocate to GULC. (Exhibit K)

255.  In or around November 2022, Defendants WashU, Osgood, Wild, Wendler-Modde, Gore, Walsh, Davis, Peggie Smith, Angela Smith, Katz, and Hudson forced Plaintiff to spend her 3rd year at GULC. (Exhibit K)

256.  Plaintiff complied with Defendants' demands to enroll at GULC. (Exhibit K)

**December 2022 – Defendants Establish Sham Proceeding via SCB Hearing**

257.  In preparation for the SCB Proceeding, Defendant Hudson ruled that no videos of any class are allowed to be entered into evidence, even though Plaintiff's behavior at several classes (specifically, Defendant Davis's November 2, 2022 class) were contested and argued as a violation of the Student Conduct Code. (Exhibit K)

258. Plaintiff's statements regarding Defendant Davis's conduct were not allowed, and Plaintiff is not allowed to present evidence regarding the Title IX proceedings between Richard O and Plaintiff. (Exhibit K)

259. Defendant Walsh's witnesses were allowed to make statements regarding Defendant Davis and the Title IX proceedings between Richard O and Plaintiff. (Exhibit K)

260. Defendants did not admit any of this evidence from Plaintiff in the SCB hearing because it showed that Plaintiff was discriminated against and retaliated against based on her race and sex and because she complained about race and/or sex discrimination and retaliation. (Exhibit K)

261. Plaintiff objected to Defendant WashU and Defendant Hudson's selection of Nicholas Armstrong, who held Plaintiff's BLSA position of advocacy chair directly before Plaintiff, and Breia Maddox, a friend of Richard O's who had fed him her social media content since Plaintiff blocked him, two members of the SCB.

262. Further, both individuals were close friends with two of Defendant Walsh's witnesses.

263. Defendant Hudson removed Breia Maddox from the SCB but not Nicholas Armstrong, breaching Plaintiff's rights to a fair hearing with neutral arbiters.

264. An exorbitant number of discriminatory, unfair, and kangaroo-court-like restrictions were made in violation of Plaintiff's 5th and 14th amendment rights and fundamental fairness. (Exhibit K)

265. Plaintiff complained of these unfair and biased restrictions on evidence. (Exhibit K)

266. Defendants WashU, Osgood, Hudson, Gore, Wild, and Wendler-Modde ignored Plaintiff and did not acknowledge the same. (Exhibit K)

267.  In response to the kangaroo-court-like restrictions imposed by Defendants WashU, Osgood, Walsh, Hudson, Wild, Wendell-Modde, and Gore for the SCB hearing, Plaintiff paid $15,000 to retain Lento Law Firm (of whom Joseph Lento, the Managing Partner, has been suspended from the practice of law in Pennsylvania for 5 years) in connection with legal representation in this hearing.

268.  Plaintiff's case is assigned to Stacy T. Forchetti (hereafter, Forchetti) who oddly and suspiciously started at the firm at the same time as Plaintiff's SCB hearing.

269.  Forchetti never produced any work product for the entirety of the SCB hearing despite receiving $15,000 in exchange for legal representation of Plaintiff.

270.  Forchetti repeatedly tells Plaintiff that she has not suffered any discrimination, racism, or injuries from Defendant WashU, despite WashU harming Plaintiff because she is Black and complained of race and/or sex discrimination and retaliation.

271.  Forchetti, knowing that Plaintiff was employed by Defendant WashU and Defendant Davis, did not inform Plaintiff of her need to file with the EEOC or any other administrative adjudicative body.

272.  Forchetti does not file with the EEOC like any civil rights Plaintiff lawyer exercising an ordinary level of care in the profession would.

273.  Forchetti ignored Plaintiff's emails and pleas for assistance to assert her race and sex discrimination claims before the SCB, delay the SCB process and missed SCB Motion and Answer deadlines from Defendant Hudson to conspire and facilitate the unjust enrichment, harm, race and/or sex discrimination and retaliation against Plaintiff.

274.  Forchetti advocated for Plaintiff to sign identical agreements (including a release) that Plaintiff, earlier upon retaining Lento Law Firm, refused to sign.

275.  Forchetti repeatedly reiterated throughout the hearing that "no harm to Plaintiff had occurred" despite being aware of Defendant Hudson and WashU's myriad of SCB hearing decisions regarding the admission of Plaintiff's evidence that were unfair, arbitrary, capricious, unrelated to a legitimate school concern, and violating Plaintiff's 5th and 14th amendment rights to a fair hearing before deprivation of her property interest.

276.  Forchetti also failed to inform Plaintiff of her rights under Title VI and Title VII because she was conspiring with Defendant University to defraud Plaintiff.

277.  On December 9th, 2022, Defendant Gore informed Plaintiff that Defendants Davis and Defendant Katz were dropped from being called as witnesses at the hearing.

278.  The only folks left to testify in the SCB hearing were 5 students who disliked Plaintiff after the Title IX fallout involving Defendant Copeland and Richard O, and two black female administrators, Defendant Peggy Smith and Defendant Angela Smith, **that Plaintiff has never had a class with.** (Exhibit K)

## February 2023 - May 2023: The SCB Hearing as a Sham Proceeding and Kangaroo Court

279.  **Not one professor that Plaintiff had testified against Plaintiff at the hearing.**

280.  Only one of the students that testified against Plaintiff during the SCB hearing testified that Plaintiff *may* have exhibited harassing behavior towards her.

281.  This student, Cara Hunt (hereafter, "Cara"), a Black woman, testified against Plaintiff and said that Plaintiff was harassing her. Plaintiff asked her, "Did you ever report our mutual classmate for peeing on you and making you uncomfortable? I never did that to you."

282. Cara published this information to Plaintiff and other witnesses (one of whom was forbidden from testifying) on the roof in the hot tub of one of their mutual classmates' apartment complexes in or around February 2022.

283. When Plaintiff asked Cara about another classmate peeing on her and her subsequent discomfort, Cara began to cry in the SCB Hearing and said "See, this is why I didn't even want to do this."

284. Defendants allowed Cara, but not Plaintiff, to testify about what occurred during Defendant Davis's November 2nd class and the Title IX proceeding. (Exhibit K)

285. Neither Defendants, nor Forchetti, raised or rectified these evidentiary/14th amendment issues. Plaintiff also objected to each witness's testimony being introduced regarding Defendant Davis's November 2nd, 2022 class – yet the video of the class was not allowed to be presented.

286. Neither Defendant Wendler-Modde, Hudson, Gore, nor Forchetti attempted to cure this defamatory testimony though Plaintiff asked them to do so.

287. Dinora Orozco (hereafter, Dinora), a white-Hispanic woman, testified that Plaintiff's critiques of Defendant Katz were valid; and that Defendant Katz's class was "trash," and that she felt harassed and threatened by her white classmates ("The white kids come up to me and ask if I think like [Plaintiff] because we are both women of color.")

288. Dinora testified that Plaintiff never harassed or threatened her.

289. Defendant Walsh unfairly blamed Plaintiff for issues outside of her control throughout Defendant Walsh's questioning of witnesses, including Dinora and Cara.

290. Plaintiff could not control white students' comfort in the classroom yet was suspended by Defendants WashU, Osgood, Walsh, Gore, and Wild for this reason. (Exhibit K)

42

291.  A white male student, Graeme Harcourt ("Graeme H"), who testified on Defendant Walsh's behalf, espoused that conversations involving the concept of race made him "generally uncomfortable."

292.  Graeme H explicitly testified that Plaintiff never threatened or harassed him.

293.  Defendant Walsh still attributed Graeme H's general discomfort to Plaintiff, a Black woman, because Plaintiff is Black and complained of race and/or sex discrimination and retaliation.

294.  Defendant WashU is a predominantly white institution.

295.  Yet, the participants in the SCB proceeding were disproportionately Black.

296.  Defendant Hudson, the Chair of the Student Conduct Board, is Black.

297.  Cara Hunt, the only student alleging that Plaintiff harassed her, is Black.

298.  Defendants Angela Smith and Peggy Smith, the only two administrators testifying against Plaintiff in the SCB are Black.

299.  Defendant Gore, who is Black, replaced Defendant Wild, a white man, as the primary supporter of Defendant Walsh to provide a veneer of non-racist sentiment and legitimacy.

300.  Defendant Hudson is not a lawyer and has never gone to law school but was selected to preside over the proceeding because he 1) is Black and 2) his Blackness provided a veneer of non-racist intent and sentiment from Defendant WashU.

301.  Defendants intentionally engineered a predominantly Black and female hearing to obfuscate allegations of race and/or sex discrimination and retaliation. (Exhibit K)

302.  Defendant Hudson and Wendler-Modde omitted the aforementioned facts regarding several witness's testimony from the SCB hearing determination letter, resulting in a false and defamatory recollection of the events during the hearing. (Exhibit K)

303. Additionally, Defendants Hudson and Walsh did not allow for five of witnesses to testify on Plaintiff's behalf who asserted that Plaintiff would not have been suspended if she were white: (names redacted for privacy, but available at the court's request) a PhD student in Microbiology at Defendant WashU, a Medical student at Defendant WashU, and three PhD students in Sociology at Defendant WashU.

304. Every single one of Plaintiff's witnesses barred from participation was Black.

305. The only witness allowed to testify on behalf of Plaintiff was one white person.

306. **The one white person that testified on Plaintiff's behalf testified that Plaintiff would not have been suspended if she were white.**

307. Defendant Hudson interrupted this witness, Plaintiff's only witness, and forbade her from reading her full witness statement regarding Defendant Davis's November 2, 2022 class, the singular class that precipitated Plaintiff's suspension from Defendant WashU.

308. Defendant Walsh asked Plaintiff **<u>only one question</u>** after Plaintiff was suspended for 6 months straight, denied access to attend class in person, and over 30% of her Spring 2023 courses were lost by Defendant Walsh: "How were Plaintiff's postings on social media to 'clear [Plaintiff's] name?"

309. Plaintiff replied that her white Jewish classmate, Yoshua W, would derail class for 45 minutes to an hour on a tangent in the middle of class, badgering the professor with off-topic and unrelated questions to the lesson plan.

310. Plaintiff testified because she is a Black female student, if she would ask even one question related to the course material regarding the racialized policy implications of the law, she would be labeled "disruptive" and subjected to racism vis a vis meritless claims of "unprofessionalism" and tone-policing. (<u>Exhibit K</u>)

311. All of the aforementioned exchanges between Plaintiff and Defendant Walsh's witnesses were omitted from the SCB's determination letter furnished to Bar Associations and Plaintiff's prospective employers – including those in New York (Norton Rose Fulbright) and Washington, D.C. such as the United Nations Permanent Forum for People of African Descent, the Street Law Fellowship at GULC, the National Center for Youth Law, and the Washington D.C. Office of Human Rights. (Exhibit K)

312. Defendant Walsh argued in the suspension letter that Plaintiff was a "threat" and "harassing" students because Plaintiff is a Black woman who complained of race and/or sex discrimination and retaliation. (Exhibit K)

313. Defendant Walsh argued in bad faith in the SCB Hearing to punish Plaintiff. (Exhibit K)

314. Defendant Walsh knowingly, willfully, and intentionally abused the SCB hearing by arguing Plaintiff was a "threat" and "harassing" students when she had no evidence.

315. Accordingly, Defendant Walsh did not meet her burden in the SCB hearing, and lost. (Exhibit K)

316. Defendant Walsh forced Plaintiff to attend GULC. In addition, Defendant Walsh lashed out on Plaintiff through retaliatory billing practices and the unilateral revocation of her scholarship in August 2023 when she matriculated into GULC.

## Defendants Harm Plaintiff Simultaneously and Independently of SCB Hearing Itself: Defendants Harm Plaintiff While Suspended from the Classroom

317. Defendants – but namely Defendant Walsh - substantially interfered with the rights of Plaintiff because Plaintiff is a Black woman.

318. Defendant Walsh misplaced or lost over 30% of the class recordings from Plaintiff's classes during Plaintiff's suspension (including Plaintiff's 1st Amendment classes

regarding free speech in public/private schools) prohibited Plaintiff from communicating with professors and restricted Plaintiff from possession of her apartment, all on-campus and off-campus activities, classroom discussion, and discussion boards while her white non-complaining peers were not. (Exhibit K)

319.  Additionally, Defendant Walsh, in an email to Plaintiff's "Workplace Discrimination" professor, instructed the professor to "lock" the Canvas discussion board so Plaintiff would not be able to participate.

320.  On Wednesday, February 8th, 2023, Professor Leila Sadat sent Plaintiff an email, accusing her of being negligent with her course performance and attendance during her temporary suspension, when it was really Defendant Walsh's negligence that forbade Plaintiff from participating in class like her white non-complaining classmates.

321.  Defendant Walsh forced Plaintiff to withdraw from the War Crimes Tribunal seminar with Professor Sadat over a month after Spring 2023 classes had started.

322.  Defendant Walsh's interference and failure to provide Plaintiff with her course recordings and discriminatory actions towards Plaintiff caused Plaintiff to struggle with coursework.

323.  As a result, the worst grades on Plaintiff's transcript are during the Spring 2023 semester.

**Defendants Harm Plaintiff While Suspended in her Employment Internships**

324.  During Plaintiff's second year of law school due to her "lack of good standing" during her discriminatory suspension from November 2022 through May 2023, Defendants WashU, tortiously and deliberately interfered in Plaintiff's employment contracts between Plaintiff and D.C. entities, namely the National Center for Youth Law and the United States Permanent Forum for People of African Descent, forbidding Plaintiff's participation.

46

325. Defendants WashU, Osgood, Wendler-Modde, Gore, Hudson and Walsh enforced discriminatory and arbitrary prohibitions on Plaintiff's ability to accept employment contracts in Washington D.C.

326. Defendants WashU and Elizabeth Walsh prohibited Plaintiff from participation in the "Semester in D.C. Externship" which has recently been renamed to the "Congressional & Administrative Law Externship."

**May 2023 – August 2023: Plaintiff is Forced to Attend GULC**

327. Plaintiff was found "not guilty" on all charges by the SCB in May 2023.

328. Plaintiff was temporarily suspended for 6 months, from November 2022 until May 2023 for no cause, roughly 6 months or 180 days from the date of her temporary suspension, which was also the statute of limitations to file with the Missouri Commission for Human Rights, the Missouri administrative prerequisite for filing with the EEOC.

329. Defendant WashU, Osgood, Walsh, Gore, Wild, Wendler-Modde, Copeland, Davis, Angela Smith, Peggy Smith, Kamimura-Jimenez, Katz, and Hudson forced Plaintiff to attend GULC for her 3rd year of law school. (Exhibit K)

330. On Thursday, April 20th, 2023, Plaintiff sent a spoliation letter to the entirety of Defendant WashU's General Counsel Office, including Defendant Gore and Wendler-Modde stating that Plaintiff requests for all evidence regarding the hearing and her tenure at Defendant WashU to be preserved for future litigation.

331. Defendants did not acknowledge Plaintiff's email despite Plaintiff's request to do so.

332. Plaintiff started her "Summer Associate" role with Norton Rose Fulbright in New York less than 2 weeks after the conclusion of the SCB hearing, and Defendant was made aware of the same. Plaintiff disclosed during a routine exit-interview with HR that she was

47

spending her 3rd year of law school at GULC because of the race and/or sex discrimination at Defendant, and that her transcript would reflect those changes.

333.  Norton Rose Fulbright told Plaintiff that "they would look out for the transcript change when [Plaintiff] started next Fall."

334.  As a result of Defendants' WashU, Wild, Walsh, Osgood, Davis, Kamimura-Jimenez, Copeland, Angela Smith, Peggy Smith, Katz, Wendler-Modde, Hudson, and Gore's wrongful suspension of plaintiff, and Defendant's discriminatory and tortious conduct, Plaintiff is not offered a return offer (where the incoming first-year associate salary is $235,000) from Norton Rose Fulbright in New York.

335.  Defendants WashU, Wild, Walsh, Osgood, Davis, Kamimura-Jimenez, Copeland, Angela Smith, Peggy Smith, Katz, Wendler-Modde, Hudson, Burns and Gore's material interference with Plaintiff's rights adversely affected her career trajectory. (Exhibit K)

**August 2023-May 2024: Defendants Continue to Harass Plaintiff While at GULC**

336.  Defendants WashU, Osgood, Burns, and Walsh breached the consortium agreement between Defendants, Plaintiff, and GULC by failing to pay GULC tuition, resulting in Plaintiff being unable to register for classes. (Exhibit K)

337.  Defendant WashU vis a vis Defendant Burns and Walsh told Plaintiff in Washington D.C., at GULC that she was responsible for GULC tuition despite the existence of the consortium agreement and having paid Defendant WashU $17,455.02 cash.

338.  Defendant Burns sent Plaintiff a letter after she matriculated at GULC in August confirming that Plaintiff had a $37,000 scholarship. (Exhibit M)

339.  Defendants including but not limited to Osgood, Burns and Walsh breached the consortium agreement between Plaintiff, Defendant WashU and GULC and unilaterally

48

revoked Plaintiff's scholarship in retaliation for complaining of race and sex discrimination at Defendant WashU. (Exhibit K)

340.  The Department of Education in Washington D.C. contacted Defendants WashU, Osgood, Walsh, and Burns concerning WashU's breach of the consortium agreement and failure to honor the $37,000 scholarship. Plaintiff requests jurisdictional discovery regarding the same. (Exhibit K)

341.  The Department of Education in Washington D.C. directed Defendants WashU, Osgood, Burns, and Walsh to remit payment to GULC, and allow Plaintiff to register for classes. Plaintiff requests jurisdictional discovery regarding the same. (Exhibit K)

342.  Plaintiff did not ever receive confirmation that Defendant WashU paid GULC on her behalf pursuant to the consortium agreement. (Exhibit K)

343.  Defendants WashU, Osgood, Burns, and Walsh stole the entire $30,000 Plaintiff borrowed in federal FAFSA student loans for living expenses while attending GULC in Washington D.C., leaving Plaintiff no federal student loan funds for living expenses during her third year of law school.

344.  Defendants' theft of Plaintiff's FAFSA student loans cause was the but-for cause of Plaintiff's resignation from the D.C. Office of Human Rights to work for a solo-practitioner and immigration lawyer to pay for living expenses.

345.  Defendants through their acts and omissions to the D.C. Office of Human Rights interfered with Plaintiff's career trajectory again.

346.  Defendant WashU via Defendant Walsh told Rebecca Borowitz, an Attorney Advisor at the D.C. Office of Human Rights that Plaintiff was likely not going to be able to keep her job at the D.C. Office of Human Rights because of her loss of scholarship.

49

347. Ms. Borowitz told Plaintiff this shortly after Plaintiff's resignation as a law clerk at the D.C. Office of Human Rights.

### May 2024 – June 2025 Defendant Initiates Garnishment Proceedings

348. Defendant Davis was the Commencement Speaker for Plaintiff's graduation.

349. Defendants WashU, Walsh, and Osgood made Defendant Davis Commencement Speaker because they supported Defendant Davis' actions against Plaintiff, and wanted to discourage Plaintiff from attending her graduation.

350. Defendants were successful as Plaintiff did not attend her graduation.

351. Defendants and their agents continue, to this day, to ignore Plaintiff and her claims of race and/or sex discrimination and retaliation. (Exhibit K)

352. Defendant continues to subject Plaintiff to race and/or sex discrimination, and retaliation has failed to remedy or prevent the race and/or sex discrimination and retaliation to which Plaintiff has been subjected. (Exhibit K)

353. Defendants have initiated garnishment proceedings against Plaintiff for $40,294.00, involving Plaintiff, Defendant WashU, and GULC's consortium agreement regarding Plaintiff's tuition and Defendants' contractual obligations to GULC and Plaintiff between 2023 to the present.

354. The conduct of Defendants, as set forth above, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment and schooling were altered as the environment was hostile and abusive. (Exhibit K)

355. Defendants' conduct, as set forth above, was outrageous under the circumstances, was done by and with the knowledge of administration and warrants the imposition of punitive damages against Defendants. (Exhibit K)

50

356.  Plaintiff's race and/or sex was the motivating and/or determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including without limitation, in harming Plaintiff and in the creation of the hostile work environment and wrongful suspension and revocation of scholarship to which Plaintiff was subjected.

357.  The conduct of Defendants, as set forth above, was willful and intentional.

## COUNT I - TITLE VII

358.  Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

359.  Plaintiff restates and realleges the allegations contained both above and below as contained therein.

360.  By their actions set forth above, Defendants committed race and/or sex discrimination upon Plaintiff in violation of Title VII.

