**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ALLISON BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-01143-CRC |
| | ) | |
| WASHINGTON UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. NO DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN THE DISTRICT OF COLUMBIA ..... 2

a. Plaintiff Cannot Establish Jurisdiction Under D.C.'s Long-Arm Statute. ..... 2

i. The Long-Arm Statute Requires a Claim-Specific and Defendant-Specific Nexus to the Forum. ..... 2

ii. Plaintiff Fails to Satisfy Any Provision of the Long-Arm Statute as to Any Defendant. ..... 3

iii. Plaintiff's Conspiracy Theory of Jurisdiction Fails on Every Element. ..... 6

b. D.C.'s Service-of-Process Statute Does Not Confer Jurisdiction Over WashU ..... 8

c. The Due Process Clause Independently Bars Both General and Specific Jurisdiction. ..... 10

i. WashU Is Not Subject to General Jurisdiction in the District. ..... 10

ii. No Defendant Is Subject to Specific Jurisdiction Because No Claim Arises from Forum Conduct. ..... 12

d. Plaintiff's Request for Jurisdictional Discovery Should Be Denied. ..... 14

II. VENUE IS IMPROPER IN THE DISTRICT OF COLUMBIA ..... 15

III. PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST ANY DEFENDANT ..... 16

a. Count I: Plaintiff's Title VII Claim Fails for Lack of Exhaustion and Standing. ..... 17

b. Count II: Plaintiff's Title VI Claim Fails for Lack of Factual Support. ..... 18

c. Count III: Plaintiff's Section 1981 Claim Fails for Lack of a Racial Nexus and an Impaired Contract. ..... 18

d. Count IV: Plaintiff's Fraud and Unjust Enrichment Claims Are Barred by the Educational Malpractice Doctrine.................................... 19

e. Count V: Plaintiff's IIED Claim Fails to Allege Outrageous Conduct Under Missouri Law. ................................................................... 20

f. Count VI: Plaintiff's Negligence Claim Fails Because Defendants Owed No Duty of Care. ................................................................ 21

g. Count VII: Plaintiff's Breach of Contract Claim Fails Because She Identifies No Contractual Promise.......................................................... 21

h. Count VIII: Plaintiff's Defamation Claim Fails for Lack of Specificity. ........................................................................................ 22

i. Count IX: Plaintiff's Section 1985 Conspiracy Claim Fails for Lack of an Agreement.......................................................................................... 22

j. Count X: Plaintiff's Title IX Claim Fails Because Individual Liability Is Unavailable and WashU Was Not Deliberately Indifferent. ........................................................................................ 23

k. Count XI: Plaintiff's Fifth and Fourteenth Amendment Claims Fail for Lack of State Action.............................................................. 23

l. Count XII: Plaintiff's Section 1983 Claim Fails for Lack of State Action........................................................................................ 24

m. Count XIII: Plaintiff's DCHRA Claim Fails Because the Statute Has No Extraterritorial Reach........................................................... 24

CONCLUSION.......................................................................................................... 25

## TABLE OF CASES

**Cases**

*Baptichon v. U.S. Department of Education*, 2023 WL 2561807 (D.D.C. Mar. 17, 2023).......... 11

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255 (2017)........................................................................................................ 13

*Brit UW, Ltd. v. Manhattan Beachwear, LLC*, 235 F. Supp. 3d 48 (D.D.C. 2017)...................... 14

**Brown v. Washington Univ.*, 2025 WL 2197145 (D. Md. Aug. 1, 2025)................................. 2, 9

*Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227 (Mo. banc 2010)........................... 14

*Carswell v. Air Line Pilots Ass'n International*, 540 F. Supp. 2d 107 (D.D.C. 2008)................. 17

*Caudle v. Thomason*, 942 F. Supp. 635 (D.D.C. 1996)............................................................. 22

*Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71 (D.D.C. 2003)...................................... 18

*Ciralsky v. C.I.A.*, 689 F. Supp. 2d 141 (D.D.C. 2010)............................................................. 16

*Cole v. Boeing Co.*, 845 F. Supp. 2d 277 (D.D.C. 2012)........................................................... 25

*Cryopak Inc. v. Freshly LLC*, 2024 WL 4986818 (D.N.J. Dec. 5, 2024).................................... 11

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)............................................................................ 9

*Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696 (Mo. Ct. App. 2008)............ 19

*Delbert v. Duncan*, 923 F. Supp. 2d 256 (D.D.C. 2013)........................................................... 18

*Deripaska v. Associated Press*, 282 F. Supp. 3d 133 (D.D.C. 2017)......................................... 22

*Devorah v. Royal Bank of Canada*, 115 F. Supp. 3d 35 (D.D.C. 2015).................................. 6, 7

*Doe #1 v. Am. Fed. of Gov't Emp.*, 554 F. Supp. 3d 75 (D.D.C. 2021)..................................... 18

*Doe v. Columbia*, 151 F.4th 435 (D.C. Cir. 2025)..................................................................... 23

*Doe v. Sacks*, 714 F. Supp. 3d 402 (S.D.N.Y. 2024)................................................................. 23

*Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021)............................................... 9

*Everett v. Nissan Motor Corp. in U.S.A.,* 628 A.2d 106 (D.C. 1993).......................................... 10

*Fawzi v. Al Jazeera Media Network*, 273 F. Supp. 3d 182 (D.D.C. 2017)................................. 15

**Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021).... 12, 13

*Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271 (D.D.C. 2015)........................................ 9

*Freeman v. Busch*, 349 F.3d 582 (8th Cir. 2003) ............................................................................. 21

*Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436 (8th Cir. 2013).................................. 20

*Frost v. Cath. Univ. of Am.*, 960 F. Supp. 2d 226 (D.D.C. 2013), *aff'd*, 555 F. App'x 6 (D.C. Cir. 2014) ................................................................................................................. 24

*Gibson v. Brewer*, 952 S.W.2d 239 (Mo. banc 1997)............................................................. 20

*Gillis v. Principia Corp.*, 111 F. Supp. 3d 978 (E.D. Mo. 2015)............................................. 20

**Gowens v. Dyncorp*, 132 F. Supp. 2d 38 (D.D.C. 2001) ......................................................... 8, 9

*Graphic Commc'ns Conf. / Int'l Bhd. of Teamsters, Loc. 285M v. McDonald & Eudy Printers, Inc.*, 2018 WL 6251009 (D.D.C. Nov. 29, 2018) ............................................... 3

*Graves v. United States*, 961 F. Supp. 314, 320-22 (D.D.C. 1997)............................................ 23

*Greene v. Howard University*, 412 F.2d 1128 (D.C. Cir. 1969)........................................... 21, 22

*In re APA Assessment Fee Litig.*, 766 F.3d 39 (D.C. Cir. 2014) ................................................ 16