361.  Defendant Peggy Smith expressly told Plaintiff would be expelled for "calling a policy racist and/or sexist."

362.  Plaintiff was suspended for six months after Defendant Peggy Smith threatened her with the same after complaining of race and/or sex discrimination and retaliation the previous semester.

363.  On June 17, 2025, the EEOC issued Plaintiff a right to sue Defendant WashU for race and/or sex discrimination and retaliation. (Exhibit O)

364.  Plaintiff is alleging herein this complaint a continuous pattern of a series of harassing acts of the same unlawful employment practices constituting severe and pervasive harassment. (Exhibit O)

365. Plaintiff was the only member of her law school class who was suspended for six months, had their scholarship unilaterally revoked and was forcibly relocated to GULC for her 3rd year of law school by Defendants.

366. Plaintiff was the only member of Defendant WashU's law school class who had to spend $15,000 to secure an attorney who was conspiring with Defendant WashU to harm Plaintiff in retaliation for her complaints of race and/or sex discrimination.

367. Plaintiff's former attorney, Forchetti of the Lento Law Firm collaborated with Defendants so to extinguish Plaintiff's rights under Title VII.

368. Defendants interfered with Plaintiff's EEOC filing in a timely manner so that Plaintiff's workplace race and/or sex discrimination and retaliation claims would not be heard in a timely manner.

369. Nonetheless, Plaintiff obtained an EEOC right to sue letter on June 17, 2025. (Exhibit O)

370. Plaintiff lost her post-graduate employment at Norton Rose Fulbright as a result of Defendants punishing Plaintiff for her complaints of race and/or sex discrimination through their baseless suspension and labeling Plaintiff as a "threat" to campus.

371. Plaintiff was subjected to ostracization from Defendant WashU Community, and difficulty integrating into GULC after suffering from an administration suspension lasting 6 months, and retaliation as a result of the nature and extent of her complaining of race and/or sex discrimination.

372. Plaintiff has never resigned or had her employment terminated by any agent of Defendant WashU (or Defendant Davis) who hired her.

373. Plaintiff is still featured on Defendant WashU's website. (Exhibit N)

374. Defendants continue to bill Plaintiff for the scholarship that Defendant WashU unilaterally revoked to this day – June 29th, 2026 – in retaliation for Plaintiff's complaint of race and/or sex discrimination.

375. Plaintiff has evidence through e-mail chains, and copious screenshots that serve as both direct and circumstantial evidence, that prove Defendant's discriminatory intent.

376. Plaintiff has also demonstrated Defendant's discriminatory purpose through their decision-making processes and ignoring Plaintiff's complaints regarding race and/or sex discrimination at Defendant WashU Law School.

377. Plaintiff's race and subsequent complaints of race and/or sex discrimination and retaliation as a clear motivating factor in Defendant's "clear pattern unexplainable on grounds other than" discriminatory ones.

378. Plaintiff through the incorporated paragraphs and foregoing exhibits has shown evidence of a "consistent pattern" of actions of decision-makers constituting invidious discrimination.

379. Defendant applied different procedural processes or substantive standards to requests of minorities and non-minorities, and preferred the white and/or non-complaining classmates of Plaintiff over Plaintiff, a Black student who complained of race and/or sex discrimination and retaliation at Defendant WashU.

380. Defendant's race and/or sex discrimination and retaliatory conduct and comments have caused Plaintiff significant emotional distress.

381. Plaintiff's race and/or sex was a motivating and/or determinative factor in the above discriminatory and retaliatory acts.

382.  The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee and/or student from complaining of discrimination.

383.  As a direct and proximate result of Defendant's discriminatory conduct and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, reputational harm, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

384.  Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

385.  As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the losses set forth herein and has incurred attorneys' fees and costs.

386.  Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## **COUNT II — SECTION 601 OF TITLE VI**

387.  Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

388.  Plaintiff restates and realleges the allegations contained both above and below as contained therein.

389. Defendant is a University that receives federal funds, and pursuant to Title VI incorporated under the 14th Amendment, is forbidden from discriminating and retaliating against Plaintiff: Black people, women, and Black women on the basis of race and/or sex.

390. Defendants WashU, Osgood, Angela Smith, Peggy Smith, Copeland, Davis, Hudson, Gore, Walsh, Wild, Katz, Kamimura-Jimenez, and Wendler-Modde subjected Plaintiff to a hostile educational environment, exercised deliberate indifference towards Plaintiff's complaints of race and/or sex discrimination and retaliation, and allowed a hostile educational environment to persist.

391. Defendants through their acts and omissions created an environment so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to the educational opportunities and benefits provided by Defendant WashU and GULC.

392. Defendant WashU, working in concert with and by through all other Defendants, subjected Plaintiff to withering and debilitating discriminatory race and/or sex harassment.

393. Defendants regularly and routinely ignored Plaintiff's several complaints of race and/or sex discrimination and retaliation by peers, administrators, and students.

394. Plaintiff repeatedly engaged in a protected activities through her numerous complaints of mistreatment based on her race and sex to Defendants WashU, Osgood, Walsh, Wild, Davis, Copeland, Kamimura-Jimenez, Angela Smith, Peggy Smith, Hudson, Katz, Gore and Wendler-Modde.

395. In response to Plaintiffs' protected activity and complaints about race and/or sex discrimination, Defendants suspended Plaintiff, revoked Plaintiff's scholarship, categorized Plaintiff as a "threat" because of her race and sex discrimination complaints, forced her to leave Defendant University and enroll in GULC, interfered with Plaintiff's post-graduate

employment, clerkships, and contracts, and transmitted untrue statements to unprivileged third-parties regarding Plaintiff's enrollment at Defendant University.

396. There were several causal connections between Plaintiff's protected activity and Defendants' adverse actions; Plaintiff complained of race and/or sex discrimination and retaliation and then she would be ignored, suspended, have her scholarship revoked, threatened with arrest, and forced to attend GULC.

397. Defendants' actions would have dissuaded a reasonable worker or another student from making or supporting a charge of discrimination.

398. Defendant applied different procedural processes or substantive standards to requests of minorities and non-minorities, and preferred the white and not-complaining of racial classmates of Plaintiff over Plaintiff, a Black student who complained of racial discrimination at Defendant WashU.

399. Defendant's race and/or sex discrimination and retaliatory conduct and comments have caused Plaintiff significant emotional distress.

400. Plaintiff's race and/or sex was a motivating and/or determinative factor in the above discriminatory and retaliatory acts.

401. As a direct and proximate result of Defendant's discriminatory conduct and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, reputational harm, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

402. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

403. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants' have violated Title VI.

404. Defendants' acted intentionally to harm and retaliate against Plaintiff, and with malice and/or reckless indifference to Plaintiff's rights.

405. Defendants' conduct warrants the imposition of punitive damages.

## COUNT III - SECTION 1981

406. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

407. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

408. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated Section 1981.

409. But for Plaintiff's race, Plaintiff would not have suffered the loss of her legally protected rights to engage in protected activity by complaining of race and/or sex discrimination, to obtain a legal education free of anti-Black race discrimination and retaliation at Defendant WashU and GULC, to not have her post-graduate employment taken from her because Defendants Osgood, Walsh, and Wild were humiliated by being outed as racists during the SCB Hearing, and to be treated fairly like her white, non-complaining and similarly situated non-Black classmates.

410. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

411. Said violations by Defendant WashU and above listed Defendants were done and/or carried out with malice and/or reckless indifference to Plaintiff's protected rights, and warrant the imposition of punitive damages.

412. As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs (including the $15,000 paid to Lento Law Firm.)

413. Plaintiff requests relief of attorney fees paid to Lento Law Firm in connection with the Kangaroo-court-sham SCB orchestrated by Defendants.

414. Plaintiff suffered and continues to suffer irreparable injury and monetary damages because of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

415. No previous application has been made for the relief requested herein.

### COUNT IV - FRAUD AND UNJUST ENRICHMENT

416. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

417. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

418. By their actions set forth in this complaint, Defendants committed fraud, tortious interference, forgery, bad-faith negotiation upon Plaintiff.

419. Defendants fraudulently labeled Plaintiff as a threat to the university community and enlisted Defendant Davis to feign objection to Plaintiff's innocuous comment to get

58

Plaintiff expelled as a threat to the university community, pocket her scholarship, and her FAFSA loans.

420. Plaintiff reasonably relied, to her detriment, on the material misrepresentations and omissions of fact made by Defendants - specifically, that they are a University subject to the laws of the United States including but not limited to Title VI, Title VII, the 5th and 14th Amendment, were ABA accredited, subject to the ABA guidelines, would adhere to the ABA guideline 509 regarding condition scholarships and non-discrimination, and would not revoke Plaintiff's scholarship in retaliation for complaining of race and/or sex discrimination and retaliation.

421. Defendant defrauded Plaintiff by requiring Plaintiff to pay tuition for classes that were either 1) "lost" (according to Defendant Walsh) 2) "unavailable" or 3) not recorded at all (in the case of Professor Sadat's class.) Defendants also engaged in fraud by doctoring their emails about their "investigation" (as stated by Defendant Peggy Smith in emails to Defendant Osgood and Defendant Walsh) into Plaintiff to make Plaintiff look culpable in their conspiracy to expel Plaintiff from Defendant University.

422. One particular email from Plaintiff addressing Defendant's alleged fraud was dated Wednesday, February 22, 2023, addressing the concerns regarding the font sizes, the omissions of certain e-mails in their entirety, and the different contents of e-mails.

423. Defendants never addressed, confirmed, or denied Plaintiff's allegations of fraud, which were detailed in Plaintiff's emails to Defendants' General Counsel Office, Walsh, Wild, Wendler-Modde, Hudson, Gore, Lora Clark, and Forchetti.

424. Further, Defendants engaged in fraud by conspiring with the Lento Law Firm to retain Forchetti – who only started at the firm one week after Plaintiff retained the Lento Law Firm – as Plaintiff's attorney.

425. At Defendants' direction, Forchetti was often sick with COVID, or having other obligations that interfered with Plaintiff's hearing strategy; Plaintiff litigated the entirety of the SCBH herself by design of Defendants.

426. Defendants have been unjustly enriched by an amount equal to all the monies collected from Plaintiff between November 2022 and May 2023 while Plaintiff was erroneously suspended, and through the unilateral revocation of Plaintiff's scholarship for the 2023-2024 school year from August 2023 to present.

427. Defendant only took these harmful actions against Plaintiff because she is Black and complained of racial and/or sex discrimination.

428. Fundamental fairness requires Defendant to return all of Plaintiff's tuition during her suspension and 3rd year of law school including any financial aid paid to Defendant by a third party on Plaintiff's behalf, including the Department of Education.

429. As a result of Defendant's unjust enrichment, Plaintiff is entitled to recover monetary damages equal to the amount of tuition during her suspension, plus prejudgment interest, and costs as may be recoverable at law.

430. Forchetti told Plaintiff "[Walsh] just doesn't like you and that's why she won't negotiate with you."

431. Forchetti repeatedly said that Plaintiff had not been subject to any racially and/or sexually discriminatory treatment.

432.  Forchetti also counseled Plaintiff, after Plaintiff paid her firm $15,000, to accept a plea agreement that would have left Plaintiff in a materially worse condition, but Defendant in a better position, than when Plaintiff retained Lento Law Firm.

433.  Forchetti engaged in a fraud conspiracy with Defendants by practicing an unfamiliar area of law to aid and abet Defendant WashU's discrimination.

434.  Defendants WashU et al as an ABA accredited university made unambiguous promises to Plaintiff, before, during, and after her tenure at Defendant University, that any student would not have their scholarship revoked if not found guilty of violating any other university code or policy.

435.  Defendant Wild made unambiguous promises to Plaintiff, both before, during, and after her temporary suspension, that if she were accused of a violation of the Student Conduct Code, she would not be sanctioned without a fair disciplinary procedure, an impartial and fair investigation and equitable resolution.

436.  Plaintiff's contractual, 5th, and 14th amendment rights were violated through Defendants WashU, Osgood, Walsh, and Wild's failure to adhere to Plaintiff's terms of her suspension, retaliatory billing practices, and transmission of false information to Plaintiff's employers.

437.  Plaintiff relied on Defendant's promises when she decided to enroll, and continued to enroll for six semesters, at Defendant.

438.  Plaintiff maintained "full time student status," the sole condition of her scholarship letter, always from matriculation at Defendant WashU to completion of the graduation requirements.

439.  Plaintiff's reliance on "full time student status" being the sole condition of the scholarship because it was the only term listed on the scholarship letter was expected and

foreseeable by Defendant, especially since the ABA Standard 509 requires all ABA approved law schools to fully disclose the conditions of any conditional offer or scholarship.

440.  Defendant knew Plaintiff was attempting to graduate from law school.

441.  Plaintiff relied on Defendant's promises to her detriment as Defendant wrongfully suspended Plaintiff, failed to provide her with a fair and equitable process that satisfied due process and fundamental fairness, and prevented Plaintiff from securing post-graduation employment.

442.  As a direct and proximate result of Plaintiff's reasonable reliance on Defendants' misrepresentations and omissions of fact, which Defendants knew to be false, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages because of Defendants' unlawful acts unless and until granted the relief requested herein.

## COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

443.  Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

444.  Plaintiff restates and realleges the allegations contained both above and below as contained therein.

445.  Defendants committed the intentional tort of intentional infliction of emotional distress intentionally from the beginning of her 1st year of law school to this day by committing race and sex discrimination against Plaintiff, retaliating against Plaintiff, including but not limited to the following acts:

1.   Launching a harassing Title IX investigation against Plaintiff due to allegations made by a known sexual predator, knowing that said sexual predator

62

had given Plaintiff a rape contract which Plaintiff refused to sign.  This investigation included 6 hour long interviews over multiple days through Plaintiff's entire first semester

2.   Failing to investigation the same sexual predator for sexual harassment against Plaintiff

3.   Ignoring complaints of Plaintiff and non-Black, students of color against Defendant Katz, well known for engaging in racist behavior

4.   Acknowledging and firing Defendant Katz only after white students complained about the same racist behavior

5.   Ignoring plaintiff's complaints of violations of Defendant University gun policy, race discrimination, sex discrimination and retaliation

6.   Refusing to send a timely letter of good standing to GULC and Columbia so plaintiff could unilaterally transfer from Defendant University her 1st year and escape Defendants' retaliation

7.   Executing a fraudulent, racist plan to label Plaintiff as a threat to the Defendant University community in the 1st semester of her 2nd year of law school and suspending Plaintiff, depriving her of the ability to participate in class and activities like her white non-complaining classmates

8.  Threatening Plaintiff with expulsion if she complained of race and/or sex discrimination or retaliation

9. Subjecting Plaintiff to arrest and incarceration by either the Defendant WashU police force or St. Louis police department if Plaintiff stayed in Missouri

10.  Forcing Plaintiff to undergo a sham student conduct board hearing during the 2nd semester of her 2nd year by using Black female administrators and professors that Plaintiff had and attorneys never had to aid, abet, and commit race and sex discrimination and retaliation against Plaintiff so that Defendants actions would appear non-racist, non-sexist and non-retaliatory

11. Causing Plaintiff to not receive a return offer from her summer employer

12. Failing to pay GULC in accordance with the consortium agreement

13. Revoking Plaintiff's $37,000 scholarship after telling Plaintiff she would receive same

14.  Stealing $30,000 of FAFSA money Plaintiff planned to use for living expenses at GULC, leaving Plaintiff destitute during her 3rd year of law school,

15.  Initiating garnishment proceedings against Plaintiff for $40,294,

16. Sending defamatory character references to the Maryland, District of Columbia, and Pennsylvania bars resulting in delaying Plaintiff's admission to the same, and;

17. Refusing to acknowledge any wrongdoing to this day.

446.  By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has committed the intentional tort of intentional infliction of emotional distress.

447.  Defendants prolonged the SCB hearing with unreasonable delay and for no reason other than stall for time.

448.  Defendants refused to admit the videos of Plaintiff's classes, despite Defendant Walsh arguing that Plaintiff was disruptive in class.

449. Additionally, Defendant Gore and her assistant, Lora Clark's willful and intentional actions of botching, misconstruing, and mislabeling Plaintiff's exhibits caused Plaintiff to be suspended for over 6 months.

450. This caused severe mental and emotional distress to Plaintiff and her mother who begged for Defendants to stop torturing Plaintiff. (Exhibit K; Exhibit L)

451. For three of Plaintiff's consecutive birthdays, Defendant intentionally and repeatedly traumatized Plaintiff through fraud and exposing Plaintiff to sexual predators, prolonging hearings, tampering with evidence and doctoring emails. For her 25th birthday, Defendants also caused Plaintiff to be involved and actively testifying in a sham Title IX proceeding with a known sexual predator that Defendant had a duty to protect her from. On her 26th birthday, Defendants erroneously suspended Plaintiff because she is Black and complained of racial discrimination in connection with her employment. On her 27th birthday, Defendants stole her FAFSA refund in retaliation for complaining of race and/or sex discrimination and retaliation and winning the SCB hearing against Defendant Walsh leaving her destitute, financially crippled and broke.

452. Defendant engaged in a pattern of malicious and intentional conduct to harm Plaintiff.

## COUNT VI - NEGLIGENCE

453. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

454. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

455. Defendant's actions were a grievous and foreseeable breach of their duty and exposed Plaintiff to an unreasonable risk of harm, which she has now incurred.

65

456. Defendants acted in concert and breached their duty of care to act as any reasonable University and Top 20 law school receiving federal funds would when they ignored Plaintiff regarding her race and/or sex discrimination and retaliation claims, failed to investigate Plaintiff's race and/or sex discrimination and retaliation claims, and then further retaliated against her for making such claims.

457. Plaintiff is now destitute and has suffered damages because of Defendant's breach.

## COUNT VII - BREACH OF CONTRACT

458. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

459. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

460. Plaintiff asserts that there were several valid contracts between the parties: Defendant WashU, Plaintiff, and GULC, (the consortium agreement) and Plaintiff and Defendant WashU (the scholarship award.)

461. Defendants WashU, Osgood, Walsh, and Burns intentionally stole $30,000 of Plaintiff's FAFSA loan funds, breaching their duty under the scholarship agreement, the consortium agreement and the ABA Standards, which govern law school contracts like Plaintiff's.

462. As a result, Defendants have asserted that Plaintiff owes them $40,294.00 as Defendants stole the entirety of Plaintiff's $30,000 worth of FAFSA loans and unilaterally revoked her scholarship.

463. The ABA standards govern scholarships given by ABA-accredited universities.

464. On June 15, 2021 at 11:00AM EST, Defendant University accepted Plaintiff for admission to Defendant WashU Law School with a scholarship of $37,000/year

($18,500 per semester) for each year with the only condition as follows: "Your award is based on full-time student status."

465. As of June 24th, 2026, Defendant WashU Law School's website states "At WashULaw, all of our JD scholarships are guaranteed for three years. Not only is this unusual but many schools make scholarship awards conditional on maintaining a certain GPA or class rank. By contrast, WashULaw scholarships are given with no strings attached as long as you remain a student at the law school." This is available here: https://law.washu.edu/consumer-information-aba-required-disclosures/

466. There is no other condition of scholarship aside from "maintain full time student status" on any scholarship letter sent to Plaintiff from Defendant WashU Law School.

467. There is no university policy pursuant to Plaintiff's scholarship letter that states that Plaintiff or any other student would have their scholarship revoked if Plaintiff were forced to visit another institution, study abroad or visit another institution.

468. As an American Bar Association (ABA) accredited law school, Defendant WashU Law School is subject to the ABA Standards for Approval of Law Schools. The ABA Standards that Defendant is required to abide by may be found at americanbar.org and here: https://law.washu.edu/consumer-information-aba-required-disclosures/.

469. As of the date of filing of this complaint, Defendant WashU was found to not have complied with the requirements of the ABA Standards with respect to their scholarship rules.

470. Defendant WashU had an obligation to adhere to their scholarship offering and the consortium agreement. (Exhibit M)

67

471. Accordingly, a private investigation has been initiated by the ABA's 12-member council under Rule 42 of the ABA Standards.

472. Under Rule 43 of the ABA Standards, this is the final disposition of Plaintiff's complaint with the ABA.

473. Plaintiff's scholarship award creates an enforceable contractual obligation against Defendant WashU.

474. In order to maintain ABA-accreditation, Defendants WashU et al are required to comply with the mandatory language of their own contracts.

475. Defendant, Plaintiff, and GULC had a legally enforceable obligation and agreement through the scholarship award letter that specified and required **one term** of performance by Plaintiff: "maintain full time student status" which Plaintiff never broke.