**Johnson v. Georgetown Univ.*, 827 F. Supp. 3d 133 (D.D.C. 2026) ............................. 18, 19, 22

*Kelley v. D.C.*, 893 F. Supp. 2d 115 (D.D.C. 2012) ...................................................................... 8

*Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18 (D.D.C. 2012)............................................ 8

*Lewis v. Full Sail, LLC*, 266 F.Supp.3d 320 (D.D.C. 2017)....................................................... 12

*Lewis v. Mutond*, 62 F.4th 587 (D.C. Cir. 2023) ......................................................................... 15

*Lumen Techs. Serv. Grp., LLC v. CEC Grp., LLC*, 691 F. Supp. 3d 1282 (D. Colo. 2023)......... 11

**Mallory v. Norfolk S. Ry. Co.,* 600 U.S. 122 (2023) .......................................................... 10, 11

*Mo. Church of Scientology v. Adams*, 543 S.W.2d 776 (Mo. banc 1976) .................................. 22

*Nickel v. Stephens Coll.*, 480 S.W.3d 390 (Mo. Ct. App. 2015) .................................................. 21

*Peled v. Am. Friends of Bet El Institutions*, 2026 WL 2294605 (D.D.C. Aug. 10, 2026).......... 6, 7

*Phillips v. British Airways*, 743 F.Supp.3d 702 (D. Md. 2024).................................................... 11

*Pritchard v. Thompson*, 2023 WL 5817658 (W.D. Tenn. Aug. 3, 2023).................................... 11

*Reiman v. First Union Real Estate Equity & Mortg.*, 614 F. Supp. 255 (D.D.C. 1985) ............. 14

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) .......... 24

*Roberson v. Bowie State Univ.*, 899 F. Supp. 235 (D. Md. 1995) .......... 8

*Saling v. Pelton,* 2023 WL 1765203 (E.D. Mo. Feb. 3, 2023) .......... 20

**Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521 (D.C. Cir. 2001) .......... 6, 7

*See Richards v. Duke Univ.*, 480 F. Supp. 2d 222 (D.D.C. 2007) .......... 5

*Shamburg v. Ayvaz Pizza, LLC*, 2025 WL 2431652 (W.D. Va. Aug. 22, 2025) .......... 11

*Soueidan v. St. Louis Univ.*, 926 F.3d 1029 (8th Cir. 2019) .......... 19, 20, 21

*Thomas v. D.C. Gov't*, 580 F. Supp. 2d 142 (D.D.C. 2008), *aff'd*, No. 08-5464, 2009 WL 2414418 (D.C. Cir. May 7, 2009) .......... 17, 24

**United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995), amended (July 28, 1995) .......... 4, 13, 14

*United States v. Morrison*, 529 U.S. 598 (2000) .......... 23

*Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36 (D.D.C. 2018) .......... 3, 5

**Walden v. Fiore*, 571 U.S. 277 (2014) .......... 13

*Washington v. White*, 231 F. Supp. 2d 71 (D.D.C. 2002) .......... 17

*Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d 105 (D.D.C. 2018) .......... 24

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) .......... 8

**Statutes**

42 U.S.C. § 1983 .......... 24

D.C. Code § 13-334(a) .......... 8, 11

D.C. Code § 13-422 .......... 12

D.C. Code § 13-423(a) .......... 2, 3, 4, 5, 6, 9

D.C. Code § 13-423(b) .......... 3, 4

**Rules**

Fed.R.Civ.P. 12(b)(6) .......... 17

Fed.R.Civ.P. 9(b) .......... 19

## INTRODUCTION

Plaintiff's Opposition to Defendants' Motion to Dismiss (the "Opposition") confirms the jurisdictional defects that permeate her Amended Complaint. Stripped of rhetoric, the Opposition rests on two untenable propositions. First, Plaintiff contends that WashU—but no other Defendant—is subject to general jurisdiction based on contacts with the District that are minimal and wholly unrelated to her claims. Second, Plaintiff contends that because she chose to visit Georgetown University Law Center for her third year of law school and thereafter chose to work in the District, this Court may compel a Missouri university and thirteen individuals residing in Missouri, Michigan, Florida, and Massachusetts to answer for conduct that took place entirely at a St. Louis law school. Neither proposition finds support in the case law. The Opposition never identifies a single suit-related act that any Defendant took in the District, never ties any of Plaintiff's thirteen claims to any Defendant's District contacts, and asks the Court to infer a nationwide conspiracy based solely on unsupported conjecture. None of this satisfies Plaintiff's burden. This Court lacks personal jurisdiction over any Defendant.

Nor can Plaintiff show that the District of Columbia is the proper venue. All of the alleged acts—and nearly all Defendants, witnesses, and evidence—are located in Missouri. Plaintiff also fails to address the pleading deficiencies that plague each of her thirteen causes of action, in some instances shifting legal theories between her Amended Complaint and her Opposition, and in others introducing new facts and exhibits for the first time—none of which is permitted under the Federal Rules of Civil Procedure. Regardless, she has failed to state any claim against any Defendant. The Court should dismiss this case in its entirety.

# ARGUMENT

## I. NO DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN THE DISTRICT OF COLUMBIA

Plaintiff's attempts to manufacture jurisdiction over these Defendants fail at every turn. As was true in her prior, unsuccessful suit in Maryland—*Brown v. Washington Univ.*, 2025 WL 2197145 (D. Md. Aug. 1, 2025)—Plaintiff has not and cannot plausibly plead jurisdictional facts connecting any Defendant to the District of Columbia. Her Opposition misreads D.C.'s long-arm statute, misapplies controlling Supreme Court precedent, and raises for the first time a conspiracy theory of jurisdiction that founders on its own premises. No Defendant performed any act subjecting it to the enumerated provisions of the long-arm statute. No Defendant maintains the continuous and systematic presence necessary for general jurisdiction. And no claim Plaintiff asserts arises from any contact that any Defendant has made with this forum.

### a. Plaintiff Cannot Establish Jurisdiction Under D.C.'s Long-Arm Statute.

D.C.'s long-arm statute demands a claim-specific and defendant-specific nexus to the forum—a requirement Plaintiff cannot meet. She fails to satisfy any enumerated provision of D.C. Code § 13-423(a) as to any individual Defendant. And her newly raised "conspiracy theory" of jurisdiction fails at every step: no Defendant committed an overt act in the District, the conclusory allegations of agreement do not state a prima facie conspiracy, and the intracorporate conspiracy doctrine independently forecloses a conspiracy among WashU and its own employees.