476. Defendants also breached their contractual obligations by suspending Plaintiff erroneously for 6 months, requiring Plaintiff to hire a lawyer, spending $15,000 to ensure that Plaintiff's rights would not be violated during the SCB Hearing, unilaterally revoking her scholarship, and forcing her to spend her 3rd year at GULC in retaliation for her complaints of race and/or sex discrimination and retaliation.

477. Plaintiff had to receive food supplemental assistance in the State of Maryland as a result of Defendant's breach of contract.

478. Plaintiff also had to work 3 jobs at one time after Defendant revoked her scholarship, and breached the scholarship contract.

479. Defendant's actions forced Plaintiff to resign from the DC Office of Human Rights.

480. Defendants engaged in tortious interference with Plaintiff's former employer, Norton Rose Fulbright, and several bar associations by lying to them about Plaintiff's character and the nature of the allegations against her, characterizing Plaintiff as a threat.

481. As a result, the MD Board of Law Examiners asked Plaintiff if she had "attendance issues" relating to her job at the DC Office of Human Rights, when she in actuality Plaintiff was forced to resign because of Defendant's fraud and breach of contract.

482. Defendant Walsh's actions caused the bar to be doubtful of Plaintiff's character and fitness for admission to the MD, DC, and PA Boards of Law Examiners.

483. Defendant and Plaintiff had a legally enforceable obligation and agreement through the scholarship award letter that specified and required one term of performance by Plaintiff: "maintain full time student status" which Plaintiff never broke.

484. Defendant's breach of contract continues to materially harm Plaintiff as she has been reported as delinquent to credit agencies as a result of their Defendant's unilateral revocation of Plaintiff's scholarship in retaliation for complaining of race and/or sex discrimination at Defendant University.

## COUNT VIII – DEFAMATION

485. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

486. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

487. From November 2022 to the date of this complaint, Defendant has engaged in a pattern of spreading false and defamatory statements labeling Plaintiff a threat and harassing to Defendant University concerning Plaintiff through unprivileged publications to third parties

69

including but not limited to Plaintiff's former employers – Norton Rose Fulbright, the National Center for Youth Law, the United Nations Forum for People of African Descent, the Georgetown Street Law Fellowship – and the Bar Associations of various jurisdictions, including of the District of Columbia Bar Association in 2026, resulting in fault amounting at least to Defendant's negligence.

488. Defendants transmitted and publicized harmful and untrue statements about Plaintiff to various third parties, and defamed Plaintiff within every single indelible school record and document that Defendant produced regarding Plaintiff.

489. Defendant has furnished defamatory messages to several bar associations, the American Bar Association, to federal investigators at the US Department of Education and FAFSA's Ombudsman Office.

490. Defendants' enduring "Memorandum Opinion" written by Defendants Gore, Wendler-Modde, Hudson, and Wild is an academic record on file that will continue to transmit harmful and untrue messages about Plaintiff to prospective employers and other entities in the legal profession as long as it is not corrected by Defendants.

491. Defendants – in the interest of justice and Plaintiff's reputation –  must correct their records on Plaintiff and state the truth of what actually occurred during the SCB Hearing in Plaintiff's academic record for the purpose of Plaintiff's future employment endeavors: that nearly five Black students and one white student all wrote letters and testified that should have been allowed to be presented in their entirety in the SCB Hearing that Plaintiff would have never been suspended from law school if she were white.

492. Plaintiff's harm will continue until this Court acts to impose damages on Defendant.

## COUNT IX - 42 USC 1985 - CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

493.  Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

494.  Plaintiff restates and realleges the allegations contained both above and below as contained therein.

495.  Defendants WashU, Osgood, Walsh, Davis, Burns, Wild, Hudson, Wendler-Modde, Gore, Copeland, Peggie Smith, Angela Smith, Mark Kamimura-Jiménez, and Elizabeth Katz, made an agreement between the parties to inflict a wrong against or injury upon Plaintiff in a series of overt acts that results in damage.

496.  Aforementioned Defendants' inflicted a wrong and injury against Plaintiff in the following ways, including but not limited to: 1) Plaintiff's suspension, 2) the revocation of Plaintiff's scholarship in the District of Columbia, 3) the breaching of the consortium agreement in the District of Columbia, 4) the termination and/or suspension of Plaintiff's employment contracts in the District of Columbia, and 5) the forcible relocation of Plaintiff by Defendants to GULC.

497.  Defendants WashU, Osgood, Walsh, Davis, Burns, Wild, Hudson, Wendler-Modde, Gore, Copeland, Peggie Smith, Angela Smith, Mark Kamimura-Jiménez, and Elizabeth Katz strategized and made several different agreements through e-mails and meetings from about January 2022 to the present regarding how they resolved to punish and scapegoat Plaintiff for Defendant Katz's firing from Defendant University.

498.  Aforementioned Defendants resolved to celebrate different Defendants' discrimination against Plaintiff with hardly-earned Civil Rights Awards and Commencement Speaker

71

honors so that the public and future employers would also not believe Plaintiff if she were to tell a future employer what happened to her at WashU regarding her suspension.

499.  Defendants WashU, Osgood, Walsh, Peggie Smith, Angela Smith, and Elizabeth Katz all have several e-mails and conversations – evidence of which were provided to Plaintiff through the SCB Hearing and available at the Court's request - to one another where they voice concerns about Plaintiff's characterization of their tone-policing of her as "racist."

500.  Defendants WashU, Osgood, Walsh, Davis, Burns, Wild, Hudson, Wendler-Modde, Gore, Copeland, Peggie Smith, Angela Smith, Mark Kamimura-Jiménez, and Elizabeth Katz acted to punish and expel Plaintiff from Defendant University instead of rectifying her complaints of race and/or sex discrimination and retaliation.

501.  Defendants WashU, Osgood, Walsh, Davis, Burns, Wild, Hudson, Wendler-Modde, Gore, Copeland, Peggie Smith, Angela Smith, Mark Kamimura-Jiménez, and Elizabeth Katz all acted in conformity with a single plan to harm and/or destroy Plaintiff's legal career for complaining of race and/or sex discrimination and/or retaliation.

502.  The essential nature and general scope of this conspiracy was known to the Defendants WashU, Osgood, Walsh, Davis, Burns, Wild, Hudson, Wendler-Modde, Gore, Copeland, Peggie Smith, Angela Smith, Mark Kamimura-Jiménez, and Elizabeth Katz who should be held responsible for the consequences.

503.  Every single time that Plaintiff complained of racism and/or sexism at Defendant University, each Defendant summarily refused to investigate or even address Plaintiff's claims of race and/or sex discrimination and retaliation.

504.  Defendants WashU, Osgood, Walsh, Davis, Burns, Wild, Hudson, Wendler-Modde, Gore, Copeland, Peggie Smith, Angela Smith, Mark Kamimura-Jiménez, and Elizabeth Katz

were motivated by an invidiously discriminatory animus and based on Plaintiff's race and and/or sex as a Black woman, and her repeated complaints of race and/or sex discrimination by Defendants over the course of years.

505. By committing the foregoing act of a conspiracy against Plaintiff's rights, Defendants injured, oppressed, threatened, and intimidated Plaintiff from exercising her rights guaranteed under the 5th and 14th Amendment in violation of Section 1985.

506. Plaintiff requests all damages allowed by law.

### COUNT X - TITLE IX

507. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

508. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

509. Defendant WashU, a recipient of federal funding, and Defendants Osgood, Walsh, and Copeland had actual knowledge of Plaintiff's receipt of a rape contract describing odd rituals with blood and semen from Richard O at Defendant University.

510. Defendants acted with deliberate indifference to Richard O's harassment, sex discrimination, and retaliation towards Plaintiff.

511. Defendants (including Defendant Walsh and Osgood during the SCB hearing and to her D.C. employer, the D.C. Office of Human Rights) routinely stereotyped Plaintiff, a Black woman, as aggressive, unprofessional, ghetto, and unworthy of receiving a law degree – sex-and-race based stereotypes used to disqualify Black women's assertions of mistreatment based on their race and/or sex.

512. Plaintiff was retaliated against by Defendant in numerous actions against her, including but not limited to being labeled a threat to the University community, suspended without cause, and stripped of her scholarship for engaging in protected activity and complaining to Defendants WashU, Osgood, Walsh, Copeland, Davis, Gore, Wendler-Modde, Wild, Hudson, Angela Smith, Peggy Smith, Katz, and Kamimura-Jimenez of the same.

513. Plaintiff has an actionable claim for discrimination based on her engaging in protected activity and complaining about race/or sex discrimination, and the manner in which Defendants choose to respond to her complaints of race and/or sex discrimination by threatening Plaintiff with arrest, refusing to furnish Plaintiff with her course recordings, forcing her to attend GULC, revoking her scholarship at GULC, and communicating racist and defamatory statements to employers in Washington D.C.

514. Plaintiff requests all damages allowable by law.

## **COUNT XI - AMENDMENT V and XIV OF THE US CONSTITUTION**

515. Plaintiff incorporates by reference the above paragraphs as if set forth herein in their entirety.

516. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

517. As private actors that receive federal funding, Defendants WashU et al. are subject to the 5th and 14th Amendment.

518. By interfering with Plaintiff's property interest in her education and committing the foregoing acts of discrimination and retaliation against Plaintiff based on her race, sex and Plaintiff's complaints of racial and sex discrimination, Defendants have deprived Plaintiff of due process and her rights under the 5th and 14th Amendments.

## COUNT XII - SECTION 1983

519.  Plaintiff incorporates by reference the above paragraphs as if set forth herein in their entirety.

520.  Plaintiff restates and realleges the allegations contained both above and below as contained therein.

521.  By using the force of arrest and the color of state law to force Plaintiff out of her apartment in retaliation for complaining of race and/or sex discrimination, Defendants have acted under the color of state law.

522.  To successfully state a claim for municipal liability pursuant to 42 U.S.C. § 1983, a plaintiff must allege both (1) "a predicate constitutional violation," and (2) "that a custom or policy of the municipality caused the violation."

523.  "The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Sanders v. Sears*, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir.1993).

524.  At the pleading stage, only an allegation of the existence of a policy, practice, or custom and its causal link to the constitutional deprivation suffered is required. See Amons v. District of Columbia, 231 F.Supp.2d 109, 114 (D.D.C.2002)

525.  Defendant WashU has a policy of unlawfully detaining people who complain of race and/or sex discrimination or anyone that they deem a political dissident. (Exhibit R)

526.  Defendants' police force was given instruction, per Plaintiff's suspension letter and the map of their patrol premises, to arrest Plaintiff in retaliation for complaining of racial and sexual discrimination, constituting a breach and violation of her 5th, and 14th Amendment rights. (Exhibit P)

527. Wash U's police force is a state actor because they were armed, and possessed the same arresting authority enjoyed by the police. (Exhibit R)

528. Plaintiff requests jurisdictional discovery to further establish that Defendants acted under the color of law in contacting the D.C. Metropolitan Police Department threatening Plaintiff with arrest in connection with her retaliatory suspension from November 2022 to the present. (Exhibit P and Exhibit R)

529. Plaintiffs request for Defendants to be charged in both their individual and official capacity with respect to their retaliatory actions against Plaintiff. (Exhibit P and Exhibit R)

530. Plaintiff requests all damages allowed by law.

### COUNT XIII – DC HUMAN RIGHTS ACT - D.C. Code § 2-1402.61

531. Plaintiff incorporates by reference the above paragraphs as if set forth herein in their entirety.

532. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

533. The DCHRA is intended "to secure an end in the District of Columbia to discrimination for any reason other than that of individual merit[.]" D.C.Code § 2-1401.01.

534. The DCHRA prohibits any employer or educational institution from discriminating on the basis of "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual[.]" D.C.Code § 2-1402.11(a); see D.C.Code § 2-1402.41.

535. Defendants WashU, Osgood, Walsh, Davis, Burns, Wild, Hudson, Wendler-Modde, Gore, Copeland, Peggie Smith, Angela Smith, Mark Kamimura-Jiménez, and Elizabeth

76

Katz should be held individually liable under the DCHRA for both direct violations of the statute as 'employers' and for aiding and abetting their own discrimination.

536.  Defendants WashU, Osgood, Walsh, Davis, Burns, Wild, Hudson, Wendler-Modde, Gore, Copeland, Peggie Smith, Angela Smith, Mark Kamimura-Jiménez, and Elizabeth Katz sought to punish Plaintiff, on the basis of her identity as the only Black female student who complained about Professor Katz.

537.  Defendants treated white students who did not complain of Defendant Katz's racism, sexism, and/or retaliation better than they treated Plaintiff.

538.  Multiple witnesses attested to the fact in writing that Plaintiff would not have been suspended from Defendant University if she were white.

539.  Defendant suppressed the testimony of Plaintiff's five Black witnesses that asserted that Plaintiff would not have been suspended if she were white.

540.  Plaintiff only letting one witness – who was white - testify via zoom that Plaintiff would not have been suspended if she were white violates the DCHRA.

541.  Defendants violated the DCHRA through their repeated traumatization, suspension and expulsion of Plaintiff from Defendant University and forcible relocation to GULC.

542.  Defendants, through myriad actions detailed throughout this complaint, violated the DC Human Rights Act and should be enjoined from providing educational services in the District (like their filing with the D.C. Office of Licensing and Consumer Protection states) until they are able to take accountability and treat their Black female students like Plaintiff with human dignity.

543.  Plaintiff requests all damages allowable by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of

Plaintiff and against Defendant:

(a)     declaring the acts and practices complained of herein to be a violation of Title VI; Title

VII; and/or Title IX; declaring the acts and practices complained of herein to be in violation of

Section 1981; Section 1983, and/or Section 1985 and the 5th and 14th Amendments;

(b)     declaring the acts and practices complained of herein to be in violation of the common

law of the District of Columbia in addition to Plaintiff's breach of contract and tort claims;

(c)     entering judgment against Defendant and in favor of Plaintiff in an amount to be

determined;

(d)     enjoining and restraining Defendant's collections actions and the violations alleged

herein;

(e)     awarding compensatory damages to Plaintiff for past and future emotional upset, mental

anguish, humiliation, loss of life's pleasures, and pain and suffering;

(f)     to make Plaintiff whole for all past and future lost earnings, benefits, and earning

capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendants'

discriminatory, retaliatory, and unlawful misconduct;

(g)     awarding Plaintiff costs of this action, together with reasonable attorney's fees;

(h)     awarding liquidated and punitive damages to Plaintiff;

78

(i)     awarding Plaintiff such other damages as are appropriate;

(j)     and granting such other and further relief as this Court deems appropriate.

Respectfully submitted,

Allison Brown, Esq.

Plaintiff

DC Bar #: 90045586

**Exhibit List**

**Exhibit A** – WashU Registration with DC Office of Licensing and Consumer Protection

**Exhibit B** – WashU in Washington, D.C. Program

**Exhibit C** – WashU Campus in Washington, D.C. and D.C. Registered Agents

**Exhibit D** – Richard O Threatening to Rape Plaintiff

**Exhibit E** – Title IX Refusal to Investigate; Finding of Plaintiff Not Responsible - Title IX

**Exhibit F** - Screenshots Regarding Allison Brown's hiring by Professor Davis in September 2022; Screenshots grabbed from Workday on 11/3/2024 at 5:30pm

**Exhibit G** - Suspension Letter from Defendant to Plaintiff

**Exhibit H -** Defendant Conclusion of Investigation with Erroneous Assertions Therein

**Exhibit I -** Release of All Claims and Non-Disparagement Agreement with Defendant

**Exhibit J -** SCB Determination

**Exhibit K –** Correspondence from Plaintiff to Defendants re: Race and/or Sex Discrimination

**Exhibit L -** Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh

**Exhibit M -** E-mails and Correspondence from Defendants Re: Racial Discrimination

**Exhibit N –** Plaintiff Still Featured on Defendant WashU Website

**Exhibit O –** Right to Sue Letter from the EEOC

**Exhibit P –** MAP of Wash U Police Department and Plaintiff's Apartment

**Exhibit Q** – Consortium Agreement Between WashU, Plaintiff, and Georgetown

## <u>Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection</u>



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**DC MURIEL BOWSER, MAYOR**

**DEPARTMENT OF LICENSING AND CONSUMER PROTECTION**
**District of Columbia Government**
Corporations Division

| **TN-2 Trade Name Renewal Form** |
|---|

**Under the provisions of theTitle 29 of D.C. Code (Business Organization Act) and Title 47 Chapter 28, the individual or entity identified below hereby applies for a Trade Name Renewal and for that purpose submits the following statement:**

| |
|---|
| 1. Name of Individual or Entity, using the trade name:<br>WASHINGTON UNIVERSITY (THE) |
| 2. Existing Trade Name:<br>WashU at Brookings |
| 3. Trade Name File # or Owning Entity File #:<br>TN0006316554 |
| 4. Trade Name Expiration Year:<br>2027 |

| 5a. Name of Governor or Authorized Person Acting for Governor:<br>Ian Dubin | 5b. Signature of Governor or Authorized Person Acting for Governor:<br>**E-Signed** |
|---|---|

**If you sign this form you agree that you understand that anyone who makes a false statement anywhere on it can be punished by criminal penalties of a fine up to $1000, imprisonment up to 180 days, or both, under DCOC § 22-2405.**

81

**<u>Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection</u>**



**DEPARTMENT OF LICENSING AND CONSUMER PROTECTION**
**District of Columbia Government**
Corporations Division

| **TN-2 Trade Name Renewal Form** |
|---|

**Under the provisions of theTitle 29 of D.C. Code (Business Organization Act) and Title 47 Chapter 28, the individual or entity identified below hereby applies for a Trade Name Renewal and for that purpose submits the following statement:**

| 1. Name of Individual or Entity, using the trade name:<br>WASHINGTON UNIVERSITY (THE) | |
|---|---|
| 2. Existing Trade Name:<br>WashU at Brookings | |
| 3. Trade Name File # or Owning Entity File #:<br>TN0006316554 | |
| 4. Trade Name Expiration Year:<br>2025 | |
| 5a. Name of Governor or Authorized Person Acting for Governor:<br>Emily Skidmore | 5b. Signature of Governor or Authorized Person Acting for Governor:<br>**E-Signed** |

**If you sign this form you agree that you understand that anyone who makes a false statement anywhere on it can be punished by criminal penalties of a fine up to $1000, imprisonment up to 180 days, or both, under DCOC § 22-2405.**

**Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection**

**DEPARTMENT OF LICENSING AND CONSUMER PROTECTION**
**District of Columbia Government**
Corporations Division

| Two-Year Report for Domestic & Foreign Filing Entity |
| --- |

**Year of Filing:** 2024

**File Number:** 992403

**Date of Filing:** 3/6/2024 11:45 AM

**Filing Fee:** $80.00

**First:** Entity Name:
WASHINGTON UNIVERSITY (THE)

**Second:** Organized under the laws of which state or country:
Missouri, United States

**Third:** Address of principal office:
One Brookings Drive
Campus Box 1058
St. Louis, Missouri 63130

**Fourth:** Name of Registered Agent and address of registered office in DC:
Ian Dubin
1775 Massachusetts Ave, NW
Washington, District of Columbia 20036

**Fifth:** Brief statement of business affairs conducted in DC:
Educational Services
Offers educational courses in policy and leadership topics

**Sixth:** List all entity governors (attach list if needed):

| Name | Address |
| --- | --- |
| Andrew D Martin | One Brookings Drive, MSC 1192-0105-02, St. Louis, Missouri 63130 |
| Rebecca  Brown | One Brookings Drive, MSC 1192-0105-02, St Louis, Missouri 63130 |

**Seventh:** Is foreign filing entity in good standing in state / country where it is organized?   YES

**Eighth:** Name of the Governor or Authorized Person:

Rebecca  Brown

Andrew D Martin

**If you sign this form you agree that anyone who makes a false statement can be punished by criminal penalties of a fine up to $1000, imprisonment up to 180 days, or both, under DCOC § 22-2405;**

**E-Signed**

83

**Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection**



**DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS**
## District of Columbia Government
Corporations Division

| Two-Year Report for Domestic & Foreign Filing Entity |
|---|

**Year of Filing:** 2022

**File Number:** 992403

**Date of Filing:** 2/23/2022 10:46 AM

**Filing Fee:** $80.00

**First:** Entity Name:
WASHINGTON UNIVERSITY (THE)

**Second:** Organized under the laws of which state or country:
Missouri, United States

**Third:** Address of principal office:
One Brookings Drive
Campus Box 1058
St. Louis, Missouri 63130

**Fourth:** Name of Registered Agent and address of registered office in DC:
Ian Dubin
1775 Massachusetts Ave, NW
Washington, District of Columbia 20036

**Fifth:** Brief statement of business affairs conducted in DC:
Educational Services
Offers educational courses in policy and leadership topics