#### i. The Long-Arm Statute Requires a Claim-Specific and Defendant-Specific Nexus to the Forum.

Plaintiff treats long-arm jurisdiction as an all-or-nothing proposition, asserting that "all Defendants have satisfied at least one of the provisions in the long-arm statute" and that jurisdiction therefore blankets every Defendant as to every claim. (ECF No. 24, Oppo. at 10.) The

statute forecloses that approach. D.C.'s long-arm statute provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." D.C. Code § 13-423(b). Courts in D.C. have long construed that limitation to "prevent the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer jurisdiction." *See Graphic Commc'ns Conf. / Int'l Bhd. of Teamsters, Loc. 285M v. McDonald & Eudy Printers, Inc.*, 2018 WL 6251009, at *3 (D.D.C. Nov. 29, 2018). Plaintiff must show, for each Defendant and each claim, that the claim arises from that Defendant's own enumerated act in the District. But she never attempts this showing. Plaintiff instead aggregates the alleged conduct of fourteen Defendants and asks the Court to extend jurisdiction to all of them collectively, precisely the analysis the statute and controlling precedent prohibit. *See Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 49 (D.D.C. 2018) ("Plaintiff cannot 'aggregate factual allegations concerning multiple defendants'—or, in this case, impute to [one defendant] the acts of other [defendants]—'in order to demonstrate personal jurisdiction over' her.").

**ii. Plaintiff Fails to Satisfy Any Provision of the Long-Arm Statute as to Any Defendant.**

Employing the same scattershot approach that pervades her Amended Complaint, Plaintiff baldly asserts that Defendants have subjected themselves to nearly every provision of D.C.'s long-arm statute. (*See* ECF No. 24, Oppo. at 9-11.) Yet she merely restates the sprawling and difficult-to-decipher allegations of the Amended Complaint without connecting any specific Defendant's conduct to any specific statutory provision. (*Id.* at 15-23.) These vague and sundry allegations fall far short of federal pleading standards.

Under Section 13-423(a)(1) of the long-arm statute, a D.C. court may exercise personal jurisdiction over a person who "transact[s] any business in the District of Columbia." This clause

is coextensive with due process and merges into the traditional minimum-contacts inquiry. *See United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995), amended (July 28, 1995). Plaintiff advances the conclusory allegations that "Defendants WashU, Elizabeth Walsh, Russell Osgood, through their agent, Defendant Carrie Burns, transacted business in the District of Columbia." (ECF No. 24, Oppo. at 11.) The only specific allegation she alleges in support is that WashU signed and allegedly breached the Consortium Agreement. (*Id.*) But that agreement is between WashU and Georgetown University Law Center ("GULC"), and Plaintiff is not a party to it.[1] A contract to which Plaintiff is a stranger cannot supply the claim-specific connection § 13-423(b) demands, because her claims do not "arise from" any promises WashU made to GULC. Plaintiff also makes cursory references to alleged activities by WashU in the District. (*See id.* at 2.) But Plaintiff fails to show that any of her claims arise from these fleeting and generalized contacts. Accordingly, subsection (a)(1) of the long-arm statute cannot be a jurisdictional hook for any of the Defendants.

Under Section 13-423(a)(2) , a D.C. court may exercise personal jurisdiction over a person who "contract[s] to supply services in the District." Once again, in her Opposition, Plaintiff relies entirely on the Consortium Agreement, contending that it was a "Washington D.C. transaction." (ECF No. 24, Oppo. at 2.) But Plaintiff runs into the same issue as under Section 13-423(a)(1) : Plaintiff is not a party to the Consortium Agreement.

Under Section 13-423(a)(3) , a D.C. court may exercise personal jurisdiction over a person who "caus[es] tortious injury in the District of Columbia by an act or omission in the District of Columbia." The only specific factual allegations that Plaintiff makes regarding Defendants'

[1] In addition, because the only Defendant that is a party to the Consortium Agreement is WashU, the Consortium Agreement cannot support any argument that the other Defendants are subject to jurisdiction in the District.

activities in the District of Columbia are that a subset of Defendants failed to provide a timely letter of good standing to GULC and supposedly interfered with Plaintiff's internships in the District of Columbia. (ECF No. 24, Oppo. at 10 (citing Am. Compl. at ¶¶ 183-89, 324-26).) But she fails to allege that any Defendant actually undertook these activities ***in the District of Columbia***. Plaintiff's own account places the operative conduct elsewhere: the classroom interactions, the disciplinary investigation, the Student Conduct Board hearing, the scholarship award, and the alleged failure to send a letter of good standing all originated at WashU in Missouri. That Plaintiff may have felt some downstream effects of those decisions after she moved does not convert them into acts committed in the District.

Under Section 13-423(a)(4) , a D.C. court may exercise personal jurisdiction over a person who "caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." "The subsection's required 'plus' factors—regularly doing or soliciting business, engaging in persistent conduct, or deriving substantial revenue—are meant 'to filter out cases in which the in-forum impact is an isolated event and the defendant has no, or scant, affiliations with the forum.'" *Vasquez*, 302 F. Supp. 3d at 48 (citation omitted). Here, Plaintiff has not and cannot allege that any such plus factors exist for any Defendant. *See, e.g.*, *See Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 230 (D.D.C. 2007) (holding that allegations regarding Duke University's recruitment of prospective students in the District, attendance at Duke by D.C. students, adjunct faculty residing in the District, and the presence of government relations and lobbying in the District, cumulatively fell short of Section 13-423(a)(4)'s requirements).

Now, for the first time, Plaintiff alleges that Section 13-423(a)(6) , which permits the exercise of personal jurisdiction over a person who "contract[s] to insure or act as a surety for . . . any other person" applies because WashU "acted as a surety" under the Consortium Agreement. (ECF No. 24, Oppo. at 2.) This argument plainly fails, as no obligation in the Consortium Agreement operates to make WashU a surety. Moreover, as explained above, Plaintiff was not even a party to the Consortium Agreement and cannot invoke it for jurisdictional purposes.

In sum, Plaintiff has failed to allege—and cannot allege—that any claims she may assert against any Defendant fall within the enumerated acts in D.C.'s long-arm statute.

**iii. Plaintiff's Conspiracy Theory of Jurisdiction Fails on Every Element.**

Plaintiff raises for the first time, and spends much of her Opposition alleging, a conspiracy theory of jurisdiction, under which a nonentering co-conspirator is deemed to "transact business" under Section 13-423(a)(1) in the District through a co-conspirator's forum acts. (ECF No. 24, Oppo. at 11-23.) "Under this theory, '[p]ersons who enter the forum and engage in conspiratorial acts are deemed to transact business there directly [and] coconspirators who never enter the forum are deemed to transact business there by an agent.'" *Peled v. Am. Friends of Bet El Institutions*, 2026 WL 2294605, at *10 (D.D.C. Aug. 10, 2026) (quoting *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001)). "But to establish personal jurisdiction over a defendant based on their participation in a conspiracy, a plaintiff must allege 'specific acts connecting [the] defendant with the forum.'" *Devorah v. Royal Bank of Canada*, 115 F. Supp. 3d 35, 39 (D.D.C. 2015).