**Sixth:** List all entity governors (attach list if needed):

| Name | Address |
|---|---|
| Andrew D Martin | One Brookings Drive, MSC 1192-0105-02, St. Louis, Missouri 63130 |
| Rebecca Brown | One Brookings Drive, MSC 1192-0105-02, St Louis, Missouri 63130 |

**Seventh:** Is foreign filing entity in good standing in state / country where it is organized?   YES

**Eighth:** Name of the Governor or Authorized Person:

Rebecca Brown

Andrew D Martin

**If you sign this form you agree that anyone who makes a false statement can be punished by criminal penalties of a fine up to $1000, imprisonment up to 180 days, or both, under DCOC § 22-2405;**

**E-Signed**

85

## Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection



**Exhibit A - WashU Registrations with DC Office of Licensing and Consumer Protection**



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**MURIEL BOWSER, MAYOR**

DEPARTMENT OF LICENSING AND CONSUMER PROTECTION

**District of Columbia Government**
Corporations Division

| TN-2 Trade Name Renewal Form |
|---|

Under the provisions of theTitle 29 of D.C. Code (Business Organization Act) and Title 47 Chapter 28, the individual or entity identified below hereby applies for a Trade Name Renewal and for that purpose submits the following statement:

1. Name of Individual or Entity, using the trade name:
WASHINGTON UNIVERSITY (THE)

2. Existing Trade Name:
WashU at Brookings

3. Trade Name File # or Owning Entity File #:
TN0006316554

4. Trade Name Expiration Year:
2025

| 5a. Name of Governor or Authorized Person Acting for Governor:<br>Emily Skidmore | 5b. Signature of Governor or Authorized Person Acting for Governor:<br>**E-Signed** |
|---|---|

**If you sign this form you agree that you understand that anyone who makes a false statement anywhere on it can be punished by criminal penalties of a fine up to $1000, imprisonment up to 180 days, or both, under DCOC § 22-2405.**

**Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection**

Initial File #: 992403

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
### DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS
### CORPORATIONS DIVISION



# C E R T I F I C A T E

**THIS IS TO CERTIFY** that all applicable Trade Name requirements of the Omnibus Regulatory Reform Act of 1998 have been complied with and accordingly, this **CERTIFICATE OF TRADE NAME REGISTRATION** is hereby issued to:

WASHINGTON UNIVERSITY (THE)

**Trade Name:** WashU at Brookings

**IN TESTIMONY WHEREOF I** have hereunto set my hand and caused the seal of this office to be affixed as of 1/27/2020 3:56 PM

Business and Professional Licensing Administration

*Josef G. Gasimov*

JOSEF G. GASIMOV
Acting Superintendent of Corporations
Corporations Division

Muriel Bowser
Mayor

Tracking #: IXRopMhJ

87

## Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection



**DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS**

## District of Columbia Government
### Corporations Division

| Trade Name Registration Form |
|---|

Pursuant to the provisions of the Code of Laws for the District of Columbia and the OMNIBUS REGULATORY REFORM ACT OF 1998, the undersigned company, partnership or individual hereby applies for a Certificate of Trade Name and for that purpose submits the following statement:

**First:** Name of individual or entity using the trade name:
WASHINGTON UNIVERSITY (THE)

**Second:** Trade Name:
WashU at Brookings

**Third:** Entity Type:
Non-Profit Corporation

**Fourth:** Business Address:
One Brookings Drive
Campus Box 1058
St. Louis, Missouri 63130

**Fifth:** Authorized Official name and address:

No authorized official.

**Sixth:** Registered Agent name and address:
Ian Dubin
1775 Massachusetts Ave, NW
Washington, District of Columbia 20036

**Seventh:** Name of person executing this form:

Information not available.

If you sign this application, you agree that you understand that anyone who makes a false statement anywhere on it can be punished by criminal penalties of a fine up to $1000, imprisonment up to 180 days, or both, under DCOC § 22-2405.

**Eigth:** Trade Name registration number/ Corporate File Number: 992403

**Amount Paid:** $55.00
**Date:** 1/27/2020 3:56 PM
**E-Signed**

## Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection



**DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS**
### District of Columbia Government
Corporations Division

| Two-Year Report for Domestic & Foreign Filing Entity |
|---|

**Year of Filing:** 2020

**File Number:** 992403

**Date of Filing:** 3/31/2020 11:27 AM

**Filing Fee:** $80.00

**First:** Entity Name:
WASHINGTON UNIVERSITY (THE)

**Second:** Organized under the laws of which state or country:
Missouri, United States

**Third:** Address of principal office:
One Brookings Drive
Campus Box 1058
St. Louis, Missouri 63130

**Fourth:** Name of Registered Agent and address of registered office in DC:
Ian Dubin
1775 Massachusetts Ave, NW
Washington, District of Columbia 20036

**Fifth:** Brief statement of business affairs conducted in DC:
Educational Services
Offers educational courses in policy and leadership topics

**Sixth:** List all entity governors (attach list if needed):

| Name | Address |
|---|---|
| Ida  H. Early | One Brookings Drive,, CB 1081,, St. Louis, Missouri 63130 |
| Andrew D Martin | Campus Box 1058, One Brookings Drive, St. Louis, Missouri 63130 |

**Seventh:** Is foreign filing entity in good standing in state / country where it is organized?   No

**Eighth:** Name of the Governor or Authorized Person:

No information provided.

**If you sign this form you agree that anyone who makes a false statement can be punished by criminal penalties of a fine up to $1000, imprisonment up to 180 days, or both, under DCOC § 22-2405;**

**E-Signed**

**Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection**



**DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS**
**District of Columbia Government**
Corporations Division

| TN-2 Trade Name Renewal Form |
| --- |

**Pursuant to the provisions of the Code of Laws for the District of Columbia and the OMNIBUS REGULATORY REFORM ACT OF 1998, the undersigned company, partnership or individual hereby applies for Trade Name Cancellation and for that purpose submits the following statement:**

1. Name of Individual or Entity, using the trade name:
WASHINGTON UNIVERSITY (THE)

| 2. Business phone number / Email: | 3. Registration #:<br>000006961533 |
| --- | --- |

4. Trade Name Expiration Date:
9/1/2023

6. Complete Business Address:
One Brookings Drive
Campus Box 1058
St. Louis, Missouri 63130

6. Name and address of authorized individual executing this form:
One Brookings Drive,
CB 1081,
St. Louis, Missouri 63130

| 7. Individual Executing this form:<br>Emily Skidmore | 8. Signature:<br>**E-Signed** |
| --- | --- |

**If you sign this form you agree that anyone who makes a false statement can be punished by criminal penalties of a fine up to $1000, imprisonment up to 180 days, or both, under DCOC § 22-2405;**

## Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection

6/26/26, 9:55 PM                                                                                    District of Columbia Government

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
Corporations Division

### Entity Information
Search > Entity Search > Entity Information                                                          [ Back ]

| | |
|---|---|
| **Record Name** | **Entity Type** |
| WASHINGTON UNIVERSITY (THE) | Foreign Nonprofit Corporation |
| **Election Type** | **Initial File No.** |
| N/A | 992403 |
| **Entity Status** | **Street Address** |
| Active - Not in Good Standing | One Brookings Drive, Campus Box 1058, St. Louis, MO, 63130, USA |
| **Mailing Address** | **Entity Email** |
| N/A | N/A |
| **File Date** | |
| 08/03/1999 | |
| **Purpose** | |
| Offers educational courses in policy and leadership topics | |

#### Jurisdiction of Formation

| | |
|---|---|
| **Date of Organization** | **Commencement Date** |
| 08/03/1999 | 08/03/1999 |
| **Country** | **State** |
| United States | Missouri |
| **Jurisdiction Business Unique Identifier** | |
| N/A | |

#### Biennial Report Information

| | |
|---|---|
| **Report Status** | **Final Report Deadline** |
| Due - Not Filed | 04/01/2026 |

#### Registered Agent Information

| | |
|---|---|
| **Agent Name** | **Agent Type** |
| IAN DUBIN | Individual |
| **Status** | **Effective Date of the Resignation** |
| Active | N/A |
| **Agent Email** | **Agent Phone** |
| IDubin@brookings.edu | N/A |
| **Street Address** | **Commercial RA?** |
| 1775 Massachusetts Ave, NW, Washington, DC, 20036, USA | No |

#### Beneficial Owner Information (2)

| | |
|---|---|
| **Name** | **Type** |
| Andrew D Martin | Individual |
| **Entity/Street Address** | |
| One Brookings Drive, MSC 1192-0105-02, St. Louis, MO, 63130, USA | |
| **Name** | **Type** |
| Rebecca Brown | Individual |
| **Entity/Street Address** | |
| One Brookings Drive, MSC 1192-0105-02, St Louis, MO, 63130, USA | |

https://corponline.dlcp.dc.gov/homepage/business-info                                                    1/2

91

## Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection



92

**Exhibit A - WashU Registration with DC Office of Licensing and Consumer Protection**

6/26/26, 10:02 PM                                  District of Columbia Government

### Trade Name Information

| Trade Name | Record No | Status |
|---|---|---|
| WashU at Brookings | TN0006316554 | Active Trade Name |

Filing History     **Report History**

| Filing Number | Filing Date | Effective Date | Filing Type | Actions |
|---|---|---|---|---|
| 000007950139 | 03/06/2024 | 03/06/2024 | Biennial Report (2024) | ⊕ |
| 000007245111 | 02/23/2022 | 02/23/2022 | Biennial Report (2022) | ⊕ |
| 000006564522 | 03/31/2020 | 03/31/2020 | Biennial Report (2020) | ⊕ |
| 000005878986 | 02/22/2018 | 02/22/2018 | Biennial Report (2018) | ⊕ |
| 000005417245 | 04/12/2016 | 04/12/2016 | Biennial Report (2016) | ⊕ |
| 000004916110 | 03/26/2014 | 03/26/2014 | Biennial Report (2014) | ⊕ |
| 000004623066 | 09/12/2012 | 09/12/2012 | Biennial Report (2012) | ⊕ |
| 000004623064 | 09/12/2012 | 09/12/2012 | Biennial Report (2010) | ⊕ |
| 000004623063 | 09/12/2012 | 09/12/2012 | Biennial Report (2008) | ⊕ |
| 000004623059 | 09/12/2012 | 09/12/2012 | Biennial Report (2006) | ⊕ |
| 000004623049 | 09/12/2012 | 09/12/2012 | Biennial Report (2004) | ⊕ |
| 000004623042 | 09/12/2012 | 09/12/2012 | Biennial Report (2002) | ⊕ |
| 000004623033 | 09/12/2012 | 09/12/2012 | Biennial Report (2000) | ⊕ |

Light     Dark          1100 4th Street SW, Washington, DC 20024   Phone: (202) 671-4500          Sitemap

https://corponline.dlcp.dc.gov/homepage/business-info                                              2/2

**Exhibit B – Wash U in DC Program and Defendants Advertising Plaintiff's D.C. Externships**







94

**Exhibit C – WashU "Washington D.C. Campus"**

Full text available @ https://police.wustl.edu/app/uploads/2019/05/2018-Safety-and-Security.pdf



# Safety & Security
## 2018–2019
Guide for Students, Faculty, and Staff
Annual Campus Security and Fire Safety Reports and
Drug & Alcohol Abuse Prevention Program

Washington University in St.Louis

## Emergency Numbers

**DANFORTH CAMPUS**
Ambulance Fire Police (314) 935-5555
Emergency Health Service (314) 935-5555

**MEDICAL CAMPUS**
Ambulance Fire Police (314) 362-4357

**NORTH, SOUTH, WEST, AND DC CAMPUSES, TYSON RESEARCH CENTER**
Ambulance Fire Police 911



Tobacco Free

95

**Exhibit C – WashU "Washington D.C. Campus"**



## TYSON RESEARCH CENTER

Washington University Tyson Research Center is a 2,000-acre field station that provides numerous unique opportunities for research, environmental studies, preservation, and education. Tyson is situated near the Meramec River, just outside the St. Louis metropolitan area. It is a member of the Organization of Biological Field Stations (OBFS) network and is surrounded and buffered by an additional 6,000 acres of protected park land.

The physical facilities include a central administrative office, lecture room, laboratories, and classrooms. A gate house monitors those entering the grounds. Tyson has a telescope and observatory managed by the Washington University Physics Department.

Entry to Tyson is carefully regulated to protect the environment from uncontrolled disturbances and to safeguard research and teaching projects. All regular users must obtain an entry permit and identification card to operate at Tyson. A Washington University identification card may suffice. Those requesting a Tyson identification card must contact the Tyson Administrative office:

**Phone: (314) 935-8430**

**To contact ambulance, fire, or police while at Tyson, call 911.**

## 560 MUSIC CENTER

The 560 Music Center is located at 560 Trinity in University City. It is part of the Department of Music and houses office space, practice rooms, and a variety of performance venues including the 1,100 seat E. Desmond Lee Concert Hall.

The grounds are patrolled by University City Police, WUPD, WU Neighborhood Security Patrol (NSP), and a private security contractor.

Hours of operation: Public access varies.

**Phone: (314) 935-5574**

**To contact ambulance, fire, or police while at the 560 Music Center, call 911.**

## LEWIS CENTER

The Lewis Center, located at 725 Kingsland Avenue in University City, is part of the College & Graduate School of Art, and offers classroom and studio space.

The grounds are patrolled by University City Police, WUPD, WU Neighborhood Security Patrol (NSP), and a private security contractor.

Hours of operation: Public access varies.

**(314) 935-8400**

**To contact ambulance, fire, or police while at the Lewis Center, call 911.**

## THE LOFTS OF WASHINGTON UNIVERSITY

The Lofts of Washington University is a four-building mixed-use complex in the Delmar Loop Neighborhood in University City. Primarily a residential complex, the facility houses approximately 414 undergraduate students in loft-style apartments. Common areas open to all residents include lounges, meeting rooms, laundry facilities, and a 2nd floor terrace overlooking Delmar Boulevard. One the ground level of the two buildings fronting Delmar, there is approximately 22,000 sq. ft. of retail space. The commercial spaces are currently leased to United Provisions (a local grocer), and The Loop Peacock Diner.

Each of the four buildings are locked 24 hours per day with electronic access control. There are two security desks staffed 24/7 by Allied Security. Additionally, the grounds are patrolled by University City Police, WUPD, WU Neighborhood Security Patrol (NSP).

**Addresses: 6255 Delmar Blvd.**
**6263 Delmar Blvd.**
**6200 Enright Ave.**
**6300 Enright Ave.**

**Phone: (314) 935-0099**

**To contact ambulance, fire, or police while at The Lofts, call 911.**

## WASHINGTON D.C. CAMPUS

 The Washington D.C. campus is located in the Main building of The Brookings Institution, located at 1775 Massachusetts Ave NW, Washington, DC 20036. The entire building is comprised of eight floors of office space, with the university utilizing space on the first and second floors. The space is utilized for scholar research and meetings for Brookings research units and other components, such as Brookings Executive Education (a partnership between Brookings and the Washington University in St. Louis). Upon entering the facility, all guests much check in at the security desk or have an appropriate name badge. Security is comprised of former District of Columbia police and there is a DC police unit located one block from the building. In case of emergency, please call 911 and then the security desk at (202) 797-1775.

96

**Exhibit C – WashU "Washington D.C. Campus" and Washington D.C. Agents**

**Contacts**

WashU's Federal Relations team specializes in navigating the federal policymaking landscape and representing the university's interests in Washington, D.C.

As the liaison between WashU and policymakers on Capitol Hill and the Executive Branch, our dedicated team works tirelessly to advance priorities important to the higher education and research communities, secure federal funding for research initiatives, and shape legislative and regulatory developments that impact our campus community. Through our relationships with lawmakers, agencies, and advocacy organizations, we ensure that WashU serves as an important voice that reflects the university's academic excellence and cutting-edge research and medical discoveries.

 

**Nick Saab**

Associate Vice Chancellor for Federal Relations

**Jason Van Wey**

Assistant Vice Chancellor for Federal Relations vanwey@wustl.edu



Nick Saab is the Associate Vice Chancellor for Federal Relations at WashU. Based in Washington, D.C., Nick is responsible for developing and executing the university's federal agenda, as well as promoting engagement between WashU and decision makers in D.C.

## Exhibit C – WashU "Washington D.C. Campus"

### Guidance on Political, Campaign and Lobbying Activity

Planning an event with elected officials, political candidates, or campaign staff? Review WashU's guidelines to understand key campus requirements and restrictions on lobbying and political activity.

**Read the WashU Policy**

### Engaging with Policymakers

Planning to meet or interact with policymakers in an official capacity? Please inform the Government Relations team in advance so we can include it in our legally required quarterly reporting. We are also here to help you prepare testimony, strategy, and logistics.

**Email GovernmentRelations@wustl.edu**

98

**Exhibit C – WashU "Washington D.C. Campus" and D.C. Agents**



**Exhibit D - Richard O Contract 1**



**Exhibit D - Richard O Contract 2**



Richard sent this agreement to Plaintiff, and signed Plaintiff's name with a hippo emoji. Plaintiff

never signed an agreement with Richard to be raped at will. Richard O characterized this threat

as a "private conversation" he had with Plaintiff during Defendant WashU's Title IX

proceedings.

**Exhibit E - Finding of Not Responsible of Sexual Harassment of Richard O and Letter from Defendant Refusing to Investigate Richard O**



GENDER EQUITY AND TITLE IX COMPLIANCE OFFICE

January 11, 2022

PERSONAL AND CONFIDENTIAL
VIA E-MAIL

Allison Brown
allison.brown@wustl.edu

Dear Ms. Brown,

I am writing to follow up on the Amended Notice of Complaint sent to you on November 12, 2021, regarding your interactions with Richard Omoniyi-Shoyoola from August 26, 2021, through October 8, 2021, and from October 13, 2021, through November 4, 2021. After an investigation, including interviewing parties and witnesses, considering all the information provided, you have been found not responsible for the following violations of the University Student Conduct Code:

> University Student Conduct Code/4. Stalking, hazing, engaging in domestic, dating, or interpersonal violence, or any other conduct which harasses, threatens, or endangers the safety or health of, any member of the University community or visitor to the University.

> University Student Conduct Code/2. Interfering with the rights of other members of the University community or visitors to the University to engage in educational, recreational, residential, administrative, professional, business, and ceremonial activities, or other functions

> University Student Conduct Code/20. Knowingly or recklessly violating a published University policy, rule, or regulation; or participating in conduct which one should reasonably know to be a violation of a published University policy, rule, or regulation.

Investigator Fischer interviewed you, the Complainant and two witnesses. I based my decision on these interviews as well as the extensive documentation provided by the parties and witnesses. Specifically, I find that between August 26, 2021, and October 8, 2021, it is not more likely than not that you harassed Complainant or interfered with his rights as a member of the university community.

Complainant described two specific incidents of in-person contact in his initial complaint. The first incident on August 27, 2021, was observed by an independent witness. They recalled you expressing displeasure to Complainant and to others. The witness did not, however, remember you calling the Complainant any derogatory names or making comments that were sexual in nature. During the second incident, on the evening of August 28th into the early morning of August 29th, 2021, Complainant stated that you sexually propositioned him and then became

102

**Exhibit E - Defendant Cynthia Copeland Refusing to Investigate Richard O; Finding of Not Responsible of Sexual Harassment of Richard O**



**Washington University in St.Louis**

GENDER EQUITY AND TITLE IX COMPLIANCE OFFICE

angry when he declined your advances. You denied that the conversation took place. No independent witnesses to this specific conversation were identified. Witness interviews and documentation do show that you and Complainant left the social gathering that evening together in a rideshare that you arranged. Complainant paid you the following morning for a portion of the cost. The information available does not corroborate that you said or did anything that was harassing or interfering with Complainant's rights.

The initial complaint also alleged several instances of unwanted electronic contact between August 26th and September 4th, 2021. Complainant acknowledged that he did not specifically tell you he wanted to have no contact with you during that time. He did say that he blocked you on several communication platforms. Documentation provided shows you were aware that Complainant had blocked you from some forms of communication during that time. Documentation also shows, however, that during the time you and Complainant had been acquainted, it was not uncommon for one or both of you to block the other from certain platforms, but maintain consensual communication by other means. It is not clear from the information provided, based on the history of your communication, that you knew all communication with Complainant during that time was unwanted. Further, additional documentation shows that Complainant continued to initiate in-person communication with you during the same period. None of your communications directed at Complainant during that time were harassing or interfering with Complainant's rights.