Plaintiff's new-found theory falters out of the gate because no Defendant ever entered D.C. to engage in conspiratorial acts. *Id.* at 38-39 (dismissing "voluminous complaint—which spans 80 pages and includes over 300 pages of exhibits—[that] fails to allege any specific activity by . . .

defendants . . . taking place in the District of Columbia"). Plaintiff's own catalogue of allegedly conspiratorial acts (*see* ECF No. 24, Oppo. at 15-23) locates the conduct in Missouri, not the District of Columbia. And a "generalized assertion of a conspiracy cannot cure her failure to allege facts demonstrating the Court's jurisdiction over these defendants." *Devorah*, 115 F. Supp. 3d at 39.

Even if Plaintiff had alleged an overt act by at least one Defendant in the District of Columbia (she has not), her conspiracy theory of jurisdiction fails for at least two additional reasons. First, she has not pleaded an actionable conspiracy. To invoke conspiracy jurisdiction, a plaintiff must make a prima facie showing of civil conspiracy: "(1) an agreement between two or more persons; (2) to participate in an unlawful act . . . ; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Second Amend. Found.*, 274 F.3d at 524. But Plaintiff's conspiracy allegations are boilerplate and conclusory. (*See* ECF No. 11, Am. Compl. ¶¶ 495-504.) And in her Opposition, Plaintiff offers the assertion that "[t]he pattern of events… could have only happened upon a meeting of the minds." (ECF No. 24, Oppo. at 13.) That is the archetypal conclusory allegation, wholly reliant on speculation and supposition, that courts routinely reject. An averment that defendants "conspired together" is "nothing more than a legal conclusion, which does not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction." *See Second Amend. Found.*, 274 F.3d at 524; *Peled*, 2026 WL 2294605, at *10 (rejecting "conspiracy theory" of personal jurisdiction where plaintiff "offers only bare allegations that do not come close to establishing an 'agreement' among the defendants to perform an unlawful act, let alone an overt act in furtherance of that agreement").

Second, to the extent Plaintiff alleges a conspiracy among WashU and its own faculty and administrators, the intracorporate conspiracy doctrine independently undermines the theory. *See Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) ("an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy"); *Roberson v. Bowie State Univ.*, 899 F. Supp. 235, 238 (D. Md. 1995) ("[A] university cannot conspire with its own employees . . . ."). Plaintiff's Opposition and Amended Complaint describe the individual Defendants acting in their institutional roles—investigating complaints, conducting disciplinary proceedings, and making scholarship decisions—conduct squarely within the scope of their WashU employment. *See Kelley v. D.C.*, 893 F. Supp. 2d 115, 120 (D.D.C. 2012) (dismissing Section 1985 claims under the intracorporate conspiracy doctrine because the defendants' complained-of activities fell within the scope of their employment).

**b. D.C.'s Service-of-Process Statute Does Not Confer Jurisdiction Over WashU.**

In her Opposition, Plaintiff raises for the first time an argument that this Court has personal jurisdiction over WashU[2] under D.C.'s service-of-process statute. (ECF No. 24, Oppo. at 7-9.) Under D.C. Code Section 13-334(a), "[i]n an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, . . . and that service is effectual to bring the corporation before the court." Courts have held that this statute can confer jurisdiction over foreign corporations where (a) the corporation "does substantial business in the District of Columbia" and (b) service is accomplished in the District of Columbia. *See Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 26-27 (D.D.C. 2012); *Gowens v. Dyncorp*, 132 F. Supp. 2d 38, 42 (D.D.C. 2001). Regarding the "substantial

[2] Plaintiff does not appear to argue that the Individual Defendants are subject to this statute. Nor could she, as they were not served in the District and are not at home here.

business" element, courts conduct this analysis under traditional rules of general jurisdiction, with a view to whether the defendant's business contacts with the forum are so continuous and systemic as to render it essentially at home in the forum. *See Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 889-90 (D.C. Cir. 2021). Plaintiff's allegations regarding the "research and educational services in Washington, D.C." (*see* ECF No. 24, Oppo. at 7; Am Compl. at ¶¶ 1-90) fall woefully short of this standard. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (finding no general jurisdiction over a foreign car manufacturer in California even though its subsidiary had multiple facilities in California and sold 10 percent of its cars there, based primarily on the fact that neither the manufacturer nor the subsidiary were incorporated in California or had its principal place of business there); *Brown*, 2025 WL 2197145, at *6 (holding that WashU was not subject to general jurisdiction in Maryland where it had "contracts in excess of $1 billion" with Maryland entities and dual degree programs with four Maryland universities); *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 279 (D.D.C. 2015) (rejecting general jurisdiction over a defendant who "operate[d] numerous retail branches and ATMs, and maintain[ed] a significant 'brick-and-mortar' presence" in D.C.).

Further, even if WashU had continuous and systemic contacts with the District of Columbia, Plaintiff could not invoke Section 13-334(a) because she has failed to plausibly plead that service was accomplished *in the District of Columbia*. Service of her original Complaint was accomplished by waiver over email with Defendants' counsel. (ECF No. 3.) Service of her Amended Complaint was accomplished "via ECF on June 29, 2026." (ECF No. 24, Oppo. at 8; ECF No. 11.) Because Plaintiff offers no allegation or evidence that service was accomplished in the District of Columbia, jurisdiction cannot be invoked under Section 13-334(a) . *See Gowens*, 132 F. Supp. 2d at 42 (finding no general jurisdiction under Section 13-334 because Dyncorp was

served at its Virginia headquarters rather than in the District); *Everett v. Nissan Motor Corp. in U.S.A.,* 628 A.2d 106, 108 (D.C. 1993) (finding service of process in California bars general jurisdiction under § 13–334).

**c. The Due Process Clause Independently Bars Both General and Specific Jurisdiction.**

Plaintiff devotes the bulk of her Opposition's jurisdictional analysis to D.C.'s long-arm statute, offering only passing references to general and specific jurisdiction under the Due Process Clause. Those references rest on fatal misreadings of recent Supreme Court precedent. Properly understood, and as fully detailed in Defendants' Motion to Dismiss (*see* ECF No. 19 at 5-15), the due process analysis confirms that no Defendant is subject to either general or specific jurisdiction in the District of Columbia.