Complainant filed a second complaint alleging that you retaliated against him for filing his initial complaint and requesting a No Contact Order against you. Specifically, he reported that social media posts you made between October 13th and November 4th, 2021, were retaliatory. During that timeframe, Complainant was blocked from your social media sites and did not view these posts directly. None of the posts in question mentioned Complainant by name, "tagged" him or otherwise identified him. Based on the content of these posts and the fact that they were posted on a forum that Complainant was prohibited from viewing, they are not retaliatory. Specifically, I do not find that they adversely affected the terms of Complainant's education.

Overall, the totality of information provided to our office is insufficient to find you in violation of the University Student Conduct Code or any other university policy. The No Contact Order previously issued, however, remains appropriate and in place. You are directed to abide by the restrictions in that Order until further notice.

Ms. Brown, we truly want you to succeed in your remaining time at Washington University in St. Louis and hope we can be supportive of your efforts. Not abiding by the No Contact Order will result in further action and/or referral to the Office of Student Conduct and Community Standards. If you have any questions about this letter, or if we can be of any assistance to you, please feel free to contact our office.

**Washington University in St.Louis**

GENDER EQUITY AND TITLE IX COMPLIANCE OFFICE

Sincerely,

/s/ Cynthia M. Copeland

Cynthia M. Copeland, J.D.
Assistant Director & Associate Title IX Coordinator

Cc:  Ms. Jessica W. Kennedy, Director, Gender Equity and Title IX Compliance Office & Title
     IX Coordinator
     Mr. Richard Omoniyi-Shoyoola, Complainant

103

**Exhibit E - Finding of Not Responsible of Sexual Harassment of Richard O and Letter from Defendant Refusing to Investigate Richard**

## Washington University in St.Louis

### GENDER EQUITY AND TITLE IX COMPLIANCE OFFICE

July 5, 2022

PERSONAL AND CONFIDENTIAL
VIA E-MAIL

Ms. Brown
allison.brown@wustl.edu

Dear Ms. Brown,

After reviewing the information in the complaint you submitted on May 9, 2022, I have determined that the reported behaviors do not constitute Prohibited Conduct under the Title IX definition of Sexual Harassment. Therefore, the university has determined the matter should be dismissed as a Title IX complaint.

Further, after reviewing the documentation you submitted with your complaint, as well as your interview conducted by our investigator and the interview of an additional witness, I have determined that the conduct you allege does not rise to the level of a potential violation of the student conduct code or other university policy. Therefore, the complaint will also be dismissed as a Gender Equity complaint.

Specifically, regarding the allegations of repeated unwanted contact, documentation shows that, during the time you and Respondent had been acquainted, it was not uncommon for one or both of you to block the other from certain platforms or ask not to be contacted, but maintain consensual communication by other means. It is not clear from the information provided, based on the history of your communication, that Respondent knew his contact with you prior to the No Contact Orders was unwanted.

Regarding Respondent filing complaints with our office and the Office of Student Conduct and Community Standards (OSCCS), investigations of those complaints did not support a finding that Respondent's complaints were frivolous or false, even though you were found not responsible. Respondent is entitled to seek an Order of Protection through the courts, and did not violate the Student Conduct Code by doing so.

Regarding the potential charges of physical abuse and sexual assault, you alleged one instance of unwanted physical contact, the respondent placing his hands on your waist/hips following a party at his apartment. Based on the information and documentation we have, this contact did not rise to the level of either physical abuse or sexual assault. You also cite a text sent by the Respondent containing a proposed promise of physical affection and sexual activity. The information and documentation provided to us do not demonstrate any threats or other attempts

104

**Exhibit E  - Finding of Not Responsible of Sexual Harassment of Richard O and Letter from Defendant Refusing to Investigate Richard O**

# Washington University in St.Louis

## GENDER EQUITY AND TITLE IX COMPLIANCE OFFICE

to have you agree to or abide by this promise. This does not rise to the level of a threat of physical abuse.

The allegation about the University of Chicago, if true, does not constitute a violation of the Code.

The No Contact Orders put in place on October 13, 2021, remain in effect. If you are in need of additional supportive measures, please let me know.

You have a right to appeal this dismissal. Your right to appeal is detailed in our Student Title IX Grievance Process under section 37. The Process can be found here: https://titleix.wustl.edu/students/student-title-ix-grievance-process/

If you have any questions about this letter, or if we can be of assistance to you, please feel free to contact the Gender Equity and Title IX Compliance Office.

Sincerely,
/s/ Cynthia M. Copeland
Cynthia M. Copeland, J.D.
Asst. Director & Assoc. Title IX Coordinator

Cc:  Ms. Jessica W. Kennedy, Director & Title IX Coordinator

**Exhibit F - Screenshots Regarding Plaintiff's Hiring by Professor Davis.**

**Plaintiff has never been fired from Defendant University.**



106

**Exhibit G - Suspension Letter from Defendant Wild to Plaintiff**



**Washington University in St.Louis**

STUDENT AFFAIRS

**Associate Vice Chancellor for Student Affairs and Dean of Students**

November 4, 2022

Allison Brown
allison.brown@wustl.edu

Dear Allison,

I was recently contacted by the School of Law, which alleges that you have engaged in a pattern of disruptive and harassing behavior targeted at law school community members, including faculty and students. Specifically, you are reported to have been disruptive in multiple classes and to have generally engaged in unprofessional and harassing behavior that interferes with or prevents faculty members and students from fully participating in the learning environment. These allegations are concerning and, if true, they would violate our University Student Conduct Code.

Your continued presence on campus poses a substantial threat to the ability of faculty and other students to continue their normal University functions and activities. Therefore, by authority granted by the University Student Conduct Code Section X.A., I must notify you that you are temporarily suspended from Washington University.

**Effective immediately, you are no longer permitted on campus. You will be permitted to complete your classes remotely, as noted below.**

The terms of this temporary suspension, which takes effect immediately, are as follows:

1. You are prohibited from being present on any Washington University campus or any University leased or owned property, including but not limited to the Danforth Campus, the School of Law, any Residential Life-managed on and off-campus residence halls and apartments, and the Danforth University Center and the Athletic Complex. If you are found in violation of these expectations, you will be physically removed from campus and subject to arrest by Washington University Police. If you wish to be present on campus for any reason, including to visit Habif Health and Wellness Center +you must seek prior approval from me.

2. You are prohibited from participating in any University activities, with the exception of courses that will be recorded for you. This means, for example, that you are not permitted to participate in student organizations that you may belong to.

3. Your ongoing participation in courses will be through asynchronous viewing of class recordings. Any questions you have for the instructor must be in writing and delivered through Dean Elizabeth Walsh. Dean Walsh will work with the instructor to provide responses to your questions.

4. If you wish to meet with me under Section X D. to discuss this temporary suspension, you should do so within five business days from receiving this notice. Please call my office at 314-935-4526 to make an appointment and secure permission to be present on campus.

Washington University in St. Louis, Campus Box 1250, One Brookings Drive, St. Louis, MO 63130-4899
(314) 935-4329, *Fax:* (314) 935-7776, studentaffairs.wustl.edu

107

**Exhibit H - Defendant Conclusion of Investigation with Erroneous Assertions Therein**



OFFICE OF INSTITUTIONAL EQUITY

Date:    May 7, 2024

To:    Allison Brown

From:    Gillian Boscan, Director of Investigations

Re:    Investigation Conclusion

We received the complaint you filed on March 18, 2024 alleging discrimination and retaliation against you. The investigation into this complaint has now concluded. Investigation findings are based on interviews and a review of all available, relevant evidence.  You declined OIE's invitation to meet and provided little follow-up or new evidence to support the allegations.  Some investigation findings may pertain to personnel matters that are kept confidential and therefore cannot be shared.

The allegations and subsequent investigation results do not support a finding of violation of the university's Discrimination and Harassment policy.  The decision to temporarily suspend you in order to review allegations through the Office of Student Conduct was not based on your race but on feedback from multiple sources about concerning behaviors.  The process was not as rapid as originally planned because you requested to delay the hearing from December to February.  The temporary suspension did not preclude you from completing coursework and you received a favorable outcome from the hearing.

The decision to charge you tuition followed standard university procedures and was not based on race or a retaliatory purpose. The Washington University School of Law 2023-2024 Financial Aid Handbook, pages 11-12, outlines the School's tuition practice for law students visiting at another law school. This information applies to all students visiting other law schools, regardless of membership in a protected class or participation in Office of Student Conduct procedures.

The university prohibits retaliation against those who file complaints and those who participate in resulting investigations.

Washington University in St. Louis, 621 N. Skinker Blvd., St. Louis, Missouri 63110
An Equal Opportunity/Affirmative Action Employer

108

## Exhibit I - Release of All Claims and Non Disparagement Agreement with Defendant



Student Conduct and
Community Standards
STUDENT AFFAIRS AT WASHINGTON UNIVERSITY

January 20, 2023

Allison Brown                                    **PERSONAL AND CONFIDENTIAL**
Allison.brown@wustl.edu                          Via Electronic Mail

Re: Student Conduct Matter and Options for Resolution

Dear Allison:

As you are aware, this office received a complaint from the School of Law alleging that you have engaged in a pattern of disruptive and harassing behavior inside and outside of the classroom in violation of the University Student Code of Conduct. The School of Law alleges that some of this conduct began prior to your matriculation and continued during the Spring and Fall 2022 semesters, even after faculty and administrators communicated with you regarding concerns about your behavior. Specifically, the School of Law alleges that it received reports from multiple students and faculty that:

1. Students do not feel comfortable participating in classes they share with you because you have posted derogatory and inflammatory remarks about your classmates and their class-related comments on social media;
2. You have engaged in a pattern of attacking students on social media who do not share your views or with whom you disagree;
3. You have engaged in similarly disruptive behavior in class and on course instruction platforms; and
4. One student reported that they did not feel comfortable meeting in person with Dean Walsh because they had heard you knew who came to Dean Walsh's office.

The School of Law alleges that as a result of your behavior, students have been unable to fully participate in the law school classroom and in extracurricular activities, and law school community members have been impeded in their ability to engage in educational, administrative, professional and other functions.

These allegations, if true, would be a violation of one or more of the following offense(s):

University Student Conduct Code/2. Interfering with the rights of other members of the University community or visitors to the University to engage in educational, recreational, residential, administrative, professional, business, and ceremonial activities or other functions.

University Student Conduct Code/4. Stalking, hazing, engaging in domestic, dating, or interpersonal violence, or any other conduct which harasses, threatens, or endangers the safety or health of, any member of the University community or visitor to the University.

1

109

## Exhibit I - Release of All Claims and Non Disparagement Agreement with Defendant



Student Conduct and
Community Standards
STUDENT AFFAIRS AT WASHINGTON UNIVERSITY

The School of Law has agreed to withdraw its complaint and settle this matter, in lieu of proceeding forward with a University Student Conduct Board hearing, subject to the terms and conditions below:

1. Allison Brown will complete the Spring 2023 semester through an off-campus externship or other non-campus program that qualifies for the School of Law credits and by enrolling in Legal Practice II remotely.[1] To enable Allison to do so, the School of Law will allow Allison to work for the appropriate number of credits at the National Center for Youth Law and/or the United Nations Permanent Forum for People of African Descent per the terms of the previously-submitted offer letters. The School of Law will also allow Allison to receive a stipend from her employers in addition to the academic credit granted through the School of Law. The School of Law will identify the Legal Practice II instructor and enroll Allison in that course.

2. Allison Brown will apply for admission as a visiting student to other law schools to complete her third year of law school. If Allison enrolls at another law school as a visiting student, the School of Law will grant her leave as needed.

3. The School of Law will review all courses in which Allison Brown enrolls at another accredited law school. So long as Allison earns the equivalent of a "C" or higher, the course meets a School of Law degree requirement, and the course is not duplicative of any course Allison has already taken, the School of Law will not unreasonably withhold acceptance of the associated transfer credits. Barring unusual or atypical circumstances, accurate and equivalent categorization of a course at a different law school will generally indicate that the course will fulfill School of Law degree requirements. The School of Law will review any courses in which Allison indicates an intention to register at or before the time of registration to confirm that each such course would fulfill School of Law degree requirements and would be eligible for transfer credit if successfully completed.

4. Assuming Allison Brown successfully completes the School of Law's requirements for a J.D. by the end of the 2023-2024 academic year, including an ethics course and a seminar, Allison will receive a J.D. from the School of Law.

5. Allison Brown will be allowed to enroll in classes at the School of Law for one semester during the 2023-2024 academic year to complete her law degree remotely[2] if and only if (i) Allison is not accepted into a visiting student or study abroad program at another law school and (ii) she demonstrates to the School of Law's satisfaction that she has made

---

[1] Remote enrollment will be asynchronous and/or synchronous as determined by the course instructor.
[2] See footnote 1.

2

110

## Exhibit I - Release of All Claims and Non Disparagement Agreement with Defendant



systematic, sustained and diligent efforts to obtain admittance elsewhere.[3] In the event that Allison is allowed to enroll in classes at the School of Law for one semester during the 2023-2024 academic year, Associate Dean Elizabeth Walsh will work with her to insure that she enrolls in courses that are appropriate for remote, asynchronous learning.

. Allison Brown will not attend any Washington University sponsored events and will notbe permitted on the Washington University campus (or any university owned, leased,managed or rented property) without advance permission. Permission must be soughtthrough Associate Dean Elizabeth Walsh or Dean of Students Rob Wild.

. In the event Allison Brown returns to the School of Law in the 2023-2024 academic year (orwith regards to Legal Practice II), she will not take any course taught by ProfessorsAdrienne Davis, Elizabeth Katz, Ann Shields or Peggie Smith.

. Allison Brown will not contact any student who was named as a witness or identified inany School of Law exhibits, including emails, in the 2022 Student Conduct Proceeding.

. As Allison Brown continues her work toward her School of Law degree, she will continueto pay tuition and fees to the School of Law. Allison will also maintain her meritscholarship, which shall be credited toward her School of Law tuition and fees. In theevent Allison attends an institution as a visiting student with tuition and fees greaterthan the School of Law's, she will be solely responsible for any difference.

. Release

Allison Brown, for herself and her family members, heirs, personal representatives, and assigns, hereby releases and forever discharges Washington University in St. Louis, including the School of Law, its trustees, employees, former employees, faculty, administrators, students, representatives, insurers, attorneys, agents, and assigns ("Released Parties") from and against any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind and character, whether known or unknown, suspected or unsuspected, and whether based on contract, tort, statutory or other legal or equitable theory of recovery, that she now has or may have had, or hereafter may claim to have, on behalf of herself or any other person or entity, including but not limited to claims arising out of or relating in any way to the Student Conduct Proceeding, the temporary suspension and/or Allison Brown's attendance at the School of Law. Allison Brown further promises to not initiate any proceeding (including, without limitation, under any School

[3] American Bar Association Standard 311(e) allows law schools to grant up to 1/3 of the credits required for a J.D. through distance education. Thus, Allison may complete two of her remaining three semesters asynchronously. At least one semester must be completed through a School of Law study abroad program or as a visiting student at another law school.

3

111

## Exhibit I - Release of All Claims and Non Disparagement Agreement with Defendant


Student Conduct and
Community Standards
STUDENT AFFAIRS AT WASHINGTON UNIVERSITY

of Law policy or procedure, other administrative action, or other legal action) arising out of or relating to the Student Conduct Proceeding, the temporary suspension and/or Allison Brown's attendance at the School of Law, against the Released Parties.

11. Non-Disparagement

Allison Brown agrees that she will not hereafter publish to any other person or entity, either orally or in writing, including, but not limited to the news media, any social media platform, through the internet, U.S. Postal Service or any other commercial mailing, and/or any other type of hard copy or online publication, even on an anonymous basis, any disparaging or negative statements about the Released Parties. It is understood that the School of Law administration will answer truthfully any inquiries they receive regarding Allison Brown from other academic institutions, bar examiners or government officers. However, the School of Law administration will not affirmatively reach out to any such parties and will limit any response it provides to the specific inquiry received. If Allison Brown violates any of the provisions of this paragraph, such shall be a material breach of this agreement and cause for the Released Parties to seek legal and/or equitable remedies against her.

12. Upon receipt of the final signed agreement, School of Law will withdraw the pending student conduct complaint and remove any notation related to that complaint from Allison Brown's transcript.

If you do not wish to agree to the terms and conditions above, you may choose to continue to proceed with the Student Conduct Board hearing process under the University Student Conduct Code.

Please let me know how you wish to proceed. If you choose to accept the terms and conditions above, I ask that you sign, date, and return this document to me. Please keep a copy and maintain it for your records. If you choose to proceed with a Student Conduct Board hearing, we will work with your attorney to set up an appropriate time.

Sincerely,

*Nicole R Gore*

Nicole Gore
Associate Dean

cc: Elizabeth Walsh, Associate Dean
    Rob Wild, Associate Vice Chancellor and Dean of Students

4

112

## Exhibit I - Release of All Claims and Non Disparagement Agreement with Defendant



Student Conduct and
Community Standards
STUDENT AFFAIRS AT WASHINGTON UNIVERSITY

### Acknowledgement

I acknowledge that I have read and accept the terms and conditions set forth above. I acknowledge that this agreement is a means to formally and mutually resolve the pending University student conduct matter.

_____          _____

Allison Brown                             Date

Student ID # 503456

113

**Exhibit J - SCB Determination**



STUDENT AFFAIRS AT WASHINGTON UNIVERSITY

**CONFIDENTIAL**

**UNIVERSITY STUDENT CONDUCT BOARD**

**WASHINGTON UNIVERSITY IN ST. LOUIS**

April 27, 2023

**In the matter of Allison Brown**
**Case No. 00748-2002**

### DECISION OF THE UNIVERSITY STUDENT CONDUCT BOARD

In this matter, a complaint was submitted to the Office of Student Conduct and Community Standards ("OSCCS") by the School of Law ("Complainant") against law student, Allison Brown ("Respondent"), alleging violations of Offense Nos. 2 and 4 of the University Student Conduct Code ("Code"). The Panel deliberated following the conclusion of Phase One and carefully weighed the evidence. Although the Panel has concerns about the Respondent's behavior and the abrasive choices she makes when interacting with others and online, ultimately the Panel determined there was not sufficient evidence to establish that it was more likely than not that the Respondent engaged in a violation of Offense Nos. 2 or 4 of the Code.

The Complainant alleged that as a result of the Respondent's behavior, students were unable to fully participate in the law school classroom and in extracurricular activities, and law school community members were impeded in their ability to engage in educational, administrative, professional and other functions. The Complainant alleged that the Respondent's actions and resulting impact constitute a violation of Offense numbers 2 and 4 under the University Student Conduct Code.

The Respondent denied the allegations.

**Procedural Background**

A hearing before the Student Conduct Board ("SCB" or "Panel") was originally scheduled for December 15, 2022 to determine whether a violation of the Code occurred. At the Respondent's request, it was rescheduled.

Phase One of the hearing took place over four different days, (February 24, March 20, April 5, April 11). During Phase One, the Panel heard evidence and considered whether it was more likely than not that the Respondent engaged in one or more violations of the Code. Under the Code, the Respondent is presumed innocent of the alleged violations.

**Relevant Provisions of the University Student Conduct Code Offenses**

University Student Conduct Code/2. Interfering with the rights — Interfering with the rights of other members of the University community or visitors to the University to engage in educational, recreational, residential, administrative, professional, business, and ceremonial activities or other functions.

University Student Conduct Code/4. Harassment, Stalking, Hazing, etc. — Threatening physical abuse, stalking, hazing, engaging in domestic, dating, or interpersonal violence, or any other conduct which harasses, threatens, or endangers the safety or health of any member of the University community or visitor to the University.

114

## Exhibit K – Correspondence from Plaintiff to Defendants re: Race and/or Sex Discrimination

All,

I am a visiting student at Georgetown University Law Center this year. I am on track to graduate from Washington University in St. Louis School of Law ("WUSTL") in Spring 2024.

Let this e-mail be notice WUSTL is charging me $56,475 in tuition for the fall semester. Georgetown's Tuition for the fall semester is $37,975. Attached are the two bills.

These bills directly contradict the negotiations between WUSTL (Nicole Gore) and myself **before** the student conduct hearing where WUSTL represented that I would only be responsible for the higher tuition between WUSTL and the school where I am a visiting student and that I would keep my scholarship. We have a draft of this agreement in writing (see attached.) They are, in effect, taking my scholarship away from me and making me pay the full Georgetown tuition. If they did not take my scholarship away from me for attending another institution without going through the stress of 4 separate hearings, why would it be acceptable for them to take my scholarship away for attending another institution **after being found not guilty of violating any portion of the student conduct code**?

I have already paid Wash U $17,455. Between my loan and my scholarship, WUSTL has more than enough to pay Georgetown tuition. The only reason they are citing for not paying Georgetown is this additional $22,000 in WUSTL tuition.