**i. WashU Is Not Subject to General Jurisdiction in the District.**

To support her assertion that WashU[3] is subject to general jurisdiction in the District of Columbia, Plaintiff relies almost entirely on the Supreme Court's recent decision in *Mallory v. Norfolk S. Ry. Co.,* 600 U.S. 122 (2023). There, the Court held that the Due Process Clause of the Fourteenth Amendment does not prohibit a state from requiring an out-of-state corporation to consent to personal jurisdiction as a condition of registering to do business in that state. *Id.* at 146. Critically, the Court grounded its decision in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.,* a century-old precedent approving consent-based jurisdiction, and the Court expressly declined to "speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit." *Id.* at 135-36. Indeed, courts

[3] Plaintiff does not appear to make any argument in her Opposition that the Individual Defendants are subject to general jurisdiction. Nor could she, as Defendants explained in their Motion to Dismiss. (ECF No. 19 at 5-6.)

since *Mallory* have been clear that *Mallory*'s holding is limited to the circumstance where a state's business registration statute *expressly conditions* registration on consent to general jurisdiction. *See, e.g.*, *Shamburg v. Ayvaz Pizza, LLC*, 2025 WL 2431652, at *5-6 (W.D. Va. Aug. 22, 2025) (Virginia's registration statute contains no language conditioning registration on consent to jurisdiction); *Phillips v. British Airways*, 743 F.Supp.3d 702, 710 (D. Md. 2024) (Maryland law does not equate registration with consent to jurisdiction); *Lumen Techs. Serv. Grp., LLC v. CEC Grp., LLC*, 691 F. Supp. 3d 1282, 1291 (D. Colo. 2023) (Colorado registration statutes do not expressly inform foreign entities that registration constitutes consent to jurisdiction); *Cryopak Inc. v. Freshly LLC*, 2024 WL 4986818, at *4 (D.N.J. Dec. 5, 2024) (New Jersey's registration statute contains no express consent requirement, and a state's choice to draft such a statute does not mean every state's registration statute does so)); *Pritchard v. Thompson*, 2023 WL 5817658, at *6 (W.D. Tenn. Aug. 3, 2023) (unlike Pennsylvania's statute, Tennessee's statute contains no language expressly affirming consent to general jurisdiction).

While Plaintiff claims that her "facts are much more analogous to *Mallory*," (ECF No. 24, Oppo. at 8), the law is entirely different. Unlike the Pennsylvania statute in *Mallory*, D.C. Code § 13-334(a) does not state anywhere that "qualifications as a foreign corporation" shall permit courts to "exercise general personal jurisdiction"—language the Court found dispositive in *Mallory*. Accordingly, there is no basis upon which Plaintiff can argue that *Mallory* applies to D.C. Code § 13-334(a). And Plaintiff cites no other District of Columbia statute that conditions registration to do business in the state with consent to general jurisdiction. D.C. district courts have consistently rejected assertions of general jurisdiction over out-of-state universities like WashU. *See Baptichon v. U.S. Department of Education*, 2023 WL 2561807, at *3 (D.D.C. Mar. 17, 2023) (holding that general jurisdiction over an out-of-state law school under D.C. Code § 13-422 was unavailable

where the school was neither domiciled in, organized under the laws of, nor headquartered in the District, and where its mere professional affiliations with D.C.-based organizations did not amount to the "continuous and systematic" contact due process requires); *Lewis v. Full Sail, LLC*, 266 F.Supp.3d 320, 323 (D.D.C. 2017) (holding that an out-of-state school's isolated contacts with D.C. were insufficient to establish general jurisdiction). Consistent with the above precedent, this Court should reject Plaintiff's arguments and hold that no Defendant is subject to general jurisdiction in the District of Columbia.

**ii. No Defendant Is Subject to Specific Jurisdiction Because No Claim Arises from Forum Conduct.**

As fully explained in Defendants' Motion to Dismiss (ECF No. 19 at pp. 7-15), Defendants are not subject to specific jurisdiction in the District of Columbia because Defendants did not avail themselves of the privilege of conducting activities in the District and because Plaintiff's claims, shorn of their rhetoric, do not relate to whatever fleeting and minor contacts a subset of Defendants may have had with the District. Plaintiff attempts to maneuver around this inescapable conclusion by quoting *Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. 351, 362 (2021) for the proposition that specific jurisdiction does not require "a strict causal relationship" between the defendant's forum activity and the litigation; rather, the suit must "arise out of or relate to the defendant's contacts with the forum." (ECF No. 24, Oppo. at 11-12.) True enough. But Plaintiff neglects to consider what the Supreme Court said immediately thereafter. *Ford Motor Company* broke no new ground in jurisdictional analysis. Instead, the Court reaffirmed that specific jurisdiction requires purposeful availment *plus* that the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co.* 592 U.S. at 362. While the "relate to" prong does not always demand causation, the *Ford* Court was emphatic that it "does not mean anything goes" and "incorporates real limits, as it must to adequately protect defendants

foreign to a forum." *Id.* Jurisdiction attached in *Ford* only because the defendant "had systematically served a market" in the forum States "for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.* at 365. That tight nexus between forum contacts and the specific claims is entirely consistent with prior Supreme Court decisions. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (holding that with respect to specific jurisdiction, the question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way").

"What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 265 (2017). Plaintiff's discrimination, retaliation, and civil-rights claims (Counts I-III, X-XIII) arise from classroom conduct, a disciplinary investigation, a suspension, and a Student Conduct Board proceeding—all of which took place at WashU in Missouri, not in the District of Columbia. Plaintiff's fraud, unjust enrichment, and breach of contract claims (Counts IV and VII) likewise rest on decisions made in Missouri and/or an agreement to which Plaintiff is not a party. For her tort claims of intentional infliction of emotional distress, negligence, and defamation (Counts V, VI, and VIII), the only contact Plaintiff alleges is Defendant Walsh's alleged single conversation with an attorney advisor at the D.C. Office of Human Rights regarding Plaintiff's scholarship. (ECF No. 11, Am. Compl. ¶ 346.) Even accepting this as true, it falls far short of the standard for establishing meaningful availment. *See Ferrara*, 54 F.3d at 831 ("It is clear that this single, responsive mailing cannot constitute the 'meaningful' contact."). And Plaintiff fails to explain how this alleged conversation relates to her tort claims.

Whatever fleeting contact may exist between any Defendant and the District of Columbia arises only because Plaintiff chose to visit GULC for her third year of law school and subsequently sought employment in the District. This is wholly insufficient to establish specific jurisdiction. *See Ferrara*, 54 F.3d at 829-30 ("The critical difference between this case and *Calder* is that here the relationship between Mr. Doe and the New Mexico Disciplinary Board that gave rise to the litigation predated Mr. Doe's unilateral decision to practice law in the District of Columbia."); *Brit UW, Ltd. v. Manhattan Beachwear, LLC*, 235 F. Supp. 3d 48, 58-60 (D.D.C. 2017) (finding no specific jurisdiction because the defendant's limited forum contacts did not arise from, and were not substantially connected to, the conduct underlying the suit); *Reiman v. First Union Real Estate Equity & Mortg.*, 614 F. Supp. 255, 257 (D.D.C. 1985) ("A plaintiff may not . . . depend upon his own activity to establish the existence of minimum contacts; the defendant must in some way have voluntarily and purposefully availed himself of the protection of the forum state's laws.").[4]