The woman who is charging me this excessive tuition is Carrie Burns, Director of Financial Aid.

It should be painfully obvious to a jury that returning to WUSTL was not an option when Dean Walsh successfully suspended me without cause for a semester and tried to get me permanently expelled for conduct that the Student Conduct Board did not find actionable at all. There was no finding of liability, yet WUSTL decides to suspend me for an entire semester AND take my scholarship away from me. I am simply trying to save what is left of my mental health by attending another institution to finish my law degree.

Please advise.

Sincerely,

Allison Brown

--
Allison S. Brown | she/her/hers
Ford School of Public Policy, University of Michigan
Vice President, Black Graduate Students Association
J.D. Candidate, Class of 2024
Washington University in St. Louis School of Law
allison.brown@wustl.edu | albsure@umich.edu
https://www.linkedin.com/in/allisonsbrown/

**3 attachments**

Release - Wash U A. Brown Letter (2)[60].pdf
361K

Georgetown - Student Account - Fall 2023.pdf
48K

Billing - Wash U Fall 2023 Bill.pdf
149K

115

## **Exhibit K – Correspondence from Plaintiff to Defendants re: Race and/or Sex Discrimination**



Allison Brown <asb151@georgetown.edu>

**Fw: Decision Letter**
1 message

Patricia Brown <brownandrussell@verizon.net>                                   Mon, Jun 29, 2026 at 2:23 PM
To: Allison Brown <asb151@georgetown.edu>, Allison Brown <albsure@umich.edu>

----- Forwarded Message -----
**From:** Brown, Allison <allison.brown@wustl.edu>
**To:** Allen, Monica <monica.allen@wustl.edu>; Braun, Lisa <lbraun@wustl.edu>; Blackwell, Thomas <thomas_blackwell@wustl.edu>; Huskey, Tim <thuskey@wustl.edu>; Gore, Nicole <ngore@wustl.edu>; Walsh, Elizabeth <ewalsh@wustl.edu>; Wild, Rob <rob.wild@wustl.edu>; Goddard, Christopher <cgoddard@wustl.edu>; Hastings, Patty <phastings@wustl.edu>; Martin, Kelly <martin.k@wustl.edu>; Hudson, Darrell <d.hudson@wustl.edu>; Potter Klosterman, Heidi <heidi_klosterman@wustl.edu>; Wendler Modde, Deanna <dwendler@wustl.edu>; Powers, John <john.powers@wustl.edu>; Selby, Anna <anna.selby@wustl.edu>; Sklansky, Joseph <joseph_sklansky@wustl.edu>; Surber, James <james_surber@wustl.edu>
**Cc:** Burns, Carrie <cjburns@wustl.edu>
**Sent:** Monday, November 6, 2023 at 04:01:00 PM EST
**Subject:** FW: Decision Letter

Dean Gore and all (cc: General Counsel of Washington University in St. Louis's office):

I write this e-mail as a formality, to challenge each of your decisions on the merits, and the scope of the appeal outlined in Section VII.C of the Student Conduct Code.

Because I was not invited to testify or provide evidence at these "hearings" and that therefore, they were insufficient, and unfair. You, Dean Gore, have corresponded with me exactly 3 separate times: 2 e-mails, and one 15 minute zoom call, to "get my side of the story." I did not testify, nor am I confident that you presented any of the evidence that I sent you in those "hearings."

One glaring example of how I cannot in good faith trust anything you (Dean Gore et al) all say, is that in my student conduct board hearing, Graeme Harcourt made a baseless accusation that I "made a professor cry." This is defamatory, because it is not true. But you cannot investigate because if you did investigate, you would have to take disciplinary action towards Dean Walsh and/or Professor Davis. You cannot play the tape of the class of November 2nd, 2022 during a hearing, because it would look really bad for Wash U's reputation. Therefore, I am certain that the "hearing" was insufficient, and unfair.

I want to make it clear for the record that I do not think any of these hearings actually occurred. I have no faith in you, Dean Gore, Dean Walsh, Dean Wild, or any other member of Wash U administration to investigate correctly, tell the truth, or research any of my claims properly based on the due-process-less and sorry excuse for a hearing you gave me in my student conduct board case, where you all repeatedly denied admission of evidence, refused to produce tapes, and doctored e-mail correspondence.

Further, I am acutely aware of the fact that you (and Wash U et al) have no intention of finding responsibility for any of the actions of any of the students that I have filed against. To find responsibility would be admitting to wrongdoing on your part. Further, ONLY because a Court or other fact-finder has not forced you to do so, I do not think that you, Dean Gore, or Wash U et al, are capable of taking responsibility for any of the harm or emotional distress that you have inflicted on me. You have no intention of doing the right thing, and I am documenting this here for the record.

I mean: it has been a year, and you still have not responded to my mother's handwritten letter which details the proximate cause of my temporary suspension: how Professor Davis's performance unfolded on November 2nd, 2022. I should've never been temporarily suspended. Yet, at this point in time, you [Wash U] have mentioned on four different occasions (twice in my decision letter on my student conduct board hearing, in the decision letter from the Chair of the Student Conduct, in the Graeme decision letter) that Professor Davis cried in class, and made a scene. Yet, you refuse to show the tape of the class during any hearing involving Professor Davis's performance, and have not apologized for wrongfully temporarily suspending me for over 6 months. You will not produce the tape, or even include it in any hearing. Graeme, as a witness, even said that I made her cry – when I didn't, and the tape would prove this - yet you say that is not defamatory. Further, you have refused to release or include the tapes in any hearing that discusses her performance and how I actually did not make her cry. Professor Davis is mentally unstable and not fit to be in the classroom. This is only further proof that you do not actually investigate. You issue decisions first, and hope that the consequences of your actions will not follow. But what more can I expect from a Soviet-Union like, Kangaroo court?

## Exhibit K – Correspondence from Plaintiff to Defendants re: Race and/or Sex Discrimination

Further, I am acutely aware of the fact that you (and Wash U et al) have no intention of finding responsibility for any of the actions of any of the students that I have filed against. To find responsibility would be admitting to wrongdoing on your part. Further, ONLY because a Court or other fact-finder has not forced you to do so, I do not think that you, Dean Gore, or Wash U et al, are capable of taking responsibility for any of the harm or emotional distress that you have inflicted on me. You have no intention of doing the right thing, and I am documenting this here for the record.

I mean: it has been a year, and you still have not responded to my mother's handwritten letter which details the proximate cause of my temporary suspension: how Professor Davis's performance unfolded on November 2nd, 2022. I should've never been temporarily suspended. Yet, at this point in time, you [Wash U] have mentioned on four different occasions (twice in my decision letter on my student conduct board hearing, in the decision letter from the Chair of the Student Conduct, in the Graeme decision letter) that Professor Davis cried in class, and made a scene. Yet, you refuse to show the tape of the class during any hearing involving Professor Davis's performance, and have not apologized for wrongfully temporarily suspending me for over 6 months. You will not produce the tape, or even include it in any hearing. Graeme, as a witness, even said that I made her cry – when I didn't, and the tape would prove this - yet you say that is not defamatory. Further, you have refused to release or include the tapes in any hearing that discusses her performance and how I actually did not make her cry. Professor Davis is mentally unstable and not fit to be in the classroom. This is only further proof that you do not actually investigate. You issue decisions first, and hope that the consequences of your actions will not follow. But what more can I expect from a Soviet-Union like, Kangaroo court?

Lastly, I know that you are unable to levy sanctions against those students (Graeme Harcourt, Shane Gregoire, Alex Templeton, Cara Hunt) who served as witnesses in Dean Walsh's racially-motivated campaign of terror and baseless accusations against me. That would make Dean Walsh look even crazier than she looks right now. I almost want to apologize to the General Counsel's office on her behalf for the mess that she has made based on a personal vendetta against a Black student almost 30 years her junior.

Nevertheless, as a formality, and for the formal record, I challenge all of your (Dean Gore's) decisions that have been issued today – this morning – via the WUSTL advocate portal – also on the basis that instead of "temporarily" suspending any of the accused, allegedly, you merely "questioned them." Allegedly, none of these students had to leave campus, resign from their leadership roles or campus responsibilities, require that they take their courses asynchronously, or prohibit their communication with any of their professors, prohibit access to and delete their course materials, or subject them to professional and reputation defamation by their classmates.

I know you [Wash U] don't want to admit wrongdoing. But I also know that you know that what you are doing is wrong. Otherwise, you wouldn't go so far to only mention Professor Davis when it's absolutely necessary, even though her performance was the proximate cause of my suspension.

It is sick and incomprehensible that you have continued to deny responsibility while you watch an aspiring Black female attorney try to assert herself against individuals and an institution that has repeatedly wronged her.

As long as you keep denying responsibility, I can assure you that this battle will only become longer. I encourage you to actually investigate and think about the letters that you have sent me, and the message that those letters will send to other people about Wash U.

Lastly, I also plead, kindly: please stop harming me. Please stop sending me letters that are gaslighting me about what happened to me at Wash U, and what my classmates did to me. Please stop charging me ridiculous levels of tuition when the only reason I left Wash U was because I was suspended for 6 months for no cause, and Dean Walsh would not stop discriminating against me. Not one of my classmates has had to endure what I have had to endure. I never asked to bring a gun or have access to a gun at school or at a school-sponsored event. I never threatened my classmate to step outside with a gun. I have not done anything, except desire to discuss the racial implications of the law in my coursework, and tell Dean Walsh and Professor Katz to stop tone-policing me.

Please stop taunting me about what you have enabled, and done.

I am unsure as to why you all keep digging a deeper hole for yourselves in this matter of discrimination. I am open to negotiating with the GC's office to close this matter altogether so that we can stop going back and forth, and so that I can stop filing with different federal agencies. You already asked me to sign a release of all claims and a non-disparagement agreement. I know that you all are inclined to negotiate instead of getting more people and agencies involved. After all, I am at Georgetown now, and I would like to focus on my studies.

Dean Walsh lost the student conduct board hearing. She needs to let this go. Professor Davis is mentally unwell, and more than twice my age. She needs to let this go, and get out of the classroom. I urge us all to move on.

Either Wash U is going to do their job correctly, and let me move on as well, or we have potentially very tedious hours dedicated to litigation and mediation in our future. I would like to resolve this matter expeditiously.

117

## Exhibit K – Correspondence from Plaintiff to Defendants re: Race and/or Sex Discrimination at GULC

As long as you keep denying responsibility, I can assure you that this battle will only become longer. I encourage you to actually investigate and think about the letters that you have sent me, and the message that those letters will send to other people about Wash U.

Lastly, I also plead, kindly: please stop harming me. Please stop sending me letters that are gaslighting me about what happened to me at Wash U, and what my classmates did to me. Please stop charging me ridiculous levels of tuition when the only reason I left Wash U was because I was suspended for 6 months for no cause, and Dean Walsh would not stop discriminating against me. Not one of my classmates has had to endure what I have had to endure. I never asked to bring a gun or have access to a gun at school or at a school-sponsored event. I never threatened my classmate to step outside with a gun. I have not done anything, except desire to discuss the racial implications of the law in my coursework, and tell Dean Walsh and Professor Katz to stop tone-policing me.

Please stop taunting me about what you have enabled, and done.

6/29/26, 3:56 PM                                    Georgetown University Mail - Fw: Decision Letter

I am unsure as to why you all keep digging a deeper hole for yourselves in this matter of discrimination. I am open to negotiating with the GC's office to close this matter altogether so that we can stop going back and forth, and so that I can stop filing with different federal agencies. You already asked me to sign a release of all claims and a non-disparagement agreement. I know that you all are inclined to negotiate instead of getting more people and agencies involved. After all, I am at Georgetown now, and I would like to focus on my studies.

Dean Walsh lost the student conduct board hearing. She needs to let this go. Professor Davis is mentally unwell, and more than twice my age. She needs to let this go, and get out of the classroom. I urge us all to move on.

Either Wash U is going to do their job correctly, and let me move on as well, or we have potentially very tedious hours dedicated to litigation and mediation in our future. I would like to resolve this matter expeditiously.

Allison Brown

Allison S. Brown | she/her/hers
Ford School of Public Policy, University of Michigan
Visiting Student, Georgetown University Law Center
J.D. Candidate, Washington University in St. Louis School of Law
allison.brown@wustl.edu | https://www.linkedin.com/in/allisonsbrown/

---

**From:** wustl-advocate@advocate.symplicity.com <wustl-advocate@advocate.symplicity.com>
**Date:** Monday, November 6, 2023 at 11:52 AM
**To:** Brown, Allison <allison.brown@wustl.edu>
**Subject:** Decision Letter



Student Conduct and
Community Standards
STUDENT AFFAIRS AT WASHINGTON UNIVERSITY

November 6, 2023

Allison S Brown

**Sent Electronically to:** allison.brown@email.wustl.edu

Dear Allison,

You have received a secure message from the Office of Student Conduct and Community Standards. Please click the following link to gain access to view your message: https://wustl-advocate.symplicity.com/u/dzxBhiWw

118

**Exhibit K – Correspondence from Plaintiff to Defendants re: Race and/or Sex Discrimination at GULC**

From: wustl-advocate@advocate.symplicity.com <wustl-advocate@advocate.symplicity.com>
Date: Monday, November 6, 2023 at 11:52 AM
To: Brown, Allison <allison.brown@wustl.edu>
Subject: Decision Letter

**Student Conduct and Community Standards**
STUDENT AFFAIRS AT WASHINGTON UNIVERSITY

November 6, 2023

Allison S Brown

Sent Electronically to: allison.brown@email.wustl.edu

Dear Allison,

You have received a secure message from the Office of Student Conduct and Community Standards. Please click the following link to gain access to view your message: https://wustl-advocate.symplicity.com/u/dzxBhiWw

https://mail.google.com/mail/u/1/?ik=7b481111d8&view=pt&search=all&permthid=thread-f:1869356660495594740&simpl=msg-f:1869356660495594740                3/4

6/29/26, 3:56 PM                                            Georgetown University Mail - Fw: Decision Letter

You'll be prompted to verify your Student ID and email, and should use the email listed above.

If you have trouble, please contact the Office of Student Conduct and Community Standards via email at studentconduct@wustl.edu.

Thank you

119

**Exhibit K – Correspondence from Plaintiff to Defendants re: Race and/or Sex Discrimination at GULC**



Allison Brown <asb151@georgetown.edu>

**Fw: Following Up**
1 message

**Patricia Brown** <brownandrussell@verizon.net>                              Mon, Jun 29, 2026 at 2:28 PM
To: Allison Brown <asb151@georgetown.edu>, Allison Brown <albsure@umich.edu>

----- Forwarded Message -----
**From:** Brown, Allison <allison.brown@wustl.edu>
**To:** Walsh, Elizabeth <ewalsh@wustl.edu>; Wood, Lisa (Asst VC) <wood_esq@wustl.edu>; Allen, Monica <monica.allen@wustl.edu>; Braun, Lisa <lbraun@wustl.edu>; Blackwell, Thomas <thomas_blackwell@wustl.edu>; Huskey, Tim <thuskey@wustl.edu>; Gore, Nicole <ngore@wustl.edu>; Walsh, Elizabeth <ewalsh@wustl.edu>; Wild, Rob <rob.wild@wustl.edu>; Goddard, Christopher <cgoddard@wustl.edu>; Hastings, Patty <phastings@wustl.edu>; Martin, Kelly <martin.k@wustl.edu>; Hudson, Darrell <d.hudson@wustl.edu>; Klosterman, Heidi <heidi_klosterman@wustl.edu>; Wendler Modde, Deanna <dwendler@wustl.edu>; Powers, John <john.powers@wustl.edu>; Selby, Anna <anna.selby@wustl.edu>; Sklansky, Joseph <joseph_sklansky@wustl.edu>; Surber, James <james_surber@wustl.edu>
**Cc:** Burns, Carrie <cjburns@wustl.edu>; Kamimura, Mark <mkamimura@wustl.edu>; Stewart, Leanne <leannerstewart@wustl.edu>; Wright, Sara <sara.wright@wustl.edu>
**Sent:** Friday, September 1, 2023 at 01:18:05 PM EDT
**Subject:** Re: Following Up

Dean Walsh,

I cannot believe that you have the audacity to act like you did not do anything to me to make me study at Georgetown for my 3L year. YOU, Dean Walsh, in the negotiations, were the one who encouraged me to go to another university. YOU, along with Rob Wild, would not let me step foot on campus for 6 months straight for no cause. You would not even let me go to the showing of Black Panther, off-campus, at the local movie theater with the Black Graduate Students Association that I PLANNED, because you argued that would be a violation of my temporary suspension. YOU made me give up my position as Vice President of the Black Graduate Students Association. You took my community away from me.

How quickly you forget.

The fact that you portray my decision to study at Georgetown as wholly unrelated to your campaign of harassment and diabolical actions against me is almost the definition of intentional infliction of emotional distress. Your actions, at a minimum, were distressing and detrimental to my mental health and future legal career.

Let us not forget that the reason why I am a visiting student at Georgetown Law school this year is because of your actions against me. You have tried to harm me ever since I matriculated at Wash U in 2021. I had no choice but to visit elsewhere. I did not go to Georgetown willingly. I went to Georgetown because you will manufacture any conceivable falsehood and narrative at my expense in order to get me expelled.

I should not be penalized for your actions against me. I have been exonerated by the Student Conduct Board, and yet, you want to continue your campaign of harassment by having me incur excessive tuition fees that obviate my scholarship.

You are requiring me to pay an extra $22,000 when I am only at Georgetown because you tried to get me expelled for no cause.

You filed a bogus case against me that depended on the hearsay testimony of five students who were biased to dislike me because of the fall-out after a Title IX proceeding.

This list includes some, but not all of the traumatic events that I have experienced at Wash U because of your [Dean Walsh's] direct inaction or deliberate actions to harm me:

## Exhibit K – Correspondence from Plaintiff to Defendants re: Race and/or Sex Discrimination at GULC

This list includes some, but not all of the traumatic events that I have experienced at Wash U because of your [Dean Walsh's] direct inaction or deliberate actions to harm me:

1. Undergoing 4 different student conduct hearings and **being temporarily suspended for 6 months for no cause** after Dean Walsh lied to multiple university officials about my conduct inside and outside the classroom
2. Having the Chair of the Student Conduct Board deny my right to present evidence regarding the Title IX hearing and Professor Adrienne Davis' conduct in December 2022 that would've exonerated me in this hearing; I was exonerated ultimately, but **Dean Walsh objected to submission of the tapes of classes that would've cleared my name much earlier and obviated the need for a hearing in the first place**
3. Dean Walsh's complete unwillingness to protect me from classmates that sexually harass me by filing Title IX complaints, miss finals to attend bogus court proceedings, students pressuring me to sign sex related contracts, threaten me with violence, and **students telling me in WRITING** that I am not worthy of life, and fat shaming me
4. I had to sit in 2 different classes and do research for Professor Adrienne Davis, who was obsessed with conspiring with Dean Walsh getting me expelled
5. Being suspended for 4 months immediately after Professor Adrienne Davis's feigned objection to my conduct in class despite making a benign comment
6. Having Dean Walsh, Dean Wild, Nicole Gore, Chair Darrell Hudson all ignore reports of Professor Adrienne Davis's behavior against me
7. **Dean Walsh deeming me a threat to the WUSTL community, unable to attend class or any university function, or even step on campus for SIX MONTHS WITHOUT CAUSE even though I was eventually exonerated**
8. Having Alex Templeton, one of Dean Walsh's witnesses threaten me verbally with physical harm on multiple occasions, **including AFTER the conclusion of the student conduct board hearing**
9. Having Dean Walsh tell me that there is nothing she can do about Alex Templeton's threatening behavior towards me
10. Having Cara Hunt tell Alex Templeton that it was ok for Alex to bring a gun to an OVERNIGHT university retreat and telling me initially that I must attend as a member of the BLSA Board (fortunately the retreat was later made not mandatory)
11. Having Dean Walsh drop Alex Templeton as a witness one hour before the first student conduct hearing so that I could not cross examine her before the hearing board and show how Alex threatened me

Tell me, why am I paying an extra $22,000 when I am not even on Wash U's campus this semester? When the reason why I am not on Wash U's campus, is because you, Dean Walsh, have tried incessantly (along with these excessive tuition charges) to harm me and ruin my chance at a legal career?

If the offer to study at another school for my 3L year and only pay the difference was only offered when I was not exonerated yet, it should certainly be available to me now that I have been found not guilty by the Student Conduct Board. I am trying very hard to move on with my

life. I do not even want to come to St. Louis for my graduation. You all hate me, and I am genuinely fearful of you.