**d. Plaintiff's Request for Jurisdictional Discovery Should Be Denied.**

This Court denied Plaintiff's previously filed Motion for Jurisdictional Discovery, noting that "Plaintiff's present discovery requests are overbroad, touching on merits issues beyond Defendants alleged contacts with the forum state." (ECF Minute Order, 8/12/2026.) The Court further noted that Plaintiff could renew "any requests for *particularized information*—targeted to

---

[4] Plaintiff also contends that Missouri may lack jurisdiction over certain Defendants. (ECF No. 24, Oppo. at 24-25.) The contention is irrelevant: each court determines its own jurisdiction over the defendants before it, regardless of whether another forum has jurisdiction. It also rests on faulty premises. First, without conceding the point, Plaintiff misreads the Missouri long-arm statute, which does not require the act itself to physically occur "within the state" for jurisdiction to attach. *See Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 232 (Mo. banc 2010) (holding that the Missouri long-arm statute "is construed to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process clause"). Second, Defendant Osgood remains a resident of Missouri to this day. (ECF No. 19 at 6.) Third, most of the acts of which Plaintiff complains occurred in Missouri while Defendants Katz and Hudson were residents of Missouri. (*Id.*)

legally relevant contacts between the Defendants and Washington, D.C." (*Id.* (emphasis added).) Now, Plaintiff seeks broad, unspecified "jurisdictional discovery" to support her arguments. (ECF No. 24, Oppo. at 6.) This request should again be denied.

Jurisdictional discovery is appropriate if a party demonstrates that it will be able to supplement its jurisdictional allegations through discovery. *Lewis v. Mutond*, 62 F.4th 587, 595-96 (D.C. Cir. 2023). But a "party must offer more than mere conjecture, and a request for jurisdictional discovery is properly denied when it is not directed at the defect in a plaintiff's case for jurisdiction." *Fawzi v. Al Jazeera Media Network*, 273 F. Supp. 3d 182, 188 (D.D.C. 2017) (cleaned up). Here, as with Plaintiff's prior Motion for Jurisdictional Discovery, her focus is entirely on the merits of her claims. She does not specifically identify what discovery would allow this Court to draw connections between the Defendants and the District of Columbia. Because Plaintiff has not identified how the proposed discovery could cure any jurisdictional defect, her motion should be denied. *See Lewis*, 62 F.4th at 596; *Fawzi*, 273 F. Supp. 3d at 188 (denying motion because plaintiff had "not pointed to any particular facts that, if discovered," would establish personal jurisdiction in the District of Columbia).

## II. VENUE IS IMPROPER IN THE DISTRICT OF COLUMBIA

Plaintiff argues that venue is proper in the District of Columbia because (a) "all of the Defendants are subject to personal jurisdiction in Washington D.C.," and (b) "a substantial part of the events or omissions giving rise to these claims occurred within Washington D.C." (ECF No. 24, Oppo. at 26.) As explained above, no Defendant is subject to personal jurisdiction in D.C., so venue cannot rest on that basis. As to Plaintiff's second argument, she cites a series of actions, all of which, if true, originated in Missouri and affected Plaintiff in the District of Columbia only because of her decision to visit GULC for her third year of law school. (*Id.*) This does not mean that a substantial part of the events or omissions giving rise to her claims occurred in the District

of Columbia. Indeed, Plaintiff's Amended Complaint is clear that the events giving rise to her lawsuit occurred *before* she visited GULC. (ECF No. 11, Am. Compl. ¶¶ 316, 327-328.)

The bulk of allegations in the Amended Complaint concern WashU's investigation of alleged misconduct, implementation of disciplinary proceedings, and decisions regarding Plaintiff's scholarship and future education—all of which occurred in Missouri. That Plaintiff allegedly felt the effects of some of Defendants' decisions in the District of Columbia does not make this a proper venue. *See Ciralsky v. C.I.A.*, 689 F. Supp. 2d 141, 161 (D.D.C. 2010) (holding that, where the overwhelming bulk of the events giving rise to the plaintiff's claims occurred at the employer's out-of-state headquarters, the fact that plaintiff's lost position was located in D.C. was insufficient to establish venue here).

## III. PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST ANY DEFENDANT.

Plaintiff's failure-to-state-a-claim arguments are undermined at the threshold by her reliance on the wrong governing law. Although Plaintiff generally cites D.C. cases in her Opposition (ECF No. 24, Oppo. at 27-45), she never addresses the applicable choice-of-law framework. Under D.C.'s choice-of-law rules, when a conflict exists between the forum's law and the law of a potentially interested jurisdiction, the law of the jurisdiction with the most significant relationship to the dispute governs. *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014). Every relevant factor—the place of injury, the place of the conduct causing injury, the parties' residences, and the center of the parties' relationship—points to Missouri. *Id*. Accordingly, Missouri law governs Counts IV, V, VI, VII, and VIII, and Plaintiff's reliance on D.C. case law for those claims is inapposite.

**a. Count I: Plaintiff's Title VII Claim Fails for Lack of Exhaustion and Standing.**

In defense of her Title VII claim, Plaintiff principally relies on two items she introduces for the first time in her Opposition: a document she claims is a W-2 from WashU, purporting to establish an employment relationship (ECF No. 24, Oppo. at 28; Ex. F thereto), and a document she claims is a second EEOC right-to-sue letter dated August 29, 2026 (*id.*; Ex. E thereto). Neither argument rescues Count I.

First, a plaintiff cannot amend her pleadings by attaching new exhibits neither attached to nor referenced in her pleadings. This Court should therefore ignore these exhibits. *See Carswell v. Air Line Pilots Ass'n International*, 540 F. Supp. 2d 107, 121-22 (D.D.C. 2008) (holding that that a plaintiff opposing a motion to dismiss for failure to state a claim could not rely on documents attached to his opposition to the motion); *Thomas v. D.C. Gov't*, 580 F. Supp. 2d 142, 148 (D.D.C. 2008), *aff'd*, No. 08-5464, 2009 WL 2414418 (D.C. Cir. May 7, 2009) ("Factual allegations appearing in briefs or memoranda generally are not considered when deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)."). Accordingly, Plaintiff has effectively conceded Defendants' arguments in their Motion to Dismiss, and Count I should be dismissed.

Second, even if the Court were to consider this new "evidence," Count I should still be dismissed. The W-2 does not establish that an employment relationship existed, much less that Plaintiff's claims arose from that relationship. More fundamentally, Plaintiff has still failed to allege that she timely filed a charge of discrimination or timely brought suit after receiving a notice of right to sue. (*See* ECF No. 19 at 21-23.) The EEOC right-to-sue letter attached to the Amended Complaint issued June 17, 2025, yet Plaintiff did not sue until April 1, 2026 — 288 days later, far beyond the limitations period. *See Washington v. White*, 231 F. Supp. 2d 71, 75 (D.D.C. 2002). Plaintiff's response—that a *second* right-to-sue letter issued August 29, 2026, and that her charge

is timely measured from "the last retaliatory act"—does not rescue her claim. A letter obtained months after suit was filed cannot retroactively make a premature or unexhausted claim timely, and a plaintiff fails to exhaust when her federal complaint asserts claims her administrative charge could not reasonably be expected to encompass.