So why do you continue to harass me with these excessive tuition charges?

Please advise.

Allison

--

Allison S. Brown | she/her/hers
Ford School of Public Policy, University of Michigan
Vice President, Black Graduate Students Association
J.D. Candidate, Class of 2024
Washington University in St. Louis School of Law
allison.brown@wustl.edu  | albsure@umich.edu
https://www.linkedin.com/in/allisonsbrown/

## Exhibit K – Correspondence from Plaintiff to Defendants re: Race and/or Sex Discrimination at GULC

---

**From:** Walsh, Elizabeth <ewalsh@wustl.edu>
**Date:** Friday, September 1, 2023 at 11:46 AM
**To:** Brown, Allison <allison.brown@wustl.edu>
**Subject:** Following Up

Dear Allison,

I am writing to respond to your August 30, 2023, email.

On multiple occasions over the course of the last month Carrie Burns has explained the Law School's financial aid policy with respect to visiting students to you. Carrie also provided you with a link to that policy on the Law School's Intranet. It is not within Carrie's discretion to depart from that policy. Consequently, I would ask that you direct any further communications to me.

As a visiting student, you are responsible for the difference between the amount you have paid to WashU and the amount due your host university – in this instance, Georgetown. Once WashU has received the full amount due Georgetown – whether by direct payments from you or student loan funding – it will issue payment to Georgetown.

I have reviewed your WashU billing statement and it accurately reflects the amount still outstanding for the Fall 2023 semester. Consequently, no adjustment is needed or appropriate (assuming you intend to remain on WashU's insurance plan).

Please note that Nicole Gore's January 20, 2023, offer letter did not depart from the Law School's financial aid policy. To the extent you wish to argue otherwise, I would remind you that you did not accept that offer.

Best,

https://mail.google.com/mail/u/1/?ik=7b481111d8&view=pt&search=all&permthid=thread-f:1869356946129230045&simpl=msg-f:1869356946129230045          3/4

---

6/29/26, 3:53 PM                                          Georgetown University Mail - Fw: Following Up

Elizabeth



**Elizabeth Walsh** | She/Her
Associate Dean for Student Life & Academic Services
**Washington University School of Law**
Direct: 314.935.5861 / Office: 314.935.4610
Meet with Me in Person or Meet with Me Virtually

---

6/29/26, 3:53 PM                                          Georgetown University Mail - Fw: Following Up

Elizabeth



**Elizabeth Walsh** | She/Her
Associate Dean for Student Life & Academic Services
**Washington University School of Law**
Direct: 314.935.5861 / Office: 314.935.4610
Meet with Me in Person or Meet with Me Virtually

https://mail.google.com/mail/u/1/?ik=7b481111d8&view=pt&search=all&permthid=thread-f:1869356946129230045&simpl=msg-f:1869356946129230045          4/4

## EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh



Allison Brown <asb151@georgetown.edu>

### Fw: In defence of 'Uncle Tom' and 'coconut' – Media Diversified
1 message

**Patricia Brown** <brownandrussell@verizon.net>                    Mon, Jun 29, 2026 at 2:19 PM
To: Allison Brown <albsure@umich.edu>, Allison Brown <asb151@georgetown.edu>

----- Forwarded Message -----
**From:** Patricia Brown <brownandrussell@verizon.net>
**To:** Allie <albsure@umich.edu>
**Sent:** Saturday, November 18, 2023 at 01:15:07 AM EST
**Subject:** Fw: Fwd: In defence of 'Uncle Tom' and 'coconut' – Media Diversified

Sent from AOL on Android

----- Forwarded Message -----
**From:** "Patricia Brown" <brownandrussell@verizon.net>
**To:** "ngore@wustl.edu" <ngore@wustl.edu>, "d.hudson@wustl.edu" <d.hudson@wustl.edu>
**Cc:** "lora.e.clark@wustl.edu" <lora.e.clark@wustl.edu>, "dwendler@wustl.edu" <dwendler@wustl.edu>, "allison.brown@wustl.edu" <allison.brown@wustl.edu>, "ewalsh@wustl.edu" <ewalsh@wustl.edu>, "rwild@wustl.edu" <rwild@wustl.edu>
**Sent:** Tue, Dec 13, 2022 at 12:16 PM
**Subject:** Fwd: In defence of 'Uncle Tom' and 'coconut' – Media Diversified
Dear Hearing Board,

This is the second email I sent.

The November 4 date is correct.

I sent these three emails to Rob Wild on November 8 and to Elizabeth Walsh on November 11.  Still, Dean Walsh has had these emails for over a month.

Respectfully submitted,

Patricia Brown

-----Original Message-----
From: Patricia Brown <brownandrussell@verizon.net>
To: ewalsh@wustl.edu <ewalsh@wustl.edu>

123

## EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh

Sent: Fri, Nov 11, 2022 9:24 am
Subject: Fwd: In defence of 'Uncle Tom' and 'coconut' – Media Diversified


-----Original Message-----
From: Patricia Brown <brownandrussell@verizon.net>
To: rob.wild@wustl.edu <rob.wild@wustl.edu>
Sent: Tue, Nov 8, 2022 8:31 am
Subject: In defence of 'Uncle Tom' and 'coconut' – Media Diversified

https://mediadiversified.org/2018/10/11/in-defence-of-uncle-tom/

This article explores the use of the word "coon" and may be helpful to you on seeing the relevance of the word in a Race and American Law class.

Respectfully,


Patricia Russell Brown
Sent from the all new AOL app for Android

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

Dear Mr. Wild,

I attach two statements from Allie's classmates that support my letter. That is, this is a case of differing ideologies, not the case of a student's inability to raise her hand and being disruptive.

Furthermore, Professor Davis' feigning that she does not understand Allison's statements and construing that Allie is calling her a white supremacist and contacting you to get Allie suspended is "cooning" behavior. While there may be some students in the classroom that are unable to understand Allison's point (i.e. intellectually challenged or dumb), I do not believe that Professor Davis could not understand Allie's point. I believe that Professor Davis knew exactly what Allie was saying, and it disrupted her ideologies so she lashed out and got Allie suspended.

Again, since Allie's ideology is so upsetting to Professor Davis, Allie has agreed to drop

the Race in American Law class and stay silent in her Trust & Estates class. It is unfortunate that WUSTL is such an intolerant institution.

Sincerely,

P.S. A friend mentioned Samuel Jackson's performance in Django Unchained as another example of "cooning" you may want to consider.

**2 attachments**

📄 DeLong, Nico - Attestation in Support of Brown, Allison.docx
15K

📄 Shelby Rees, On Behalf of Allison Brown.docx
20K

**Patricia Brown** <brownandrussell@verizon.net>                Mon, Jun 29, 2026 at 2:25 PM
To: Allison Brown <asb151@georgetown.edu>, Allison Brown <albsure@umich.edu>

[Quoted text hidden]

**2 attachments**

📄 DeLong, Nico - Attestation in Support of Brown, Allison.docx
15K

📄 Shelby Rees, On Behalf of Allison Brown.docx
20K

125

## EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh

6/29/26, 2:25 PM                    Georgetown University Mail - Fw: Allison Brown - Letter in Support from her mother, Patricia Russell Brown Harvard Law School '92 Attached



Allison Brown <asb151@georgetown.edu>

### Fw: Allison Brown - Letter in Support from her mother, Patricia Russell Brown Harvard Law School '92 Attached

Patricia Brown <brownandrussell@verizon.net>                                    Mon, Jun 29, 2026 at 2:13 PM
To: "asb151@georgetown.edu" <asb151@georgetown.edu>

----- Forwarded Message -----
**From:** Patricia Brown <brownandrussell@verizon.net>
**To:** albsure@umich.edu <albsure@umich.edu>
**Sent:** Saturday, November 18, 2023 at 01:14:21 AM EST
**Subject:** Fw: Fwd: Allison Brown - Letter in Support from her mother, Patricia Russell Brown Harvard Law School '92 Attached

Sent from AOL on Android

----- Forwarded Message -----
**From:** "Patricia Brown" <brownandrussell@verizon.net>
**To:** "ngore@wustl.edu" <ngore@wustl.edu>, "d.hudson@wustl.edu" <d.hudson@wustl.edu>, "lora.e.clark@wustl.edu" <lora.e.clark@wustl.edu>, "dwendler@wustl.edu" <dwendler@wustl.edu>
**Sent:** Tue, Dec 13, 2022 at 12:12 PM
**Subject:** Fwd: Allison Brown - Letter in Support from her mother, Patricia Russell Brown Harvard Law School '92 Attached
Dear Hearing Board,

Attached is one of the three emails I sent to both Rob Wild and Elizabeth Walsh regarding Allison Brown's temporary suspension. These three mails are not character evidence but are relevant to the facts as to what was occurring in Professor Davis' classroom throughout the semester up to the when Allison was temporarily suspended. Thus, I believe these should be admissible.

Please note Allison Brown was temporarily suspended and Professor Davis cancelled classes for a week, presumably due to Allison's behavior. My emails show that I anticipated that Professor Davis would frame Allison and get her suspended, that I told Allison not to speak in her class, and that when Allison did speak in her class, Professor Davis feigned objection and got Allison suspended.

I do not believe that Dean Walsh would be prejudiced by the admission of my emails as she received them on November 4, 2022, over a month ago. I also sent these emails to Rob Wild on November 1, 2022. I have not heard anything from either one of them.

I am disappointed that Dean Walsh would characterize these emails as character evidence to have them excluded from this hearing. These emails have very little to do with Allison's character, and have everything to do with Professor Davis' bizarre behavior over the semester.

I will forward the other emails to you shortly.

https://mail.google.com/mail/u/1/?ik=7b481111d8&view=pt&search=all&permmsgid=msg-f:1869356045021460225&simpl=msg-f:1869356045021460225                    1/2

6/29/26, 2:25 PM                    Georgetown University Mail - Fw: Allison Brown - Letter in Support from her mother, Patricia Russell Brown Harvard Law School '92 Attached

Respectfully submitted,

Patricia Brown

-----Original Message-----
From: Patricia Brown <brownandrussell@verizon.net>
To: ewalsh@wustl.edu <ewalsh@wustl.edu>
Sent: Fri, Nov 11, 2022 9:24 am
Subject: Fwd: Allison Brown - Letter in Support from her mother, Patricia Russell Brown Harvard Law School '92 Attached

126

## EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh

Respectfully submitted,

Patricia Brown

-----Original Message-----
From: Patricia Brown <brownandrussell@verizon.net>
To: ewalsh@wustl.edu <ewalsh@wustl.edu>
Sent: Fri, Nov 11, 2022 9:24 am
Subject: Fwd: Allison Brown - Letter in Support from her mother, Patricia Russell Brown Harvard Law School '92 Attached

-----Original Message-----
From: Patricia Brown <brownandrussell@verizon.net>
To: rob.wild@wustl.edu <rob.wild@wustl.edu>
Sent: Mon, Nov 7, 2022 6:34 pm
Subject: Allison Brown - Letter in Support from her mother, Patricia Russell Brown Harvard Law School '92 Attached

Please keep these quotes in mind as you read my attached letter.  Respectfully, Patricia Russell Brown (Allie's mom)

The highest result of education is tolerance.

Helen Keller

Tolerance only for those who agree with you is no tolerance at all.

Ray Davis

📄 **Wild Letter WUSTL.pdf**
396K

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

rob. wild @ wustl. edu

11/7/2022

Dear Mr. Wild,

I write this letter in support of my daughter, Allison Sydney Brown.

My daughter is a student in 2 of Professor Davis' classes and does research under Professor Davis. She sent me a copy of an email that Professor Davis sent to her on October 19, 2022 stating that she had not raised her hand in class before speaking. Allison was bewildered by the email because it was not true. That is, Allison did not speak without raising her hand. Also, they had not had a previous conversation about raising her hand before speaking in class. They had a conversation about Allison's use of the word "coon" in class. Professor Davis had asked Allison to not use the word. This raised a "red flag" for me as my experience with black people who object to the use of the word "coon" are generally coons. That is, they are black people who denigrate or disenfranchise other black people for their own advantage. You may or may not know that there is historical precedent for this phenomenon. Overseers who whipped other slaves were sometimes black. Today, some would view Supreme Court Justice Clarence Thomas as a coon, as his positions are often against black people and disenfranchised people.

128

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

At any rate, I told her to not speak in class any more because Professor Davis was setting her up to destroy her.

I saw Allison's response and I "let it go" because I thought everything would be okay so long as Allison never spoke in class for the rest of the semester.

Unfortunately, after 3 classes of not speaking, Allison did speak in class, against my advice. Allison explained to me that during her silence, other classmates and Professor Davis encouraged her to speak, with comments like, "Counselor Brown would say" ". Allison said that when she spoke, Professor Davis said her comment was brilliant, which encouraged her to speak more. Allison said she raised her hand to speak in support of a fellow classmate. Professor Davis' response was that she was herself a white supremacist. Allison did not call Professor Davis a white supremacist. Professor Davis called herself a white supremacist and stormed out the classroom.

I reminded Allison that she should not have spoken in Professor Davis' class, as Professor Davis did not agree with Allison's ideology. Allison told me she had discussed the situation with her Federal Courts professor, who thought that it was ridiculous that a Professor could not handle a student having independent thought. In response, Allison wrote an email

129

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

to Professor Davis, telling her that she would never speak in class again if Professor Davis thought that was best for the class.

In retrospect, I should have realized that it was only a matter of time that Professor Davis would get Allison to speak and have ammunition to suspend her from not only her class, but the entire university. But now we are where we are, and I ask

1. Is Washington University in St. Louis an institution of higher learning, where a diversity of viewpoints are respected or at least tolerated?

2. Is it problematic to use the term "coon" in a Race and American Law class?

3. Is it problematic to use the term "white supremacy" in a Race and American Law class? Is it problematic to discuss "white supremacy" in a Race and American Law class?

4. Should Allison have to give up her 1st Amendment rights to free speech to attend class?

5. Should Allison have to give up her 1st Amendment right to free speech to participate in extra curriculars?

6. Should Allison be banned from attending all classes because Professor Davis disagrees with Allison's ideology?

130

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

This letter is already more than 3 pages, much longer than I anticipated. But if you are to get anything from this, please understand that this is not about a student talking out of turn in class and being disruptive. My daughter is an Angell Scholar graduate from the University of Michigan Ford School of Public Policy and has completed a year at WUSTL. Do you think she really has a problem with asking to be called on before speaking in class? In fact, Professor Davis asked Allison in one of the classes that she did not speak in if she had raised her hand by email. Who does that? Only a sick twisted Professor who cannot tolerate independent thought. What black professor called herself a white supremacist and Bull Connor? A Professor who has a student that does not raise her hand before speaking or a student that challenges that professor's ideology?

I respectfully request that you allow Allison to withdraw from the Race and American Law class and participate in all other activities at WUSTL. Although Allison should be able to express her thoughts in a Race and American Law class, it appears that WUSTL is not capable of providing such, and the best solution would be for her to drop the class.

131

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

This has been successful in the past. Allison recently withdrew from the Board of the Black Law Students Association partially due to the allowance of weapons at a Board retreat, which made Allison feel uncomfortable. Since her resignation, she has had no problems with the Black Law Students Association.

She presently serves on the Black Graduate Students Board, and has not had any issues there.

She also has classes with other professors and has had no issues in those classes. In fact, she also takes a Trusts and Estates class with Professor Davis, and has not spoken in that class since September. She will agree to not speak in that class for the rest of the semester as a condition for staying in that class.

Again, please recognize this as a conflict in ideology, and not a case of a student incapable of raising her hand. Professor Davis needs to be able to tolerate viewpoints different from her own

Respectfully,

Patricia Russell Brown
Harvard Law School Class of 1992
Alma mater of Kentanji Brown Jackson, not Clarence Thomas

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

11/7/22, 4:08 PM                                                    Class today

From: allison.brown@wustl.edu,
  To: brownandrussell@verizon.net,
Subject: Class today
  Date: Wed, Nov 2, 2022 4:22 pm

Hi Professor Davis,

I wanted to follow up to see if you were okay after class today. I also wanted to tell you that I did not intend to disrespect you, insinuate that you are a white supremacist, or anything else that could be construed negatively towards your person.

I greatly respect and admire you as my professor. Further, I do not want things to be awkward or polarizing in class. Lastly, I can be okay with never being called on again in class, if you believe that would benefit the group.

Again, I did not intend for any of my comments to be incendiary or hurtful. I wish nothing but the best for you, and hope that we can move forward as a class.

Thanks and best,
Allison

*Does this look like an issue of talking out of turn, or ideology?*

*Allison agrees to not speak for rest of semester, and Professor Davis comes running to you.*

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

11/7/22, 3:41 PM

Fwd: were you going to say something in Dead Law?

From: allison.brown@wustl.edu,
To: brownandrussell@verizon.net,
Subject: Fwd: were you going to say something in Dead Law?
Date: Mon, Nov 7, 2022 3:26 pm

Get Outlook for iOS

From: Davis, Adrienne <adriennedavis@wustl.edu>
Sent: Tuesday, October 25, 2022 12:56:09 PM
To: Brown, Allison <allison.brown@wustl.edu>
Subject: were you going to say something in Dead Law?

I thought I saw your hand and then I didn't. Best, ADD

Adrienne | Davis
**William M. Van Cleve Professor** | School of Law
**Professor of Organizational Behavior & Leadership** | Olin Business School
**Washington University in St. Louis**
1 Brookings Drive, St. Louis | Campus Box 1233 | St. Louis, MO 63130
Tel +1.314.935.8583 | Email adriennedavis@wustl.edu
Publications https://bit.ly/31kMOf4
Twitter @Adrienne_WU | she.her.hers
*Please do not feel obligated to reply outside of regular business hours or on weekends.*

*[Handwritten note:]* Who does this? Class of 90 law students She hasn't spoken in this class since September, and does not intend on speaking in this class, the rest of the semester. Professor Davis cannot handle it!

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

11/7/22, 3:45 PM                                                                Fwd: Class today

From: allison.brown@wustl.edu,
To: brownandrussell@verizon.net,
Subject: Fwd: Class today
Date: Thu, Oct 20, 2022 10:36 am

Get Outlook for iOS

From: Davis, Adrienne <adriennedavis@wustl.edu>
Sent: Wednesday, October 19, 2022 10:28:01 PM
To: Brown, Allison <allison.brown@wustl.edu>
Subject: Re: Class today

Okay. I know you are passionate about these topics, and you have a lot of knowledge and insights, so I appreciate your working with me to create an environment in which all of your classmates can participate and engage. I will see you on Friday! PS Also, please remind me to share with you some additional materials I have on slavery that might be useful in identifying cases for the one hour curriculum. Have a good evening. Best, ADD

Sent from my iPhone

On Oct 19, 2022, at 10:09 PM, Brown, Allison <allison.brown@wustl.edu> wrote:

Dear Professor Davis,

I am sure. Again, my apologies.

Thanks and best,
Allison

--
Allison S. Brown | she/her/hers
Ford School of Public Policy, University of Michigan
Vice President, Black Graduate Students Association
J.D. Candidate, Class of 2024
Washington University in St. Louis School of Law
allison.brown@wustl.edu | albsure@umich.edu
https://www.linkedin.com/in/allisonsbrown/

From: Davis, Adrienne <adriennedavis@wustl.edu>
Date: Wednesday, October 19, 2022 at 9:59 PM
To: Brown, Allison <allison.brown@wustl.edu>
Subject: Re: Class today

*Even Professor Davis was surprised ???. Are you sure???.*

Are you sure? Please let me know if you want to talk again before class on Friday. I'm in and out tomorrow.
Best, ADD

135

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

11/7/22, 3:45 PM                                          Fwd: Class today

Sent from my iPhone

On Oct 19, 2022, at 8:09 PM, Brown, Allison <allison.brown@wustl.edu> wrote:

I understand. My apologies. It won't happen again.