#### b. Count II: Plaintiff's Title VI Claim Fails for Lack of Factual Support.

In her Opposition, Plaintiff offers only the conclusions that she was treated differently "because she is Black" and that she was required to visit GULC for her final year of law school. (ECF No. 24, Oppo. at 29.) Her own suspension letter, however, states the non-racial basis for her discipline. (Exhibit G to Amended Complaint, ECF No. 11.) That is precisely the deficient pleading dismissed by the court in *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 84-85 (D.D.C. 2003). Plaintiff's Count II should similarly be dismissed. Further, "[t]here is no individual liability under Title VI," *see Delbert v. Duncan*, 923 F. Supp. 2d 256, 261 (D.D.C. 2013), and the Individual Defendants should be dismissed from this claim for this added reason.

#### c. Count III: Plaintiff's Section 1981 Claim Fails for Lack of a Racial Nexus and an Impaired Contract.

At the dismissal stage, the question for this Court "is whether [Plaintiff] has 'allege[d] some facts' to demonstrate that race was the reason for the relevant conduct; she 'cannot merely invoke [her] race in the course of a claim's narrative.'" *Johnson v. Georgetown Univ.*, 827 F. Supp. 3d 133, 170 (D.D.C. 2026) (quoting *Doe #1 v. Am. Fed. of Gov't Emp.*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021)). But Plaintiff does just that, repeating that "if Plaintiff was white" or "if Plaintiff were not Black," the Defendants would have acted differently, without pleading facts connecting race to any decision or act of any Defendant. (ECF No. 24, Oppo. at 30-33.) Thus her claim fails.

Her claim also fails because she identifies no impaired contractual relationship. She was not a party to the Consortium Agreement, and she has failed to show that her scholarship award letter is somehow an enforceable contract under Missouri law. While Plaintiff alleges she was employed by the school as a research assistant for Defendant Davis (ECF No. 11, Am. Compl. ¶ 201), she does not allege that this purported employment relationship was affected by any alleged discriminatory conduct. For these reasons, Count III should be dismissed. *See Johnson*, 827 F. Supp. at 170 (dismissing Section 1981 claims against university and its employees because plaintiff's allegations relied on conclusions and labels, the individual defendants were not "personally involved in the discrimination," and the "complaint proffer[ed] no concrete facts to suggest that [defendant] was motivated by racial animus").

**d. Count IV: Plaintiff's Fraud and Unjust Enrichment Claims Are Barred by the Educational Malpractice Doctrine.**

Plaintiff's discussion of Count IV in her Opposition fails entirely to address Missouri's educational malpractice doctrine. (ECF No. 24, Oppo. at 33-34.) The educational malpractice doctrine is dispositive of this Count because claims "concerning the reasonableness of the educator's conduct in providing educational services" are barred. *See Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir. 2019); *Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008) ("[C]ourts have refused to become the overseers of both the day-to-day operation of [the] educational process as well as the formulation of its governing policies.") (internal quotations and alternations omitted).

Furthermore, the only alleged misrepresentation that Plaintiff identifies is that "Defendants told Plaintiff that the $37,000.00 scholarship Defendant WashU awarded to her each year was contingent solely on her maintaining full time status." (ECF No. 24, Oppo. at 33.) But Rule 9(b) requires Plaintiff to plead "the time, place and contents of [the] false representations, as well as

the identity of the person making the misrepresentation and what was obtained or given up thereby," in other words, "the who, what, when, where, and how." *See Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013). The Amended Complaint fails to identify any of these particulars, and does not plead that Plaintiff had any right to rely on any alleged representation. Thus, the fraud claim fails. And Plaintiff effectively concedes that her unjust enrichment claim fails, as she does not address it at all in her Opposition.

**e. Count V: Plaintiff's IIED Claim Fails to Allege Outrageous Conduct Under Missouri Law.**

While Plaintiff relies on District of Columbia law in her Opposition, Missouri law governs this claim, and the elements of an IIED claim are exacting. The conduct "must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gillis v. Principia Corp.*, 111 F. Supp. 3d 978, 987 (E.D. Mo. 2015) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997)). Plaintiff attempts to clear this high bar by citing facts outside the pleadings: her social media accounts. These should not be considered, and even if they were, they offer nothing to support Plaintiff's claims. Even accepting her allegations as true, a temporary suspension, disciplinary proceeding, scholarship dispute, and collections effort do not come close to outrageous conduct. *See, e.g.*, *Saling v. Pelton,* 2023 WL 1765203, at *9 (E.D. Mo. Feb. 3, 2023) ("Plaintiff has not alleged that he experienced medically diagnosable emotional distress as a result of defendants' actions. As such, plaintiff's claims for intentional infliction of emotional distress are subject to dismissal.") (applying Missouri law). In addition, the education malpractice doctrine bars this claim. *See Soueidan*, 926 F.3d at 1034.

**f. Count VI: Plaintiff's Negligence Claim Fails Because Defendants Owed No Duty of Care.**

In her Opposition, Plaintiff simply lists the various acts of Defendants, with inflammatory and conclusory language, with which she takes issue. (ECF No. 24, Oppo. at 36-37.) But she ignores a threshold issue: whether Defendants owed her a duty. They did not. *See Freeman v. Busch*, 349 F.3d 582, 587 (8th Cir. 2003) ("[S]ince the late 1970s, the general rule is that no special relationship exists between a college and its own students because a college is not an insurer of the safety of its students.") (collecting cases); *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 401 (Mo. Ct. App. 2015) (holding that plaintiff's negligence claim related to college's decision to issue her a medical withdrawal due to her mental health issues failed because college owed student no duty of care). In addition, the education malpractice doctrine bars this claim. *See Soueidan*, 926 F.3d at 1034.

**g. Count VII: Plaintiff's Breach of Contract Claim Fails Because She Identifies No Contractual Promise.**

It is difficult to decipher Plaintiff's argument on Count VII. She cites to this Court's decision in *Greene v. Howard University*, 412 F.2d 1128, 1135 (D.C. Cir. 1969), for the proposition that contracts in an academic setting incorporate by reference the norms and expectations of the university's policies and practices. (ECF No. 24, Oppo. at 37.) *Greene* involved a university's decision to terminate certain non-tenured faculty members without according them a hearing. But that is not the issue here. In fact, Plaintiff pleads that WashU held a disciplinary hearing regarding her complaints. And Plaintiff was never a faculty member or even

employee of WashU. So *Greene* is inapposite.[5] Put simply, Plaintiff has identified no contractual promise that WashU breached, so this claim fails. (ECF No. 19 at 29-31.)