Thanks and best,
Allison

--

Allison S. Brown | she/her/hers
Ford School of Public Policy, University of Michigan
Vice President, Black Graduate Students Association
J.D. Candidate, Class of 2024
Washington University in St. Louis School of Law
allison.brown@wustl.edu | albsure@umich.edu
https://www.linkedin.com/in/allisonsbrown/

*[handwritten note:] I thought this was okay because we agreed that Allison would not speak in class anymore. In retrospect, I should have told her that she should have said our discussic was not about raising hands, but my use of the word "coon" in class.*

From: Davis, Adrienne <adriennedavis@wustl.edu>
Date: Wednesday, October 19, 2022 at 2:11 PM
To: Brown, Allison <allison.brown@wustl.edu>
Subject: Class today

Allison, I was very surprised today. I thought you had agreed that you would raise your hand before speaking in class and also that you understood that, in order to get through my notes and hear from as many students in possible in our large clss, I may not be able to call on you each time you want to speak. Did I misunderstand our conversation? Best, ADD

**Adrienne | Davis**
**William M. Van Cleve Professor** | School of Law
**Professor of Organizational Behavior & Leadership** | Olin Business School
**Washington University in St. Louis**
1 Brookings Drive, St. Louis | Campus Box 1233 | St. Louis, MO 63130
Tel +1.314.935.8583 | Email adriennedavis@wustl.edu
Publications https://bit.ly/31kMOf4
Twitter @Adrienne_WU | she.her.hers
*Please do not feel obligated to reply outside of regular business hours or on weekends.*

*[handwritten note:] This conversati was not about raising hands, this was about the use of the word "coon" in class.*

136

**EXHIBIT L – Letters and Correspondence from Plaintiff's Mother to Defendants Wild and Walsh**

11/7/22, 3:44 PM                                                    FW: Class today

From: allison.brown@wustl.edu,
To: brownandrussell@verizon.net,
Subject: FW: Class today
Date: Wed, Oct 19, 2022 11:10 pm

--

Allison S. Brown | she/her/hers
Ford School of Public Policy, University of Michigan
Vice President, Black Graduate Students Association
J.D. Candidate, Class of 2024
Washington University in St. Louis School of Law
allison.brown@wustl.edu | albsure@umich.edu
https://www.linkedin.com/in/allisonsbrown/

From: Brown, Allison <allison.brown@wustl.edu>
Date: Wednesday, October 19, 2022 at 10:09 PM
To: Davis, Adrienne <adriennedavis@wustl.edu>
Subject: Re: Class today

Dear Professor Davis,

I am sure. Again, my apologies.

Thanks and best,
Allison

--

Allison S. Brown | she/her/hers
Ford School of Public Policy, University of Michigan
Vice President, Black Graduate Students Association
J.D. Candidate, Class of 2024
Washington University in St. Louis School of Law
allison.brown@wustl.edu | albsure@umich.edu
https://www.linkedin.com/in/allisonsbrown/

From: Davis, Adrienne <adriennedavis@wustl.edu>
Date: Wednesday, October 19, 2022 at 9:59 PM
To: Brown, Allison <allison.brown@wustl.edu>
Subject: Re: Class today

Are you sure? Please let me know if you want to talk again before class on Friday. I'm in and out tomorrow. Best, ADD

Sent from my iPhone

https://mail.aol.com/webmail-std/en-us/PrintMessage                              1/2

137

**<u>Exhibit M - Scholarship Letters and Issues from Defendant Carrie Burns to Plaintiff</u>**

8/15/23, 11:56 PM                                          University of Michigan Mail - WashULaw 2023-24 Financial Aid

 UNIVERSITY OF
MICHIGAN                                                   Allison Brown <albsure@umich.edu>

---

**WashULaw 2023-24 Financial Aid**
4 messages

**finance@wulaw.wustl.edu** <finance@wulaw.wustl.edu>                   Thu, Jul 27, 2023 at 3:22 PM
To: albsure@umich.edu

 Washington University in St.Louis

SCHOOL OF LAW

Financial Aid

To:     Allison S. Brown

        2000 Flourmill Court

        Crownsville, MD 21032

From:   Carrie Burns, Director of Financial Aid and Student Life, School of Law

        *cjburns@wustl.edu* | *(314) 935-4605*

Date:   July 27, 2023

The Financial Aid Committee reviewed your application for assistance and makes the following aid offer for
the entire 2023-2024 academic year.  Your offer is based on full-time student status.

| Source | Fall | Spring | Total |
|---|---|---|---|
| Washington University Law Scholarship | $18,500 | $18,500 | $37,000 |
| Federal Direct Unsubsidized Loan | $10,250 | $10,250 | $20,500 |
| | ------- | ------- | ------- |
| Total | $28,750 | $28,750 | $57,500 |

**Exhibit M- Scholarship Letters and Issues from Defendant Carrie Burns to Plaintiff**

8/15/23, 11:56 PM                    University of Michigan Mail - WashULaw 2023-24 Financial Aid

Tuition and [mailto:albsure@umich.edu] ,744.

**To accept your Financial Aid offer, please complete the following steps:**

| |
|---|
| 1) Visit netpartner.wustl.edu. Use your WUSTL Key ID and Password to log in. Select 'Accept Offer' in the top left side menu. |
| 2) Provide all required documents listed in 'Documents & Messages'. |

If your aid offer includes the Federal Direct Graduate PLUS loan you will need to visit Federal Student Aid and complete the Graduate PLUS application.

If you have questions about your aid offer, please contact me to schedule a time to discuss the details, including whether a reduction or increase of your loan amount is most appropriate, as well as repayment strategies and next steps. Each student faces unique obligations and factors that impact the appropriate loan amount. I look forward to assisting you throughout this process.

**Allison Brown** <albsure@umich.edu>                    Thu, Jul 27, 2023 at 3:23 PM
To: brownandrussell <Brownandrussell@verizon.net>

[Quoted text hidden]
--
Allison S. Brown
Civil Rights and Immigration Policy, Ford School of Public Policy
University of Michigan, Ann Arbor
J.D. Candidate, Class of 2024
Washington University in St. Louis School of Law
allison.brown@wustl.edu | albsure@umich.edu
https://www.linkedin.com/in/allisonsbrown/

**Allison Brown** <albsure@umich.edu>                    Thu, Jul 27, 2023 at 4:59 PM
To: brownandrussell <Brownandrussell@verizon.net>

Get Outlook for iOS

**From:** finance@wulaw.wustl.edu <finance@wulaw.wustl.edu>
**Sent:** Thursday, July 27, 2023 9:22:47 AM
**To:** albsure@umich.edu <albsure@umich.edu>
**Subject:** WashULaw 2023-24 Financial Aid

https://mail.google.com/mail/u/0/?ik=6b8d8864bc&view=pt&search=all&permthid=thread-f:1772580171413544272&simpl=msg-f:1772580171413544272&simpl=...    2/3

139

**Exhibit M - Scholarship Letters and Issues from Defendant Carrie Burns to Plaintiff**

**From:** Brown, Allison <allison.brown@wustl.edu>
**Date:** Tuesday, January 16, 2024 at 12:36 PM
**To:** Burns, Carrie <cjburns@wustl.edu>, LAW Financial Aid Office <finance@wulaw.wustl.edu>, CFU
Student Financial Services <Financial@wustl.edu>, LAW Accounting <Law-
accounting@wulaw.wustl.edu>
**Cc:** customerservice@studentaid.gov <customerservice@studentaid.gov>
**Subject:** Spring 2024 Tuition Inquiry - Allison Brown

Dear Financial Aid Office,

I received a Spring 2024 tuition bill and it does not reflect my scholarship and my Spring 2024 loan from FAFSA.

Please send me an updated bill with both of these reflected.

Sincerely,
Allison

Allison S. Brown | she/her/hers
Ford School of Public Policy, University of Michigan
Visiting Student, Georgetown University Law Center
J.D. Candidate, Washington University in St. Louis School of Law
allison.brown@wustl.edu | https://www.linkedin.com/in/allisonsbrown/

140

**Exhibit M - Scholarship Letters and Issues from Defendant Carrie Burns to Plaintiff**

 WashU

Brown, Allison S (503456)
2000 Flourmill Court
Crownsville, MD 21032
United States of America

Remit payment to:
Washington University
P.O. Box 7412009
Chicago, IL 60674-2009

| | | Fall 2025 Date Range | (08/25/2025-12/17/2025) |
|---|---|---|---|
| Student ID | 503456 | | |
| Academic Period | Fall 2025 | Total Due for: Fall 2025 | $ 40,294.00 |
| Academic Level | | **Due Now for All Academic Periods** | **$ 40,294.00** |

*For details of amounts due for other academic periods, run the statement for that academic period.*

## Charges

| Date | Charge | Due Date | Amount |
|---|---|---|---|
| Aug 11, 2025 | Converted Outstanding Balance | Sep 11, 2025 | $ 40,294.00 |

## Courses

| Course | Credit Hours | Credit Hour Type |
|---|---|---|
| | | |

Make check payable to Washington University.
Visit https://financialservices.wustl.edu/student-accounts for other payment options and questions.
Student.Accounting@wustl.edu or call 314-935-5274

Contacts:
Grad Arts & Sciences: GraduateArtSci@wustl.edu
Continuing and Professional Studies: capsfinancialaid@wustl.edu
DBBS: DBBS-StudentFinance@wustl.edu
Medical School: wusmregistrar@wustl.edu
Student Financial Services: Financial@wustl.edu

Jun 26, 2026 2:00 PM

141

**Exhibit M - Scholarship Letters and Issues from Defendant Carrie Burns to Plaintiff**



**Washington University in St.Louis** WebSTAC        Allison Brown  Logout

Academics Billing & Bear Bucks Housing Courses & Registration Student Information

Allison Brown (ID: 503456)

Current Balance: $ 46582.22

This information is correct as of 1/14/2024 12:39:06 PM

### Activity for Spring 2024

| | Sem | FY | Div | TCode | Description | Amount | Post Date | Tran Date | Bill Date |
|---|---|---|---|---|---|---|---|---|---|
| ± | | | | | Student Bar Association Fee | 60.00 | | | |
| ± | | | | | Student Health and Wellness Fee | 308.00 | | | |
| ± | | | | | Tuition | 33504.00 | | | |
| | | | | | Spring 2024 Semester Total | 33872.00 | | | |

### Activity for Fall 2023

| | Sem | FY | Div | TCode | Description | Amount | Post Date | Tran Date | Bill Date |
|---|---|---|---|---|---|---|---|---|---|
| ± | | | | | Anticipated Federal Direct Loan, Unsubsidized (Stafford) | 0.00 | | | |
| ± | | | | | Anticipated WU Scholarships and Grants | 0.00 | | | |
| ± | | | | | Federal Direct Loan, Unsubsidized (Stafford) | (10142.00) | | | |
| ± | | | | | Student Bar Association Fee | 0.00 | | | |
| ± | | | | | Student Health and Wellness Fee | 0.00 | | | |
| ± | | | | | Student Health Insurance | 2500.00 | | | |
| ± | | | | | Tuition | 37975.00 | | | |
| ± | | | | | WU Scholarships and Grants | 0.00 | | | |
| | FL2023 | 2024 | LW | CASH | Cash Payment | (17455.02) | 7/31/2023 | 7/31/2023 | 7/31/2023 |
| | FL2023 | 2024 | LW | LFEE | Late Fee | 249.22 | 12/27/2023 | 12/27/2023 | 12/28/2023 |
| | | | | | Fall 2023 Semester Total | 13127.20 | | | |

### Activity for Spring 2023

| | Sem | FY | Div | TCode | Description | Amount | Post Date | Tran Date | Bill Date |
|---|---|---|---|---|---|---|---|---|---|
| ± | | | | | Anticipated WU Scholarships and Grants | 0.00 | | | |
| ± | | | | | Parking Permit | (416.98) | | | |
| ± | | | | | Student Bar Association Fee | 60.00 | | | |
| ± | | | | | Student Health and Wellness Fee | 288.00 | | | |
| ± | | | | | Student Health Insurance | 1296.00 | | | |
| ± | | | | | Tuition | 32244.00 | | | |
| ± | | | | | WU Scholarships and Grants | (18500.00) | | | |
| | SP2023 | 2023 | LW | CASH | Cash Payment | (15388.00) | 1/10/2023 | 1/10/2023 | 1/31/2023 |
| | | | | | Spring 2023 Semester Total | (416.98) | | | |

**Exhibit N – Plaintiff Featured on Defendant WashU Website**

Washington University in St. Louis

# Center for the Study of Race, Ethnicity & Equity



**Allison Brown**

Former, Law School Student

allison.brown@wustl.edu

I plan to work with Professor Adrienne Davis to create a critical race theory oriented case-database that will be presented to the faculty of the law school in order to persuade other professors to incorporate various cases with racial prudential value into their 1st year course curricula. Without this database, the 1st year curriculum will likely remain largely colorblind, and continue to foster ignorance about the ethnic and racial backdrop that undergirds all "Black-letter law."

Center for the Study of Race, Ethnicity & Equity

302 Seigle Hall
MSC 1221-228-302

**Exhibit O – Right to Sue EEOC Letter**



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**St. Louis District Office**
1222 Spruce St, Rm 8 100
St Louis, MO 63103
(314) 798-1960
Website: www.eeoc.gov

### DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: **6/17/25**

**To:** Ms. Allison S. Brown
6405 Chew Road
UPPER MARLBORO, MD 20772

Charge No: 560-2025-01186

EEOC Representative and email:    JILL BERKLAND
EEO Investigator
Jill.Berkland@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 560-2025-01186.

On behalf of the Commission,

**Alfred C. Kirk Jr.** Jr.
p.p.
Digitally signed by Alfred C. Kirk Jr.
Date: 2025.06.17 15:58:45 -05'00'

David Davis
District Director

144

**Exhibit P  - Police Patrol Zones**



## **EXHIBIT Q – Consortium Agreement**

**Consortium Agreement between Washington University and**

Georgetown Law _____, the Host School

In the matter of financial aid for: Allison Brown _____ SSN _____

This student is a degree candidate in the School of Law at Washington University and has permission to attend the Host School named above for the Fall 2023 Spring 2024 _____ semester(s) as a visiting student. Washington University will register this individual under visiting student status, will assign credit for the courses taken at the Host School on the same basis as it would for course work taken at Washington University and will provide enrollment verification based upon said course work as approved by the School of Law.

With regard to financial aid, the institutional representatives signing below hereby agree to the following:

Washington University will determine financial aid eligibility and disburse all sources of financial aid for this student during this period of enrollment, according to institutional policy.

The Host School will award no financial assistance to this student but will provide Washington University with the following information.

Beginning and ending dates of each semester the student is to be enrolled at the Host School:

Fall 23 _____ semester, classes begin on 8/28/23 _____ and end on 12/15/23 _____
Spring 24 ____ semester, classes begin on 1/8/24 _____ and end on 5/14/24 _____

Cost of attendance for the total period of enrollment, as indicated above.

Tuition and fees          $ 75,950
Room and board            $ 24,220
Books and supplies        $ 1,400
Other Personal & Travel   $ 6,630 (Total $108,200 + actual loan fees. 50% each semester)

Requested payment dates for direct charges:

Fall 23 _____ semester, payment requested by 8/28/23 _____
Spring 24 _____ semester, payment requested by 1/8/24 _____

Address where tuition payment should be sent:
Georgetown Law Financial Aid // 600 New Jersey Ave NW Room 335 // Washington, DC 20001 _____

Confirmation of enrollment upon request and immediate notification of any change in enrollment status. Washington University will reimburse the Host School for the educational services it provides to the student (i.e., tuition and fees); Washington University will disburse to the student financial aid available for living expenses.

On behalf of Washington University: Name _CARMG BURNS_ Date 8/15/23 Title: DIRECTOR OF FIN AID

On behalf of the Host School: Name Russell Augustine _____ Date 8/11/23 Title: Financial Aid Counselor

146

**EXHIBIT R – WashU Policy in Violation of Section 1983**



# St. Louis resident sues WashU and Eureka police for use of 'wanteds' after 2024 protest

St. Louis Public Radio | By Lacretia Wimbley

Published Sept. 18, 2025 at 12:38 p.m. CDT

▶ LISTEN · 28:05

147

**EXHIBIT R – WashU Policy in Violation of Section 1983**



*ArchCity Defenders*

Kaitlyn Killgo, 36, of St. Louis is suing WashU and the Eureka Police Department, alleging that their use of "wanteds" is unconstitutional.

https://www.stlpr.org/law-order/2025-09-17/st-louis-resident-sues-washu-police-wanteds                                        2/11

St. Louis resident Kaitlyn Killgo is suing a detective from the Washington University Police Department and an officer from the Eureka Police Department for detaining her on a "wanted" last year due to allegations that an officer's riot helmet was stolen during a protest in April 2024.

The case was filed by civil rights law firm ArchCity Defenders in federal court on Thursday. The suit argues that police use of "wanteds" against Killgo, 36, has caused her fear and anxiety — particularly since police stated they will not remove her from the wanteds system after she refused to answer questions.

Washington University and St. Louis County are also listed as defendants as Killgo seeks punitive damages in the lawsuit.

The wanteds system enables any officer in Missouri to arrest and detain persons of interest wanted for questioning, even if the arresting officer has no knowledge about the alleged underlying offense. Police can find the names of individuals wanted for questioning in a centralized system for law enforcement called the Regional Justice Information System.

148

**EXHIBIT R – WashU Policy in Violation of Section 1983**

Police can arrest and detain those listed as "wanted" without going to a judge, providing probable cause or getting an arrest warrant.

But the use of wanteds by police has been challenged in court for nearly a decade — a lawsuit filed in 2016 by the Center for Constitutional Rights and ArchCity Defenders states that plaintiffs' Fourth Amendment rights were violated after they were targeted with a "wanted."

6/29/26, 5:05 AM    St. Louis resident sues WashU over warrantless arrest | STLPR

The Court of Appeals for the Eighth Circuit issued a ruling on that lawsuit in November 2022, writing that while St. Louis County's use of wanteds is "fraught with the risk of violating the Constitution," the policy itself is not unconstitutional.

Killgo said she hopes her lawsuit will bring about change.

"These wanteds have to go away," Killgo said in a statement. "It's immoral. It's illegal. But more importantly, it's inhumane. I feel like I've been kidnapped by the police. And kidnapping is illegal, but I have no way, other than this lawsuit, to get my rights back."

## The arrests

Killgo was arrested by the Washington University police in April 2024 while attending a divestment and anti-genocide protest on campus. She was detained at the St. Louis County jail and released later that night.

Four months later, in August, the lawsuit states, Killgo was participating in another protest outside the county jail. At that time, an unmarked black Suburban pulled up near Killgo, and two men inside the car shouted "Killgo!" and "We want our helmet back!"

The following month, during Labor Day weekend, Killgo was arrested and detained on a wanted by officer Torre Kuelker of the Eureka Police Department, who is listed as a defendant in the lawsuit. Killgo and a friend had taken a day trip to a nature reserve when they were pulled over.

Killgo was held at the Eureka Police Department for four hours and would not answer questions while seeking legal counsel. She ultimately retained ArchCity Defenders to investigate the circumstances of her arrest.

## Wanted or not?

**EXHIBIT R – WashU Policy in Violation of Section 1983**

## Wanted or not?

ArchCity Defenders attorney Maureen Hanlon and Killgo learned on Sept. 9, 2024, that a police riot helmet had been allegedly stolen during the April protest on WashU's campus after contacting WUPD detectives Jeffrey Barnhouse and Marc Wasem. Barnhouse is listed as a defendant in the lawsuit.

The wanted had been put out by WashU's private police department in April 2024 following the protest, the lawsuit states.

Hanlon told detectives that Killgo would not be adhering to their request for questioning and that Killgo had no knowledge of the riot helmet theft and was not involved.

Barnhouse's response was that if Killgo "wasn't going to come in [he] would put out the wanted again," the lawsuit states, and that Killgo was required to sign a document stating she was refusing to be questioned.

According to ArchCity Defenders, as of Thursday, it's still unclear if there is an active wanted out for Killgo's arrest since there is no publicly available way for her or any other citizen to know if a wanted has been issued.

ArchCity Defenders attorney Ebony McKeever said in a statement that the organization believes this is a violation of the Fourth Amendment.

"Wanteds are also distinct from warrants because they cannot be searched for in any public database," McKeever said. "This results in people being afraid they'll be arrested, detained, and questioned without probable cause — and there is no recourse."

Attorneys say efforts to obtain details about Killgo's arrest — as well as WUPD policies and procedures that authorized the arrest — have been denied through a Sunshine Request.

The lawsuit states that WashU's reason for the denial is that the university is not subject to the Sunshine Law since WUPD officers are private employees.

According to the lawsuit, WashU is the only private university in the state that has its own police department distinct from the police department of the county in which it is located.

The lawsuit states that Killgo has suffered emotional distress, fear and anxiety due to the threatened arrest and not knowing the status of the wanted.

"She has avoided going out to social events or other opportunities because of her fear of being arrested by law enforcement agencies," the lawsuit reads.

*Have a question or comment about this story? Email St. Louis Public Radio.*

150

**EXHIBIT R – WashU Policy in Violation of Section 1983**



 **Lacretia Wimbley**

Lacretia Wimbley is a general assignment reporter for St. Louis Public Radio.
See stories by Lacretia Wimbley

151