**h. Count VIII: Plaintiff's Defamation Claim Fails for Lack of Specificity.**

To satisfy federal pleading standards for a defamation claim, a plaintiff must "allege specific defamatory comments by pleading the time, place, content, speaker, and listener of the alleged defamatory matter." *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996) (citation modified); *see also Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 149 (D.D.C. 2017) (dismissing defamation claim where the complaint "fail[ed] to identify any single statement as false that is both capable of verification and capable of defamatory meaning"). Plaintiff fails to do so in her Amended Complaint, and her Opposition simply directs the Court to review her Amended Complaint. Accordingly, her claim must be dismissed. *See Mo. Church of Scientology v. Adams*, 543 S.W.2d 776, 777 (Mo. banc 1976) (holding that plaintiff must plead the specific words claimed to be defamatory)

**i. Count IX: Plaintiff's Section 1985 Conspiracy Claim Fails for Lack of an Agreement.**

The "essence" of a conspiracy claim is "an actual agreement amongst the defendants." *See Johnson*, 827 F. Supp. 3d at 171. A complaint must convey "the existence of any events, conversations, or documents indicating that there ever was an agreement or meeting of the minds." *Id.* Plaintiff merely states the conclusion that Defendants "acted in concert" and "re-incorporates all conspiratorial claims that have been pled." (ECF No. 24, Oppo. at 38-39.) But her boilerplate allegations do not permit the Court to draw the inference that Defendants had an agreement to violate Plaintiff's constitutional rights, and Count IX should therefore be dismissed. *See Graves*

[5] *Greene* is also inapposite because the conduct alleged in Plaintiff's Amended Complaint occurred in Missouri and is governed by Missouri law.

*v. United States*, 961 F. Supp. 314, 320-22 (D.D.C. 1997) (dismissing Section 1985 claims because the allegations failed to allege a single fact to support the claim that the defendants had a meeting of the minds or acted because of the plaintiff's membership in a protected class).

**j. Count X: Plaintiff's Title IX Claim Fails Because Individual Liability Is Unavailable and WashU Was Not Deliberately Indifferent.**

Plaintiff's Opposition focuses entirely on the conduct of Defendant Copeland during the Title IX investigation—conduct with which Plaintiff takes issue. (ECF No. 24, Oppo. at 40-41.) Her arguments are unavailing for two reasons. First, "Title IX does not provide for individual liability; only a recipient of federal funds may be liable in damages under Title IX." *Doe v. Columbia*, 151 F.4th 435, 446 (D.C. Cir. 2025). So Count X must be dismissed as against Copeland and all other Individual Defendants. Second, Plaintiff's own exhibits defeat her claim. Plaintiff provides letters documenting the procedural and investigative history of the cross-Title IX complaints that Plaintiff and another student made against one another. (ECF No. 11, Am. Compl. at ¶¶ 107-126; Ex. E thereto.) These materials conclusively refute Plaintiff's contention that WashU acted with deliberate indifference to Plaintiff's complaints. *See Doe v. Sacks*, 714 F. Supp. 3d 402, 412 (S.D.N.Y. 2024) ("While Plaintiff may certainly wish that NYU had gone to greater lengths to identify and discipline the [alleged harassment], the University's response was not, in fact, 'clearly unreasonable,'" as required to state a Title IX discrimination claim)

**k. Count XI: Plaintiff's Fifth and Fourteenth Amendment Claims Fail for Lack of State Action.**

Constitutional claims require state action. *See United States v. Morrison*, 529 U.S. 598, 621 (2000). Plaintiff argues, without citation, that "[i]f a private university receives significant state funding, its actions regarding discrimination may be considered state action." (ECF No. 24, Oppo. at 41.) But private universities and their employees are not state actors, and neither the receipt of federal funds—even "virtually all" of an entity's funding—nor extensive regulation, nor

a university's Title IX obligations creates state action. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (holding that private school did not engage in state action despite receipt of public funds and high degree of state regulation); *Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d 105, 116 (D.D.C. 2018) (holding that a university's conduct of a Title IX investigation was not state action). Accordingly, Plaintiff's theories regarding WashU's receipt of state funding and its use of campus police cannot support Count XI, which should be dismissed.

**l. Count XII: Plaintiff's Section 1983 Claim Fails for Lack of State Action.**

Section 1983 likewise requires conduct "fairly attributable to the State." *See Rendell-Baker*, 457 U.S. at 838. If the actor's conduct is not state action, "the inquiry ends." *Id.* "To establish a claim under 42 U.S.C. § 1983, the plaintiff must show that the defendants acted under the color of state or D.C. law to deprive the plaintiff of a right secured by the Constitution of the United States." *Frost v. Cath. Univ. of Am.*, 960 F. Supp. 2d 226, 232 (D.D.C. 2013), *aff'd*, 555 F. App'x 6 (D.C. Cir. 2014) (quotation marks omitted). Plaintiff alleges no such thing. Her own suspension letter states only that, because she was no longer permitted on campus, she would be "subject to arrest by Washington University Police" if she returned—a routine trespass warning reflecting Missouri law, not the exercise of state arrest authority against her. And there is no allegation that she ever returned to campus or was subject to arrest. Count XII should be dismissed.

**m. Count XIII: Plaintiff's DCHRA Claim Fails Because the Statute Has No Extraterritorial Reach.**

Plaintiff makes the new and unsupported claim that she "is currently employed be Defendants in Washington D.C." (*Id.* at 44.) While this assertion is plainly false, it also does not appear anywhere in her Amended Complaint, and therefore should be disregarded. *See Thomas*, 580 F. Supp. 2d at 148. All of the conduct Plaintiff complains of occurred in Missouri. (ECF No.

24, Oppo. at 44-45.) That ends the analysis, as the DCHRA does not have extraterritorial effect. *See Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 284 (D.D.C. 2012). Count XIII should be dismissed

**CONCLUSION**

For the foregoing reasons, and those set forth in Defendants' Motion to Dismiss, the Court should dismiss the Amended Complaint in its entirety for lack of personal jurisdiction or for improper venue or, in the alternative, for failure to state a claim.

Respectfully submitted,

**LEWIS RICE LLC**

Dated: September 8, 2026

By: /s/ Winthrop B. Reed III

Winthrop B. Reed III, *admitted pro hac vice*
(Mo. Bar #42840)
Benjamin M. Farley, *admitted pro hac vice*
(Mo. Bar #69073)
Lindsey M. Bruno, *pro hac vice forthcoming*
(Mo. Bar #73055)
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: (314) 444-7617
Facsimile: (314) 612-7617
wreed@lewisrice.com
bfarley@lewisrice.com
lbruno@lewisrice.com

Sona Rewari (D.C. Bar No. 1047102)
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1974
Facsimile: (703) 918-4018
srewari@hunton.com

*Attorneys for Defendants*